**RECEIVED**

OCT 1 1 2019

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Kaiya Marie, | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **vs** | ) |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Defendant** | ) |

19cv50268
Judge Thomas M. Durkin
Magistrate Judge Iain D. Johnston

## ORIGINAL COMPLAINT FOR DAMAGES
## UNDER THE FEDERAL TORT CLAIMS ACT

**1.** Plaintiff Kaiya Marie brings this action under the Federal Tort Claims Act, 28

§ 2671et seq. This court is vested with jurisdiction pursuant to 28 U.S.C.

§ 1346(b). Venue is proper pursuant to 28 U.S.C. § 1402 as well because at all times the

Plaintiff resided in this district and all of the wrongful acts and/or omissions complained of

herein occurred.

**2.** Plaintiff has exhausted her claims by filing the required forms with the Defendant and

having her claims denied. *See* Ex. A (Denial Letter).

### INTRODUCTION

**3.** On February 4, 2019, Plaintiff Kaiya Marie presented herself at the Rockford VA Clinic

which is operated by Defendant United States of America for her appointment with the Podiatric

Technician, Tresea Larson, an employee of the Defendant. The Defendant, through its

employee, intentionally deviated from standard practice against the Plaintiff's expressed

objections and consent.

## PARTIES

4. Plaintiff, Kaiya Marie, resides at 1305 N Annie Glidden Rd, #1011, in the city of DeKalb which is located in DeKalb County in the state of Illinois. The acts and omissions occurred within the Northern District of Illinois.

5. Defendant, United States of America, permits and holds a community health center, its officers and staff, to be federal employees for the purposes of malpractice tort claims against such community health centers.   Rockford VA Clinic is established in accordance with the Public Health Service Act and is located at 816 Featherstone Rd, Rockford, Winnebago County, IL  61107.

6. Defendant, in operating the clinic, holds itself out to veterans and their dependents to use that degree of diligence, and attention used by hospitals and other health care medical facilities generally in and within the community, in the care and treatment of patients.

7. Defendant has in its employ physicians, nurses, interns, residents, nurse aides, medical students, and other medical personnel including specialty health providers such as podiatrists and podiatric technicians.  The Defendant exercises exclusive control and supervision over these employees.

8.  On information and belief, Tresea Larson was acting within the scope of her employment and duties as a Podiatry Technician employed at Rockford VA Clinic and is considered to be an employee of Defendant, United States of America.

9.  Plaintiff, Kaiya Marie, had been an established patient of Rockford VA Clinic dating back to September, 2017, for the management of diabetes along with comorbidities including peripheral neuropathy which affected her feet although she had been seen only once by the podiatrist at that

clinic in over a year. At that appointment in 2017 both the podiatrist and a podiatric technician or student (not Defendant's employee, Tresea Larson) were present at the appointment.

## BACKGROUND

**10**. Plaintiff, Kaiya Marie, received a diagnosis of Paranoid Ideation in 1984 from the Veterans Administration after unsuccessfully suing the postal facility where she was employed from 1979 – 1983. Because of the stress, ongoing harassment, and other actions of retaliation at the Post Office in the creation of a hostile work environment, she became unable to perform her duties and sought psychological support at Jesse Brown VA Hospital during her absence from work. Documentation was needed as well for sick leave.

**11**. Unable to work, Plaintiff sought to pursue her education (receiving a BA, MA, and MBA), form a nonprofit organization—Strategies for Optimal Achievement and Regeneration, testify on behalf of psychiatrically labelled disabled persons for the Americans with Disabilities Act, register as a volunteer federal lobbyist with a special interest for research subjects and senior citizens, and write several letters to governmental agencies and decision makers.

**12**. During this time, she has been subjected to harassment, medical malpractice by both civilian and VA physicians, public humiliation at businesses, and acts of "normative violence" in the community. Normative violence is that which is accepted against persons the community hold as marginal. This includes disabled, aged, and whistleblowers, and those having other characteristics that makes them targeted. Usually they are friendless and have few resources, if any.

**13**. It is the Plaintiff's belief that facts were gathered that proved her claims of being followed and harassed influenced the VA's dropping the original diagnosis of paranoid delusions, eventually adopting the current Bipolar diagnosis because of her educational achievements—

high episodes because of her aspirations; lows, recognizing the limitations enforced by the diagnosis. One concern the Plaintiff has regarding the VA's changing of diagnosis without notification is the right to object to an obvious error she didn't find until recently requesting her record which shows Memory Loss inserted surreptitiously in 2017 as one of her diagnoses. This is important because of the effect it has on the way the Plaintiff is perceived by others and paves the way for neglect and abuse. This may have been elemental in the Defendant's actions, expecting no consequences to occur. The Plaintiff's memory is intact.

14. However, now at the age of 72, the gross intimidation and isolation she has suffered throughout the years is shown in her demeanor. Her voice is weak and apologetic from seldom being used, she is somewhat stooped, and overly cautious about people. It affects her confidence in moving forward to earning her Doctorate Degree in Health Services--lacking only her dissertation--in which she has to be accepted among peers in the Doctoral community.

15. Plaintiff wishes to inform the court of these facts because her demeanor belies her standing as an educated woman who advocates for disabled persons against the very actions to which she was being subjected, and she feels she must convey the shock, fear, and helplessness she felt as everything she studied in her courses regarding human rights violations were taking place in real time to her.

16. One letter written to a congressman in 2014 –two years before the most recent VA scandal-- summarizes the history she has had with the VA and other submissions to the VA as well as other decision makers is an example of the kinds of advocacy the Plaintiff employed as a volunteer lobbying for human subject protection. See letter Ex. B.

17. Although the Plaintiff has had a couple of very close calls, the right to refuse a particular medical treatment or medicine has always been respected, even at the VA. As a person who has

earned a Graduate Certificate of Research Management, she is very aware of informed consent laws. But that can be suspended at in emergency situations.

18. Because of the Plaintiff's many demands for investigations at her former employer dating back to 1982, she became an uninformed Human Subject, a situation she has consistently objected to throughout the years. Defendant, through its employee, acted in violation of 38 CFR § 16.101 which outlines informed consent as one of human right protections for human subjects.

19. Plaintiff registered at the Rockford VA Clinic because of the problems she had at both Jesse Brown and Hines VA Hospitals, hospitals notorious for patient abuse as uncovered in the recent VA scandal, mistakenly assuming that Rockford VA Clinic which is a branch of the William S. Middleton VA Hospital in Madison, Wisconsin, would maintain a different ethical culture toward patients.

20. Plaintiff, having experienced VA malpractice at the hands of VA podiatrist once before (See Ex. B), would never give consent to toenails being cut inside the edges which is disapproved in the medical field and deviates from the standard of care and practice.

21. However, consent takes on deeper meaning for this Plaintiff whose VA record reveals a diagnosis of Post-Traumatic Stress Disorder (PTSD) resulting from a sexual assault at a young age, another area which was fodder for intimidation and persecution while employed at the Post Office in the creation of a hostile working environment. Defendant's act caused a re-emergence of flashbacks relating to the helplessness and powerlessness in those situations when the demands "NO" and "STOP!" had no meaning. All she could do was wait … and pray….

## ALLEGATIONS

22. Plaintiff alleges the actual and proximate cause of her current and future pain and suffering and disfigurement was the negligence of Tresea Larson, an employee of Rockford VA Center, a

facility protected under the Federal Tort Claims Act, which negligence includes, but is not limited to, the following: failure to properly treat the Plaintiff; failure to perform appropriate procedures in an appropriate manner; failure to render necessary treatment for the Plaintiff; failure to apply her learning and skill; and failure to obtain informed consent. At all times material to this complaint the Defendant was legally and vicariously responsible for the negligence of Tresea Larson who rendered treatment to the Plaintiff.

23. That as a direct, proximate and reasonable foreseeable result of the negligence of Defendant through employee, Tresea Larson, the Plaintiff was injured with resulting pain, suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of previously existing conditions. The losses are permanent or continuing in their nature and the Plaintiff will suffer such losses and impairments in the future.

24. Defendant, through the acts of employee, caused the Plaintiff to suffer immediate and severe emotional distress. So traumatized and shocked by the experience, she would not leave the facility until her glucose level was taken by staff because she felt she was going to faint or lose consciousness going into diabetic coma on the way home.

25. Defendant, through the acts of employee, intentionally caused physical harm by deviating from the standard practice of trimming toenails. Her intent was shown by her lying, saying that deviation of trimming the sides of toenails, not straight across, was now approved for diabetic patients. Toes trimmed along the sides sets the stage for ingrown toenail in which the toenail grows and cuts into the flesh causing unbearable pain and necrotic tissue. This situation is hazardous for diabetic patients having poor circulation. In addition to the Plaintiff's poor circulation caused by heart failure and peripheral neuropathy of her extremities--especially in her

legs and feet--makes the prognosis poor for the injury caused by the Defendant. The Plaintiff

had experienced this situation in the past stemming from a VA podiatrist at Jesse Brown VA

Hospital where only one side of the right Great Toenail was cut into and had to have the resultant

ingrown toenail corrected with surgery by a civilian podiatrist. This time the Defendant's

employee showed her complete disregard for the Plaintiff by cutting all 10 toenails in that

manner, even cutting the nailbed completely off the small toe on the Plaintiff's left foot leaving it

exposed to possible fungal or bacterial infection contamination of the blood.

26. Defendant violated 38 CFR § 16.101 that requires informed consent before using

experimental or procedures deviating against established standards of care. By the Defendant

lying to the Plaintiff, a woman who has had diabetes for almost 20 years and is aware of the

importance of trimming toenails straight across, the Defendant attempted to deceive the Plaintiff.

27. Plaintiff is of a naturally soft-spoken and gentle nature temperament, not given to hostility

although burdened with a psychiatric label which indicates a probability of irrational behavior.

Her temperament has helped the Plaintiff maintain her freedom in the community and has kept

her so far out of medical and physical restraints while enduring years of retaliation and

harassment; only making a few police reports, writing legislators and agencies, and filing civil

actions.

28. Because of her past experiences with the VA, Plaintiff alleges a flag on her VA file allowing

invasive medical experimental procedures thereby paving the way for intentional torts and acts

committed by unethical employees knowing they will be defended by the Defendant. A

subpoena, expert testimony, and discovery will aid in proving this allegation.

29. On February 4, 2019, the Plaintiff was put in a "damned if you do, damned if you don't"

situation where either choice has a negative outcome. Since no one else was in the room, if

Plaintiff got up and left, the Defendant might accuse her of anything--even fighting her-- since the Plaintiff knew Defendant was lying about the procedure. And as a result, the Plaintiff may have been placed in medical or physical restraints and lose her freedom or perhaps her life due to the injection of sedatives or go into cardiac arrest because of her blood pressure and the ensuing emotional shock in order for the Defendant to cover up the medical battery. The staff would likely have gone along with the ruse and erase the liability rather than blow the whistle on a coworker thereby calling for an investigation of the operations of the clinic. The only evidence, the Plaintiff's toenails, would never have been called into question. After all, it was the Defendant's employee's word against a psychiatrically labelled patient.

30. The Plaintiff, although shaken, chose to wait until she was able to be outside that room where there was a multitude of staff and visitors before she felt safe; but the harm was done. The Plaintiff knew she faced prospects of amputation arising from poor circulation and neuropathy, having an uncle with diabetes who lost a leg and his life after a series of amputations at Hines VA that began with a toe. Feeling jittery and fearing symptoms of low blood sugar causing diabetic coma on the long drive home, Plaintiff had staff read her glucose before leaving.

31. Plaintiff's comorbidities have since worsened due to the anxiety and stress caused by the acts of the Defendant. Prior to February, Plaintiff's A1C had lowered to 6.8 and her Blood Pressure averaged 160/85. Her A1C now is above 8, and blood pressure averages 195/90. Already a portly woman, she also has gained 10 lbs.

## CAUSE OF ACTION

### Negligence

32. As a result of the negligence and medical malpractice of Defendant's employee, Plaintiff sustained injuries necessitating toenail surgery, mental anguish, intensified mental disability, and

will continue in the future to suffer pain, mental anguish, bodily injuries requiring medical and
hospital expenses.

## Intentional Infliction of Emotional Distress

33. As a podiatric technician, Defendant's employee was knowledgeable regarding the
appropriate procedure for trimming toenails, but lied and intimidated the Plaintiff intentionally
causing emotional distress because there was no one else present to witness this deceit and acts.
The Defendant's conduct was extreme and outrageous and beyond all possible bounds of
decency. The emotional distress sustained by the Plaintiff is severe and of a nature that no
reasonable person could be expected to endure.

## Medical Battery Against Tresea Larson

34. Plaintiff consented to have toes trimmed by the podiatric technician who happened to be
Tresea Larson. The Defendant, through its employee, Tresea Larson, committed medical battery
by performing a medical procedure that is disapproved by the medical profession and not the
standard treatment for nail trimming, and can lead to a series of amputations for a diabetic
person. As a result of the medical battery, Plaintiff requires psychologists, physicians, and
surgeons to examine, treat, and care for her thereby incurring medical and incidental expenses,
the exact amount of these expenses is not known currently and plain. Plaintiff has suffered great
physical, mental, and nervous pain and suffering due to the medical battery caused by the
Defendant's employee, Tresea Larson.

35. Plaintiff alleges the actual and proximate cause of her current and future pain and suffering
and disfigurement was the negligence of Tresea Larson, an employee of Rockford VA Center, a
facility protected under the Federal Tort Claims Act, which negligence includes, but is not
limited to, the following: failure to properly treat the Plaintiff; failure to perform appropriate

procedures in an appropriate manner; failure to render necessary treatment for the Plaintiff;

failure to apply her learning and skill; and failure to obtain informed consent.

Human Rights Violation

**36.** The Defendant, through its employee, violated 38 CFR § 16.101 that requires informed

consent before using experimental or procedures deviating against established standards of care.

**PRAYER FOR RELIEF**

On February 23, 2019, Plaintiff submitted her claim in the amount of $10,00,000 to U.S. Army

Midwest District, Office of Chief Counsel, which agency rejected the claim by letter postmarked

April 12, 2019 and received April 16,2019.

**THEREFORE**, Plaintiff demands judgment against Defendant in the sum of $10,000,000 which

includes the costs of suit, and such other and further relief as the court may deem proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS.

Dated:  October 11, 2019

Respectfully submitted,

Kaiya Marie, Pro se
1305 N. Annie Glidden Rd #1011
DeKalb IL  60115