UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| KAIYA MARIE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 C 50268 |
| | ) | |
| v. | ) | Judge Johnston |
| | ) | Magistrate Judge Jensen |
| UNITED STATES OF AMERICA & | ) | |
| ROCKFORD VA CLINIC | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT UNITED STATES OF AMERICA'S
ANSWER TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant United States of America, by its attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, for its answer to the complaint, states as follows:

**First Defense**

The plaintiff's medical negligence claim should be dismissed because she failed to file an affidavit and report by a qualified healthcare professional stating that "there is a reasonable and meritorious cause" for litigation as required by 735 ILCS 5/2-622(a).

**Second Defense**

The Rockford VA clinic should be dismissed because it is not a proper defendant under the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2679.

**Third Defense**

Plaintiff's deception claim should be dismissed because she failed to exhaust her administrative remedies.

### Fourth Defense

Plaintiff's deception claim should be dismissed because the United States has not waived sovereign immunity with respect to such claims. 28 U.S.C. § 2680(h).

### Fifth Defense

Plaintiff failed to mitigate her damages.

### Sixth Defense

Plaintiff's claims are barred to the extent that the actions or omissions of the plaintiff were the proximate cause of, or contributed to, any alleged injuries or damages that plaintiff sustained.

### Seventh Defense

Plaintiff's fault and negligence in causing the alleged damages must be compared against the fault and negligence, if any, of the United States, and plaintiff's recovery, if any, must be diminished in proportion to plaintiff's fault and negligence in causing the alleged damages.

### Eighth Defense

Plaintiff's comparative negligence is more than fifty percent such that the United States is not liable for any injuries or damages sustained by the plaintiff due to the alleged acts or omissions by the United States.

### Ninth Defense

Plaintiff's recovery, if any, is limited to the damages recoverable under the Federal Tort Claims Act. Plaintiff cannot recover attorneys' fees, pre-judgment interest, punitive damages, equitable relief, or an amount in excess of that set forth in the administrative tort claim from the United States.

### Tenth Defense

Pursuant to 28 U.S.C. § 2402, plaintiff is not entitled to a trial by jury.

### Eleventh Defense

Plaintiff's claims are barred to the extent that her alleged injuries were caused by an act or omission of a third-party, including, without limitation, any healthcare professionals who were not employed by the federal government.

### Twelfth Defense

Answering the specific allegations of the complaint, the United States of America admits, denies, or otherwise avers as follows:

1.      **Complaint:**   Plaintiff Kaiya Marie brings this action under the Federal Tort Claims Act, 28 § 2671et seq.   This court is vested with jurisdiction pursuant to 28 U.S.C. § 1346(b).   Venue is proper pursuant to 28 U.S.C. § 1402 as well because at all times the Plaintiff resided in this district and all of the wrongful acts and/or omissions complained of herein occurred.

**Response:**     The United States denies the allegations of this paragraph except admits that the plaintiff purports to file a cause of action as alleged, admits that venue is proper, and admits that the court has jurisdiction over the plaintiff's medical negligence, medical battery, and intentional infliction of emotional distress claims.

2.      **Complaint:**    Plaintiff has exhausted her claims by filing the required forms with the Defendant and having her claims denied.   See Appendix A (Denial Letter).

**Response:**     The United States denies the allegations of this paragraph except admits that the plaintiff exhausted her administrative remedies with respect to her medical negligence, medical battery, and intentional infliction of emotional distress claims.

## INTRODUCTION

**3.** **Complaint:** On February 4, 2019, Plaintiff Kaiya Marie presented herself at the Rockford VA Clinic which is operated by Defendant United States of America for her appointment with the Podiatric Technician, Tresea Larson, an employee of the Defendant. The Defendant, through its employee, intentionally deviated from standard practice against the Plaintiff's expressed objections and consent.

**Response:** The United States denies the allegations of this paragraph except admits that the United States, through the Department of Veterans Affairs, operates and employs individuals, including Tresea Larson, L.P.N., at a medical facility located in Rockford, Illinois, and further admits that the plaintiff was seen by Nurse Larson at the Rockford VA clinic on February 4, 2019.

## PARTIES

**4.** **Complaint:** Plaintiff, Kaiya Marie, resides at 1305 N Annie Glidden Rd, #1011, in the city of DeKalb which is located in DeKalb County in the state of Illinois. The acts and omissions occurred within the Northern District of Illinois.

**Response:** The United States denies the allegations of this paragraph except admits that the treatment at issue occurred in the Northern District of Illinois and admits that the plaintiff resides at the stated address.

**5.** **Complaint:** Defendant, United States of America, permits and holds a community health center, its officers and staff, to be federal employees for the purposes of malpractice tort claims against such community health centers. Rockford VA Clinic is established in accordance with the Public Health Service Act and is located at 816 Featherstone Rd, Rockford, Winnebago County, IL 61107.

4

**Response:** The United States denies the allegations of this paragraph except admits that the United States, through the Department of Veterans Affairs, operates a medical facility located at the stated address in Rockford, Illinois, and admits that it may be a proper defendant in FTCA actions stemming from treatment provided at such facilities in some circumstances.

6. **Complaint:** Defendant, in operating the clinic, holds itself out to veterans and their dependents to use that degree of diligence, and attention used by hospitals and other health care medical facilities generally in and within the community, in the care and treatment of patients.

**Response:** The United States denies the allegations of this paragraph except admits that the United States, through the Department of Veterans Affairs, operates a medical facility located in Rockford, Illinois, and admits that it owes its patients a duty of care consistent with relevant state law.

7. **Complaint:** Defendant has in its employ physicians, nurses, interns, residents, nurse aides, medical students, and other medical personnel including specialty health providers such as podiatrists and podiatric technicians. The Defendant exercises exclusive control and supervision over these employees.

**Response:** The United States denies the allegations of this paragraph except admits that the United States, through the Department of Veterans Affairs, employs various medical providers and staff at medical facilities including at the facility located in Rockford, Illinois.

8. **Complaint:** On information and belief, Tresea Larson was acting within the scope of her employment and duties as a Podiatry Technician employed at Rockford VA Clinic and is considered to be an employee of Defendant, United States of America.

**Response:**     The United States denies the allegations of this paragraph except admits that the United States, through the Department of Veterans Affairs, employed Tresea Larson, L.P.N., to work at the medical facility located in Rockford, Illinois, and that Nurse Larson was acting within the scope of her employment in terms of her interactions with the plaintiff on February 4, 2019.

9.     **Complaint:**     Plaintiff, Kaiya Marie, had been an established patient of Rockford VA Clinic dating back to September, 2017, for the management of diabetes and heart disease along with comorbidities including peripheral neuropathy which affected her feet although she had been seen only once by the podiatrist at that clinic in over a year.  At that time in 2017, both the podiatrist and a podiatric technician (not Defendant's employee Tresea Larson) or student were present at the appointment.

**Response:**     The United States denies the allegations of this paragraph except admits that the plaintiff has been a patient at the medical facility located in Rockford, Illinois, since March 23, 2017, where she has been evaluated and treated by medical providers and staff, including podiatrists, for various conditions including diabetes and hypertension.

## BACKGROUND

10.     **Complaint:**     Plaintiff, Kaiya Marie, received a diagnosis of Paranoid Ideation in 1984 from the Veterans Administration after unsuccessfully suing the postal facility where she was employed from 1979 – 1983.  Because of the stress and ongoing harassment in the creation of hostile work environment between management and the postal union, she became unable to perform her duties and sought psychological support at Jesse Brown VA Hospital during her absence from work.  Documentation was needed as well for sick leave.

**Response:**     Deny.

6

11.     **Complaint:**     Plaintiff was labeled "whistleblower" only after she refused to sign a petition at her job at the Post Office, then tried to get an investigation of human experiment violations reminiscent of Nuremberg and the Tuskegee Syphilis experiments where black men were cycled through 40 years with the local University.

      **Response:**     Deny.

12.     **Complaint:**     Unable to find work after suing the Post Office, Plaintiff sought to pursue her education (receiving a BA, MPA, and MBA), form a nonprofit organization—Strategies for Optimal Achievement and Regeneration, testify on behalf of psychiatrically labelled disabled persons for the implementation of The Americans with Disabilities Act (ADA), register as a volunteer federal lobbyist with a special interest  for research subjects and senior citizens, and write several letters to governmental agencies and decision makers.

      **Response:**     The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

13.     **Complaint:**     During this time, she has been subjected to harassment, medical malpractice by civilian and VA physicians, public humiliation at businesses, and acts of "normative violence" in the community.  Normative violence is that which is accepted against persons the community hold as marginal.  This includes disabled, aged, and whistleblowers, and those having other characteristics that makes them targeted. Like the Plaintiff, usually they are friendless and have few resources, if any.

      **Response:**     Deny.

14.     **Complaint:**     It is the Plaintiff's belief that facts were gathered that proved her claims of being followed and harassed influenced the VA's dropping the original diagnosis of paranoid delusions, eventually adopting the current Bipolar diagnosis because of her educational

achievements—high episodes because of her aspirations; lows, recognizing the limitations enforced by the diagnosis.

        **Response:**    Deny.

    **15.**    **Complaint:**    Another concern the Plaintiff has regarding the VA's changing her diagnosis without notification is the right to object to an obvious error she didn't find until recently requesting her record which shows Memory Loss inserted surreptitiously at Jesse Brown VA Hospital and mirrored at Rockford VA Clinic as one of her diagnoses.

This is important because of the effect a diagnosis of Memory Loss has on the way the Plaintiff is perceived by others and paves the way for neglect and abuse. This diagnosis may have been instrumental in the Defendant's actions, expecting be no consequences since staff only considered the Plaintiff loosely associated with Rockford VA Clinic. The Plaintiff's memory is intact according to a June 1, 2020 evaluation at the Thompson Memory Center located in Algonquin, Illinois. The Plaintiff's advanced degrees and graduate certificate were obtained about five years after the memory loss diagnosis.

        **Response:**    Deny.

    **16.**    **Complaint:**    The deceit used in those insertions also influenced the perception of Dr. Thomas who was the first assigned primary care physician at their initial meeting at Rockford VA Clinic. Plaintiff, Kaiya Marie, brought her adult daughter to accompany her for the appointment. However, Dr. Thomas only made eye contact and communicated with the Plaintiff's daughter. Being annoyed at this, the Plaintiff asserted that her daughter was not her guardian, and questions should be directed to her (the Plaintiff). Dr. Thomas made a note of this and put it in the Plaintiff's file.

        **Response:**    Deny.

17.     **Complaint:**     After complaining about treatment at Hines VA, Plaintiff had not utilized VA healthcare for over four years and was prompted to enter the health care system again because of failing health and the need for Aid and Attendance Benefit.  Plaintiff had paid for and utilized healthcare insurance offered at the universities she attended—Indiana University Northwest and Keller Graduate School of Management.  However, civilian doctors were unwilling to fill out the form, and when they did, would not document the Plaintiffs' needs nor did they properly test and diagnose her muscle weakness.

One civilian physician's orders were to have her take half her allotment of fast-acting insulin in the morning and half before bed.  Had the Plaintiff not known about the effects of insulin by that time, she would have succumbed to coma during the night.  However, she followed one Aurora VA nurse practitioner's orders to take 50 units of slow acting insulin in the morning and 10 units fast acting insulin before meals.  The Plaintiff did this many months before learning through her own research that that amount of insulin was almost twice what she needed based on her weight.  This may be a factor contributing to the muscle wasting she's experiencing.

     **Response:**     Deny.

18.     **Complaint:**     Reluctantly, the plaintiff had to re-enter the VA health system to get Aid and Attendance form completed, but thought that appointments at Rockford VA Clinic transferred her out of the Hines Hospital VA system and into the William S. Middleton VA hospital system located in Madison, WI, although there were some curious occurrences: 1) the regular nurse that was assigned to Dr. Thomas did not attend Plaintiff (Plaintiff did not find this out until this year); 2) the nurse, Ashley Jones, who acted as Dr. Thomas' nurse for Plaintiff's appointments did not use the thermal forehead scan thermometer the Rockford VA Clinic had adopted several years ago; but used a mercury thermometer from a container that had some liquid in it.  Because the

9

Plaintiff had experienced and survived malicious attempts before that included ingesting an questionable substance, the Plaintiff was hesitant but did not know how to address her doubts given her diagnosis; and 3) upon visiting a relative in 2018, the Plaintiff became ill and presented herself for emergency treatment at the Las Vegas VA Hospital.

In that situation, when she returned to Illinois, she received a letter stating that her VA file was being transferred from *Hines, VA to Las Vegas VA—NOT FROM ROCKFORD, VA!* One thing is that Plaintiff had explained to ER that she was only visiting for a week. Her understanding was that her files were at the Middleton VA hospital in Madison, Wisconsin of which at Rockford VA Clinic is a branch. It appeared to the Plaintiff that since her files were still in the Hines VA System where she had made complaints about the mistreatment she experienced, perhaps Ashley Jones was connected somehow (formally or informally through social networks) and may have been specially assigned from Hines and following a retaliation agenda not unlike the ones the Plaintiff describes in Appendix B.

As the Plaintiff was leaving the nurses area into the lobby, she usually saw an slender tall, black woman—possibly in her thirties or forties—who was not a member of the staff (most of the time having on outerwear) in the nurses area conferring with nurse Ashley Jones in an authoritative manner (although the Plaintiff did not hear the conversion, body language conveyed that the nurse was answering questions to a superior). Although it usually was this tall woman who executed this objective, at least once a shorter black woman came instead. One could sense by their attire and bearing they were not attached to Rockford VA Clinic because no one except patients, staff, and persons conducting official business are allowed in this area. The Plaintiff opines that because she had appointment times that varied when these occurrences would happen, that there was a high possibility of some kind of connection.

**Response:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

19. **Complaint:** However, now at the age of 73, the gross intimidation and isolation she has suffered throughout the years is shown in her demeanor. Her voice is weak and apologetic from seldom being used, she is somewhat stooped, and overly cautious about people. It affects her confidence in moving forward to earning her Doctorate Degree in Health Services--lacking only her dissertation--in which she has to be accepted among peers in the Doctoral community.

**Response:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

20. **Complaint:** Plaintiff wishes to inform the court of these facts because her demeanor belies her standing as an educated woman who advocates for disabled persons against the very actions to which she was being subjected, and she feels she must convey the shock, fear, and helplessness she felt as everything she studied in her courses regarding human rights violations were taking place in real time to her.

**Response:** Deny.

21. **Complaint:** One letter written to a congressman in 2014 –two years before the most recent VA scandal--summarizes the history she has had with the VA and other submissions to the VA as well as other decision makers is an example of the kinds of advocacy the Plaintiff employed as a volunteer lobbying for human subject protection. See letter Appendix. B..

**Response:** Deny.

22. **Complaint:** Although the Plaintiff has had a couple of very close calls involving deceptive practices of providers, the right to refuse a particular medical treatment or medicine has always been respected, even at the VA. As a person who has earned a Graduate Certificate of

Research Management, she is very aware of informed consent laws. However, consent can be suspended at in emergency situations.

> **Response:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

23. **Complaint:** Because of the Plaintiff's many demands for investigations at her former employer dating back to 1982, she became an uninformed Human Subject, a situation she has consistently objected to throughout the years. Defendant, through its employee, acted in violation of 38 CFR § 16.101 which outlines informed consent as an important protection for human subjects.

> **Response:** Deny.

24. **Complaint:** Plaintiff registered at the Rockford VA Clinic because of the problems she had at both Jesse Brown and Hines VA Hospitals, hospitals notorious for patient abuse as uncovered in the recent 2016 VA scandal, mistakenly assuming that Rockford VA Clinic which is a branch of the William S. Middleton VA Hospital in Madison, WI maintained a different ethical culture toward patients.

> **Response:** Deny.

25. **Complaint:** Plaintiff, having experienced VA malpractice at the hands of VA podiatrist at Jesse Brown Hospital once before would never give consent to toenails being cut inside the edges which is disapproved in the medical field and deviates from recognized standard of care and practice for diabetics.

> **Response:** Deny.

26. **Complaint:** However, consent takes on an additional level and even deeper meaning for this Plaintiff whose VA record reveals a diagnosis of Post-Traumatic Stress Disorder

(PTSD) resulting from a sexual assault at a young age, another area which was fodder for intimidation and persecution while employed at the Post Office in the creation of a hostile working environment. Defendant's act evoked a re-emergence of flashbacks relating to the helplessness and powerlessness in those situations when the demands "NO!" and "STOP!" had no meaning. All she could do was wait… and pray….

        **Response:**    Deny.

## ALLEGATIONS

**27.**   **Complaint:**   Plaintiff alleges the actual and proximate cause of her current and future pain and suffering and disfigurement was the negligence of Tresea Larson, an employee of Rockford VA Center, a facility protected under the Federal Tort Claims Act, which negligence includes, but is not limited to, the following: failure to properly treat the Plaintiff; failure to perform appropriate procedures in an appropriate manner; failure to render necessary treatment for the Plaintiff; failure to apply her learning and skill; intentionally intimidating and inflicting emotional stress; and failure to obtain informed consent. At all times material to this complaint the Defendant was legally and vicariously responsible for the negligence and medical battery of Tresea Larson who rendered treatment to the Plaintiff.

        **Response:**    Deny.

**28.**   **Complaint:**   That as a direct, proximate and reasonable foreseeable result of the negligence of Defendant through employee, Tresea Larson, the Plaintiff was injured with resulting pain, suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of previously existing conditions. The losses are permanent or continuing in their nature and the Plaintiff will suffer such losses and impairments in the future.

13

**Response:**    Deny.

**29.    Complaint:**    Defendant, through the acts of employee, caused the Plaintiff to suffer immediate and severe emotional distress.  So traumatized and shocked by the experience, she would not leave the facility until her glucose level was taken by staff because she felt she was going to faint or lose consciousness going into diabetic coma on the way home.

**Response:**    Deny.

**30.    Complaint:**    Defendant, through the acts of employee, intentionally caused physical harm by deviating from the standard practice of trimming toenails. Her intent was shown by her lying, saying that deviation of trimming the sides of toenails—not straight across—was now approved for diabetic patients. Toes trimmed along the sides sets the stage for ingrown toenail in which the toenail grows and cuts into the flesh causing unbearable pain and necrotic tissue. This situation is hazardous for diabetic patients having poor circulation. In addition to the Plaintiff's poor circulation caused by heart failure and peripheral neuropathy of her extremities--especially in her legs and feet--makes the prognosis poor for the injury caused by the Defendant.

The Plaintiff had experienced this situation in the past stemming from a VA podiatrist at Jesse Brown VA Hospital where only one side of the right Great Toenail was cut into and had to have the resultant ingrown toenail corrected with surgery by a civilian podiatrist. This time the Defendant's employee showed her complete disregard and contempt for the Plaintiff by cutting nine toenails in that manner on **both** sides of all toenails (excluding the left side of the Right Great Toe which had been corrected previously from the prior VA Podiatrist cut) except for the left "pinkie" which she cut the nailbed completely off, leaving it exposed to possible fungal or bacterial infection contamination of the blood.

**Response:**    Deny.

14

**31.** **Complaint:** Defendant violated 38 CFR § 16.101 that requires informed consent before using experimental or procedures deviating against established standards of care.  By the Defendant lying to the Plaintiff, a woman who has had diabetes for almost 20 years and is aware of the importance of trimming toenails straight across, the Defendant attempted to deceive the Plaintiff by telling her trimming the sides was a new technique, a blatant lie.

 **Response:** Deny.

**32.** **Complaint:** Plaintiff is of a naturally soft-spoken and gentle nature temperament, not given to hostility although burdened with a psychiatric label which indicates a probability of irrational behavior.  Her temperament has helped the Plaintiff maintain her freedom in the community and has kept her (so far) out of chemical and physical restraints while enduring years of retaliation and harassment; only making a few police reports, writing legislators and agencies, and filing civil actions.

 **Response:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

**33.** **Complaint:** Because of her past experiences with the VA, Plaintiff alleges a flag on her VA file allowing invasive medical experimental procedures thereby paving the way for intentional torts and malicious acts committed by unethical employees knowing they will be defended by the Defendant. A subpoena and discovery will aid in proving this allegation.

 **Response:** Deny.

**34.** **Complaint:** Plaintiff alleges that she was deceived by being led to believe she was being treated by Rockford VA Clinic—not following Hines, VA protocol—after making public complaints about their mistreatment of her.  Because the Rockford VA Clinic uses the forehead scan, not the mercury thermometer, the plaintiff distrusts the presence of liquid in the

15

container nurse Ashley Jones utilized in taking the Plaintiff's vitals at Dr. Thomas' appointment who was the assigned primary care provider and alleges the high probability of the introduction of a contaminant into her body in the deception.

Because Plaintiff overheard nurse Ashley Jones tell nurse Rebecca Feltz (who Plaintiff later learned was Dr. Thomas' actual nurse) that Plaintiff was "crazy" when they passed and glanced toward her in the lobby at her second appointment with Dr. Thomas, Plaintiff became averse to having Ashley Jones' taking her vitals and finally asked the Patient Advocate office if using the Americans with Disability Act (Plaintiff had presented testimony on behalf of psychiatrically labelled persons for the implementation of this law) for an accommodation to prevent Ms. Jones having access to Plaintiff at appointments and lab draws. After discussing the situation with Nurse Practitioner Wirtz, the next assigned Primary Care provider, Plaintiff was told she can just ask for another nurse to get vitals or labs.

The Plaintiff opines that Ms. Jones' response was in answer to the actual nurse, Ms. Feltz, asking why she (Rebecca Feltz) wasn't handling this particular patient of Dr. Thomas since she was Dr. Thomas' nurse. That interchange was the source of Plaintiff's wariness regarding Ashley Jones although she had no power to object to the nurse assignment. It was not until the summer of 2019 when a different nurse took the Plaintiff's vitals with the forehead scan that she learned (after inquiring) that Rockford, VA Clinic uses a forehead scan, not the mercury thermometer, and has for at least seven years.

      **Response:**   Deny.

**35.**   **Complaint:**   Plaintiff alleges that on February 4, 2019, the Plaintiff was put in a "damned if you do, damned if you don't" situation where either choice has a negative outcome. Since no one else was in the room, if Plaintiff got up and left, the Defendant might accuse her of

16

anything--even fighting her--since the Plaintiff knew Defendant was lying about the procedure. And as a result, the Plaintiff may have been put in chemical or physical restraints and lose her freedom or perhaps her life due to the injection of strong tranquilizers or go into cardiac arrest because of her blood pressure and the ensuing emotional shock in order for the Defendant to cover up the medical battery.

Even if they suspected otherwise because unruly behavior is uncharacteristic of the Plaintiff, the staff would likely have gone along with the deception and erase the liability rather than blow the whistle on a coworker there by calling for an investigation of the operations of the clinic's practices. The only evidence, the Plaintiff's toenails, would never have been called into question. After all, it was the Defendant's employee's word against a psychiatrically labelled patient who was written off with memory loss which is indicative of dementia.

> **Response:** Deny.

**36. Complaint:** The Plaintiff alleges that Defendant's employee ascertained the Plaintiff's status as an aging, psychiatrically labeled, black woman having dementia—based on a faulty diagnosis of memory loss—with no connections and carried out an agenda of intentional harm necessitating future surgery and an earlier demise.

Although shaken, Plaintiff chose to wait until she was able to be outside that room where there was a multitude of staff and visitors before she felt safe; but the harm was done. The Plaintiff knew she faced prospects of amputation arising from poor circulation and neuropathy, having an uncle with diabetes who lost a leg and his life after a series of amputations at Hines VA that began with a toe. Feeling jittery and fearing symptoms of low blood sugar causing diabetic coma on the long drive home, Plaintiff had staff read her glucose before leaving. Her blood sugar was fine for

a person with diabetes (under 120). She was not suffering from hypoglycemia but symptoms of jitteriness and light-headedness persisted for some time after returning home.

           **Response:**    Deny.

    **37.**    **Complaint:**    Plaintiff's comorbidities have since worsened due to the anxiety and stress caused by the outrageous acts of the Defendant. Prior to February, Plaintiff's A1C had lowered to 6.8 and her Blood Pressure averaged 160/85. Her A1C now is above 8, and blood pressure averages over 200/90. Already a portly woman, she also has gained at least 10 lbs.

           **Response:**    Deny.

**CAUSE OF ACTION**

Negligence

    **38.**    **Complaint:**    As a result of the negligence and medical malpractice of Defendant's employee, Plaintiff sustained injuries necessitating toenail surgery, mental anguish, intensified mental disability, and will continue in the future to suffer pain, mental anguish, bodily injuries requiring medical and hospital expenses. Defendant failed to conform to the applicable standard of care that is grossly apparent to professionals and obvious to a layman.

           **Response:**    Deny.

Intentional Infliction of Emotional Distress

    **39.**    **Complaint:**    As a podiatric technician, Defendant's employee was knowledgeable regarding the appropriate procedure for trimming toenails, but made a statement Plaintiff knew to be a lie thereby intimidated the psychiatrically diagnosed Plaintiff intentionally causing emotional distress because there was no one else present to witness these deceits and harmful acts. By proceeding to cut along the sides of the Plaintiff's toenails in spite of the Plaintiff's verbal command to not do so, Defendant's conduct was extreme and outrageous and

18

beyond all possible bounds of decency. Defendant's declaration through its employee, Tresea Larson, that trimming the sides of toenails was a new procedure was an attempt to deceive Plaintiff, one that Plaintiff knew was false and realized she (the Plaintiff) was in a dangerous situation having no one to witness the lie.

Stunned by these events and knowing she lacked the strength to move quickly, Plaintiff was unable to move from the deeply inset medical chair in which she was seated. The emotional distress sustained by the Plaintiff is severe and of a nature that no reasonable person could be expected to endure.

        **Response:**     The United States makes no response to this claim because it is the subject of a pending motion to dismiss. To the extent a response is required: deny.

Deception

    **40.**    **Complaint:**   Plaintiff was deceived into believing her healthcare was no longer was affiliated with neither Jesse James VA nor Hines VA hospitals, hospitals she had made public complaints against and had vowed to not return.

        **Response:**     The United States makes no response to this claim because it is the subject of a pending motion to dismiss. To the extent a response is required: deny.

Medical Battery Against Tresea Larson

    **41.**    **Complaint:**   Plaintiff presented herself at her appointment at Rockford VA Clinic to have toes trimmed by the podiatric technician who happened to be Tresea Larson. The Defendant, through its employee, violated Illinois Statue 105.05 Consent To Procedure—Battery—Non-Emergency which specifies that consent for a procedure must be obtained unless a person is a child or lacks mental capacity. Then only an authorized person (guardian or next of

19

kin) can give consent to medical procedures. Lack of Informed Consent also violates Human Rights policies. The Code of Federal Regulations, 38 CFR § 16.101, requires Informed Consent for the Protection of Human Subjects when research and medical training utilizes "procedures deviating against established standards of care."

Plaintiff does not lack mental capacity and handles her own affairs. That idea which is suggestive of a lack of mental capacity stemmed from the diagnosis of memory loss surreptitiously placed in Plaintiff's electronic medical record over 10 years ago. Plaintiff has never been counseled nor received medication for memory loss. The Defendant counted on that diagnosis to get away with harming defenseless Plaintiff, already a disabled senior citizen, without consequences. The Defendant, through its employee, Tresea Larson, committed medical battery by performing a medical procedure that is disapproved by the medical profession and is not the standard treatment for toenail trimming, and can lead to a series of amputations for a diabetic person against the expressed consent of the Plaintiff.

As a result of the medical battery, Plaintiff requires psychologists, physicians, and surgeons to examine, treat, and care for her thereby incurring medical and incidental expenses, the exact amount of these expenses is not known currently and plain. Plaintiff has suffered great physical, mental, and nervous pain and suffering due to the medical battery caused by the Defendant's employee, Tresea Larson.

                **Response:**     Deny.

42.    **Complaint:**    Plaintiff's actual and proximate cause of her current and future pain and suffering and disfigurement is due to the medical battery of Tresea Larson, an employee of Rockford VA Center, a facility protected under the Federal Tort Claims Act, which negligence includes, but is not limited to, the following: failure to properly treat the Plaintiff; failure to perform

appropriate procedures in an appropriate manner; failure to render necessary treatment for the Plaintiff; failure to apply her learning and skill; and outrageous and extreme conduct due to her failure to obtain informed consent.

      **Response:**    Deny.

      WHEREFORE, the United States requests that the case be dismissed with costs and that the court award such further relief as may be appropriate.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By:  s/ Jana L. Brady                
     JANA L. BRADY
     Assistant United States Attorney
     327 South Church Street, Suite 3300
     Rockford, Illinois  61101
     (815) 987-4444
     jana.brady@usdoj.gov