UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| KAIYA MARIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  19 C 50268 |
| v. | ) | |
| | ) | Judge Johnston |
| UNITED STATES OF AMERICA and | ) | Magistrate Judge Jensen |
| ROCKFORD VA CLINIC, | ) | |
| | ) | |
| Defendants. | | |

**DEFENDANTS' MEMORANDUM**
**IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT**

### Introduction

Plaintiff Kaiya Marie filed this suit seeking to hold the United States and Rockford VA clinic liable under the Federal Tort Claims Act for injuries she suffered allegedly as a result of deficient podiatry care at the Rockford VA clinic on February 4, 2019.  The Seventh Circuit recently made it clear in *Young v. United States*, 942 F.3d 349 (7th Cir. 2019), that such claims must be supported by an affidavit and report by a qualified healthcare professional stating that "there is a reasonable and meritorious cause" for litigation as required by the Illinois Healing Art Malpractice Act, 735 ILCS 5/2-622(a).  Marie has not complied with § 2-622.  Consequently, her medical negligence and medical battery claims should be dismissed if she fails to supply the necessary affidavit.[1]

---

[1]  The United States reserves the right to file a motion for summary judgment on the merits at the conclusion of fact and expert discovery in the event the claims survive this threshold motion.

## Background

Kaiya Marie filed this medical malpractice and medical battery suit over a year ago pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, alleging, in part, that a VA clinic nurse deviated from the standard of care applicable to the treatment of diabetic patients while trimming Marie's toenails on February 4, 2019. Statement of Facts (SMF), ¶¶ 1-4. Marie alleges that the nurse failed to properly perform appropriate procedures in an appropriate manner during the podiatry visit, that the nurse failed to obtain informed consent, and that as a result of the nurse's negligence, Marie underwent toenail surgery. SMF, ¶¶ 3,4. Marie has not filed an affidavit or a reviewing health professional's report pursuant to 735 ILCS 5/2-622(a) stating that there is a reasonable and meritorious cause for her medical negligence and medical battery claims. SMF, ¶ 8.

## Argument

Summary judgment should be granted in favor of the United States with respect to Marie's medical negligence and medical battery claims because she did not file an affidavit supported by a healthcare professional's report that "there is a reasonable and meritorious cause" for her claim as required under Illinois law, 735 ILCS 5/2-622(a). The purpose of section 2-622 is "to reduce the number of frivolous medical malpractice lawsuits that are filed and to eliminate such actions at an early stage." *Hahn v. Walsh*, 762 F.3d 617, 632 (7th Cir. 2014). The certificate-of-merit requirement applies to plaintiffs in FTCA cases. *Young v. United States*, 942 F.3d 349, 350 (7th Cir. 2019). Under *Young*, this issue should be raised in a summary judgment motion rather than a motion to dismiss so that the plaintiff can be given extra time if necessary to provide the required affidavit.

Section 2-622's requirement applies to any cause of action that sounds in healing art malpractice even if it is styled as a medical battery claim. *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 18 (2d Dist. 2014); *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶¶ 93-94 (1st Dist. 2013) (dismissing medical battery claim for lack of compliance with Section 2-622 because the alleged conduct required a medical expert's opinion to help the jurors understand); *Schindel v. Albany Medical Corp.*, 252 Ill. App. 3d 389 (1st Dist. 1993). Here, Marie makes medical negligence and medical battery claims by alleging that the VA nurse cut the inside of her toenails instead of straight across and that doing so violated the standard of care applicable to diabetic patients since they have poor circulation. SMF, ¶¶ 3-4. She further alleges that the nurse failed to perform appropriate procedures in an appropriate manner and that as a result, she required toenail surgery. SMF, ¶¶ 3-4. Marie also alleges that the nurse not obtain informed consent for the procedure. *Id.* These claims require a certificate of merit.

Mindful that *pro se* prisoners "may have insuperable difficulty obtaining a favorable physician's report before filing a complaint," the court in *Young* held that a 2-622 defense should be raised in a motion for summary judgment instead of a motion to dismiss so that *pro se* prisoners may request extra time under Federal Rule of Civil Procedure 56(d) to gather essential evidence to obtain a 2-622 certificate of merit. 942 F.3d at 351-52. "Illinois wants insubstantial medical-malpractice suits resolved swiftly." 942 F.3d at 351. The facts here make for an even more compelling case for dismissing Marie's medical negligence and medical battery claims. Marie is not incarcerated, so she has had the freedom to retain an expert to review this case. She also has what she needs to retain an expert, *i.e.*, the medical records that she requested from the VA, SMF, ¶ 7, and it has been over a year since this suit was filed. Consequently, her medical negligence and medical battery claims should be dismissed.

**Conclusion**

For the foregoing reasons, this court should enter summary judgment in favor of the United States as to the plaintiff's medical negligence and medical battery claims.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By:   s/ Jana L. Brady
      JANA L. BRADY
      Assistant United States Attorney
      327 South Church Street, Suite 3300
      Rockford, Illinois  61101
      (815) 987-4444
      jana.brady@usdoj.gov

4

# Unpublished Legal Authority

 Caution
As of: November 30, 2020 3:36 PM Z

## *McDonald v. Lipov*

Appellate Court of Illinois, Second District

June 19, 2014, Opinion Filed

No. 2-13-0401

### Reporter

2014 IL App (2d) 130401 *; 13 N.E.3d 179 **; 2014 Ill. App. LEXIS 411 ***; 382 Ill. Dec. 766 ****; 2014 WL 2781162

MICHELLE EVA McDONALD, Plaintiff-Appellant, v. EUGENE G. LIPOV, d/b/a Advanced Pain Centers, S.C., d/b/a Alexian Brothers Medical Center, JAYDEEP JOSHI, d/b/a Advanced Pain Centers, S.C., d/b/a Alexian Brothers Medical Center, SARAH SANDERS, d/b/a Advanced Pain Centers, d/b/a Alexian Brothers Medical Center, VIREN GOHIL, d/b/a Alexian Brothers Medical Center, JEANNIE YCARRO, d/b/a Alexian Brothers Medical Center, BARRY BIKSHORN, d/b/a Northwest Neurology, d/b/a Alexian Brothers Medical Center, JERRY ANDREWS, d/b/a Alexian Brothers Medical Center, d/b/a IPC-Hospitalists of Chicago, SZYMON ROSENBLATT, d/b/a Chicago Institute of Neurosurgery, Defendants-Appellees.

**Subsequent History:** Appeal denied by *McDonald v. Lipov, 2014 Ill. LEXIS 1049, 386 Ill. Dec. 477, 20 N.E.3d 1255 (Ill., 2014)*

US Supreme Court certiorari denied by *McDonald v. Lipov, 2015 U.S. LEXIS 1596 (U.S., Mar. 2, 2015)*

**Prior History:** [***1] Appeal from the Circuit Court of Du Page County. No. 09-L-907. Honorable Hollis L. Webster and John T. Elsner, Judges, Presiding.

*McDonald v. Lipov, 2014 IL App (2d) 130401-U, 2014 Ill. App. Unpub. LEXIS 566 (2014)*

**Disposition:** Affirmed.

## Core Terms

trial court, battery, second amended complaint, battery claim, amended complaint, new claim, allegations, records, medical malpractice, certification, compliance, restates, patient, original complaint, meritorious, catheter, affiant, amend, expert medical opinion, motion to dismiss, limitations, malpractice, violations, consented, cure

## Case Summary

### Overview

ISSUE: Whether trial court properly dismissed plaintiff's second amended complaint with prejudice for failing to state a claim. HOLDINGS: [1]-Plaintiff's medical battery claims, which turned on whether defendants exceeded the parameters of the surgery to which she consented, required compliance with *735 ILCS 5/2-622(a)* because the issue was beyond the ken of a layperson and an assessment of the claims required knowledge, skill, or training in a technical area outside the comprehension of laypersons; [2]-Plaintiff's verification of her amended complaint by certification under *735 ILCS 5/1-109* was not a substitute for compliance with *735 ILCS 5/2-622(a)(3)*; [3]-Trial court did not abuse its discretion by denying plaintiff leave to assert new claims.

### Outcome

The court affirmed the judgment.

2014 IL App (2d) 130401, *130401; 13 N.E.3d 179, **179; 2014 Ill. App. LEXIS 411, ***1; 382 Ill. Dec. 766, ****766

## LexisNexis® Headnotes

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

**HN1**[⤓] **Defenses, Demurrers & Objections, Motions to Dismiss**

A motion to dismiss, pursuant to *735 ILCS 5/2-619* (2012), admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim.

Civil Procedure > Appeals > Standards of Review > De Novo Review

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

**HN2**[⤓] **Standards of Review, De Novo Review**

For a *735 ILCS 5/2-619* (2012) dismissal, the standard of review is de novo. When reviewing a dismissal under *§ 2-619*, a court must accept as true all well-pleaded facts in the plaintiff's complaint and all inferences that can reasonably be drawn in the plaintiff's favor. In ruling on a motion to dismiss under *§ 2-619*, the trial court may consider pleadings, depositions, and affidavits. Even if the trial court dismissed on an improper ground, a reviewing court may affirm the dismissal if the record supports a proper ground for dismissal.

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

**HN3**[⤓] **Pleadings, Heightened Pleading Requirements**

*735 ILCS 5/2-622* (2012) was enacted to curtail frivolous

medical malpractice lawsuits and to eliminate such actions at the pleading stage before the expenses of litigation mount.

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

**HN4**[⤓] **Pleadings, Heightened Pleading Requirements**

*735 ILCS 5/2-622(a)(1)* (2012) requires a plaintiff, if proceeding pro se, or his attorney to file with the complaint an affidavit of merit stating that the affiant has consulted and reviewed the facts of the case with a health professional who, in a written medical report -- after a review of the medical records and other relevant material -- has determined that there is a reasonable and meritorious cause for filing the action. A copy of the medical report must be attached to the affidavit and must clearly identify the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists.

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

**HN5**[⤓] **Pleadings, Heightened Pleading Requirements**

*735 ILCS 5/2-622(a)(2)* (2012) prescribes a 90-day extension for filing a required medical report, allowing a plaintiff to file with the complaint an affidavit stating that he was unable to obtain the health professional's consultation because a statute of limitations would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations. *Section 2-622(a)(3)* alternatively authorizes the plaintiff to file an affidavit stating that he or his attorney made a request to examine and copy records

2014 IL App (2d) 130401, *130401; 13 N.E.3d 179, **179; 2014 Ill. App. LEXIS 411, ***1; 382 Ill. Dec. 766, ****766

and that the party required to comply with the request failed to produce those records within 60 days. If the plaintiff executes an affidavit under *§ 2-622(a)(3)*, the certificate and report required by *§ 2-622(a)(1)* must be filed within 90 days of receiving the records.

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

*HN6*[↓] **Pleadings, Heightened Pleading Requirements**

The health-professional's report and affidavit requirements of *735 ILCS 5/2-622(a)* (2012) apply to any action, whether in tort, contract or otherwise, in which a plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice.

Healthcare Law > Medical Treatment > Patient Consent > Informed Consent

Torts > Intentional Torts > Assault & Battery > Elements of Battery

Healthcare Law > Medical Treatment > Patient Consent > Right to Refuse Treatment

Torts > Malpractice & Professional Liability > Healthcare Providers

*HN7*[↓] **Patient Consent, Informed Consent**

It is well established that a claim that a health professional acted without the informed consent of the patient is a type of medical malpractice claim. Corollaries to the consent requirement are that a patient has the right to refuse medical treatment, even if the patient's life is in jeopardy, and that a common-law battery is the unauthorized touching of the person of another. At the crossroads of these well-established medical malpractice principles exists the tort of medical battery. In a medical battery case, an injured party can recover by establishing that (1) there was no consent to the medical treatment performed, (2) the treatment was

against the injured party's will, or (3) the treatment substantially varied from the consent granted. Under such circumstances, a battery has occurred because the person administering the medical care intentionally touched the person of another without authorization.

Healthcare Law > Healthcare Litigation > Actions Against Healthcare Workers > Doctors & Physicians

Torts > Intentional Torts > Assault & Battery > Elements of Battery

Healthcare Law > Medical Treatment > Patient Consent > Informed Consent

*HN8*[↓] **Actions Against Healthcare Workers, Doctors & Physicians**

Lack of consent to medical procedures gives rise to two causes of action: one based on negligence and the other based on battery. Where an unauthorized surgeon operates, he commits a technical trespass to the patient resulting in the intentional tort of battery. It is not the hostile intent of the defendant but rather the absence of consent by the plaintiff that is at the core of an action for battery.

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

Torts > ... > Proof > Evidence > Expert Testimony

Healthcare Law > Healthcare Litigation > Actions Against Healthcare Workers > Doctors & Physicians

Torts > Malpractice & Professional Liability > Healthcare Providers

*HN9*[↓] **Pleadings, Heightened Pleading Requirements**

The plain and unambiguous language of *735 ILCS 5/2-622* (2012) does not limit the requirement of an affidavit and expert medical opinion solely to medical malpractice claims.

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

2014 IL App (2d) 130401, *130401; 13 N.E.3d 179, **179; 2014 Ill. App. LEXIS 411, ***1; 382 Ill. Dec. 766, ****766

Healthcare Law > Medical Treatment > Patient Consent > Informed Consent

Torts > Intentional Torts > Assault & Battery > Elements of Battery

Torts > ... > Proof > Evidence > Expert Testimony

## *HN10*[⬇] Pleadings, Heightened Pleading Requirements

*735 ILCS 5/2-622(a)* (2012) can potentially apply to medical battery claims. Where a plaintiff's medical battery claims turn on whether defendants exceeded the parameters of the surgery to which plaintiff consented, the issue is beyond the ken of a layperson and requires a medical expert. Consistent with Holzrichter, Schindel, and Bloom, the Appellate Court of Illinois, Second Division, holds that, to sustain such medical battery claims, a plaintiff is required to submit an affidavit and a health professional's report pursuant to *§ 2-622(a)*. An assessment of what is required or necessary in light of a medical condition is inherently one of medical judgment and, as a result, necessitates expert testimony on the standard of care.

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

Torts > Intentional Torts > Assault & Battery > Elements of Battery

Healthcare Law > Medical Treatment > Patient Consent > Informed Consent

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

## *HN11*[⬇] Pleadings, Heightened Pleading Requirements

A plaintiff challenging an implicit part of the medical treatment should not be able to avoid the requirement of an expert medical opinion simply by claiming medical battery or something other than medical malpractice.

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

## *HN12*[⬇] Pleadings, Heightened Pleading Requirements

*735 ILCS 5/2-622(a)(3)* (2012) allows an affidavit stating that plaintiff made a request to examine and copy records and that defendants failed to produce those records within 60 days. It authorizes a plaintiff to file an affidavit only to delay compliance with *§ 2-622(a)(1)*. *Section 2-622(a)(1)* still requires her to file a certificate and written report within 90 days of receiving the records. *§ 2-622(a)(3)*.

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

Civil Procedure > Parties > Pro Se Litigants > General Overview

## *HN13*[⬇] Pleadings, Heightened Pleading Requirements

Where a plaintiff is proceeding pro se, *735 ILCS 5/2-622(a)* (2012) requires an affidavit stating that she consulted and reviewed the facts of the case with a health professional who reviewed the medical records and prepared a written medical report finding that there is a reasonable and meritorious cause for filing the action. *§ 2-622(a)(1)*. *Section 2-622(a)* further requires the professional's report to clearly identify the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists. *§ 2-622(a)(1)*.

Civil Procedure > Dismissal > Involuntary Dismissals > Motions

## *HN14*[⬇] Involuntary Dismissals, Motions

Affidavits in support of motions under *735 ILCS 5/2-619* are controlled by *Ill. Sup. Ct. R. 191*. *Rule 191(a)*

2014 IL App (2d) 130401, *130401; 13 N.E.3d 179, **179; 2014 Ill. App. LEXIS 411, ***1; 382 Ill. Dec. 766, ****766

provides that affidavits submitted in connection with a motion for involuntary dismissal under *735 ILCS 5/2-619* of the Code of Civil Procedure shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto. If all of the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used. If the document as a whole shows that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial, *Ill. Sup. Ct. R. 191* is satisfied. Prima facie authorship of a document may include a showing that the writing contains knowledge of a matter sufficiently obscure so as to be known to only a small group of individuals.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Evidence > Admissibility > Procedural Matters > Rulings on Evidence

**HN15**[🔽] **Standards of Review, Abuse of Discretion**

It is the function of a trial court to determine the admissibility of evidence, and its rulings will not be disturbed absent an abuse of discretion.

Civil Procedure > Dismissal > Involuntary Dismissals > Motions

Civil Procedure > Pleading & Practice > Motion Practice > Time Limitations

**HN16**[🔽] **Involuntary Dismissals, Motions**

If a party believes that additional discovery is necessary to adequately respond to a motion to dismiss, the party may seek a continuance and obtain discovery by filing an affidavit under *Ill. Sup. Ct. R. 191(b)*. Failure to file a *Rule 191(b)* affidavit in the trial court results in forfeiture of a potential appellate argument that additional discovery was needed.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > General Overview

**HN17**[🔽] **Pleadings, Amendment of Pleadings**

Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn.

Civil Procedure > Judgments > Preclusion of Judgments > Law of the Case

**HN18**[🔽] **Preclusion of Judgments, Law of the Case**

The law-of-the-case doctrine limits relitigation of a previously decided issue in the same case. The doctrine encompasses not only the reviewing court's explicit decisions, but those issues decided by necessary implication. The doctrine applies to questions of law on remand to the trial court as well as on subsequent appeals.

Civil Procedure > Appeals > Remands

**HN19**[🔽] **Appeals, Remands**

A reviewing court's mandate vests a trial court with jurisdiction only to take action that complies with the reviewing court's mandate. A trial court lacks the authority to exceed the scope of the mandate and must obey precise and unambiguous directions on remand. Furthermore, the correctness of the trial court's action on remand is to be determined from the appellate court's mandate, as opposed to the appellate court opinion. However, if the direction is to proceed in conformity with the opinion, then, of course, the content of the opinion is significant. If specific directions are not given, the trial court should examine the opinion and determine what further proceedings would be consistent with the opinion. Any other order issued by the trial court is outside the scope of its authority and void for lack of jurisdiction.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

**HN20**[🔽] **Amendment of Pleadings, Leave of Court**

2014 IL App (2d) 130401, *130401; 13 N.E.3d 179, **179; 2014 Ill. App. LEXIS 411, ***1; 382 Ill. Dec. 766, ****766

*735 ILCS 5/2-616(a)* (2012) governs the amendment of pleadings and provides that at any time before final judgment amendments may be allowed on just and reasonable terms changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim. Amendments should be liberally allowed to permit parties to fully present their cases and to further the interests of justice. The right to amend, however, is neither absolute nor unlimited.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

*HN21*[⤓]  **Standards of Review, Abuse of Discretion**

The decision to grant leave to amend a complaint rests within the sound discretion of the trial court, and an appellate court will not reverse such a decision absent an abuse of that discretion.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

*HN22*[⤓]  **Amendment of Pleadings, Leave of Court**

Four factors determine whether amendments to pleadings should be permitted under *735 ILCS 5/2-616(a)* (2012): (1) whether the proposed amendment would cure a defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely filed; and (4) whether the moving party had previous opportunities to amend. The most important factor is prejudice to the opposing party, such as where an amendment leaves the party unprepared to respond to a new theory at trial. A plaintiff must meet all four factors, and if the proposed amendment does not state a cognizable claim, and thus, fails the first factor, courts of review will often not proceed with further analysis. Accordingly, where it is apparent even after amendment that no cause of action can be stated, leave to amend should be denied.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

*HN23*[⤓]  **Amendment of Pleadings, Leave of Court**

When ruling on a motion to amend, a court may consider the ultimate efficacy of a claim as stated in a proposed amended pleading, and it is not necessary for the plaintiff to file an amended complaint and the defendant to test the sufficiency of that complaint through a motion to dismiss.

## Syllabus

Where the initial dismissal of *pro se* plaintiff's amended complaint for the injuries arising from the medical care defendants provided was affirmed by the appellate court due to her failure to comply with the requirements that she file an affidavit and a health professional's report pursuant to *section 2-622* of the Code of Civil Procedure, but the appellate court held that the dismissal of the medical battery allegations with prejudice was an abuse of discretion that required a remand to allow plaintiff to correct the defective allegations, the trial court's subsequent dismissal of plaintiff's second amended complaint with prejudice was also upheld, since plaintiff still did not comply with *section 2-622* with regard to her medical battery claims, which involved knowledge, skill, and training in a technical area outside the comprehension of a layperson, some claims from the original and first amended complaint were restated or incorporated in the second amended complaint, even though they had been rejected in plaintiff's first appeal, and there was no error in the trial court's refusal to allow plaintiff to allege new claims that could have been raised earlier.

**Counsel:** Michelle Eva McDonald, of Beach Park, appellant, Pro se.

Robert L. Nora, Lynne M. Damsma, Taylor V. Nora, Nora & Tanzillo, LLP, of Chicago, for appellee Szymon Rosenblatt.

Deborah M.R. O'Brien, Vito M. Masciopinto, Jamie

2014 IL App (2d) 130401, *130401; 13 N.E.3d 179, **179; 2014 Ill. App. LEXIS 411, ***1; 382 Ill. Dec. 766, ****766

Crowley, Lowis & Gellen LLP, for appellee Jeannie Ycarro.

Richard J. Hickey, Thomas A. Rieck, Scott Stirling, Hickey, Melia & Associates, Chtrd., of Chicago, for appellee Jerry Andrews.

Michael C. Kominiarek, Lisa M. Green, Michael R. Webber, Kominiarek Bresler Harvick & Gudmundson, LLC, of Chicago, for appellee Barry Bikshorn.

Brian J. Hickey, Mark A. Sansone, Cassiday Schade LLP, of Naperville, for other appellees.

**Judges:** PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion. Justices Schostok and Spence concurred in the judgment and opinion.

**Opinion by:** BURKE

# Opinion

**[\*P1] [\*\*184] [\*\*\*\*771]** Plaintiff, Michelle Eva McDonald, is a young woman who suffers from back pain and ailments in her lower extremities. She filed a *pro se* amended complaint for injuries that allegedly arose from medical care provided by defendants in 2007. The complaint alleged medical malpractice and medical battery. The trial court gave plaintiff three extensions of time to comply with the affidavit and health-professional's-report requirements of *section 2-622* of the Code of Civil Procedure (Code) (*735 ILCS 5/2-622* (West 2008)). Defendants filed motions to dismiss on the grounds that plaintiff's filings did not meet the requirements (see *735 ILCS 5/2-619*, *2-622(g)* (West 2008)) and that the allegations did not state a claim (see *735 ILCS 5/2-615* (West 2008)). The court eventually dismissed plaintiff's amended complaint with prejudice.

**[\*P2]** Plaintiff appealed, arguing that the trial court erred in determining that (1) all of **[\*\*\*2]** plaintiff's claims sounded in medical malpractice, which required her to

comply with *section 2-622* of the Code; (2) plaintiff did not substantially comply with *section 2-622*; (3) all of defendants' motions to dismiss could be granted in a combined ruling; (4) the amended complaint should be dismissed with prejudice; and (5) plaintiff's motion for summary judgment was premature.

**[\*P3]** We concluded that plaintiff's claims of medical malpractice required her to comply with *section 2-622*, that plaintiff failed to comply with *section 2-622*, and that the trial court did not abuse its discretion in dismissing the malpractice claims with prejudice. We also held that the medical battery allegations failed to state a claim and were subject to dismissal under *section 2-615*. However, we concluded that the court abused its discretion in dismissing the medical battery allegations with prejudice, and we remanded the cause to afford plaintiff the opportunity to cure the defective allegations. *McDonald v. Lipov, 408 Ill. App. 3d 1128, 376 Ill. Dec. 954, 1 N.E.3d 666 (2011)* (unpublished order under *Supreme Court Rule 23*) (McDonald I).

**[\*P4]** On remand, plaintiff filed a 33-count, second amended complaint, which attempted to allege the following types of **[\*\*\*3]** claims against defendants: (1) medical battery, (2) medical negligence, (3) fraudulent concealment, (4) conspiracy, (5) violations of the Emergency Medical Treatment and Active Labor Act (*42 U.S.C. § 1395dd (2012)*), (6) breach of contract, (7) vicarious liability, and (8) spoliation of evidence. The trial court dismissed the second amended complaint with prejudice for failing to state a claim.

**[\*P5]** Plaintiff appeals again, arguing that (1) *section 2-622* does not apply to her medical battery claims; (2) she satisfied the affidavit requirement of *section 2-622(a)(3)* (*735 ILCS 5/2-622(a)(3)* (West 2012)) by verifying the second amended complaint by certification according to *section 1-109* of the Code (*735 ILCS 5/1-109* (West 2012)) ; (3) Dr. Lipov's affidavit should have been stricken as "insufficient in law"; (4) the dismissal violates her right to due process, because it denies her "right to remedy and justice"; (5) a genuine issue of material fact precludes the dismissal; (6) the statute of limitations or statute of repose does not bar her medical battery claims; and (7) defendants failed to establish that plaintiff consented to the intrusions.

**[\*P6]** We agree with defendants that the trial court **[\*\*\*4]** properly dismissed the second amended complaint with prejudice. First, plaintiff's medical battery claims, which allege treatment that substantially varied **[\*\*185] [\*\*\*\*772]** from the consent granted, require

2014 IL App (2d) 130401, *130401; 13 N.E.3d 179, **185; 2014 Ill. App. LEXIS 411, ***4; 382 Ill. Dec. 766, ****772

compliance with *section 2-622* of the Code, because an assessment of the claims requires knowledge, skill, or training in a technical area outside the comprehension of laypersons. Contrary to plaintiff's assertion, she has not complied with *section 2-622*. Second, the second amended complaint restates explicitly or incorporates by reference certain claims from the original complaint and the amended complaint, but plaintiff either abandoned those claims or we found them defective in *McDonald I*, and our decision is the law of the case. Third, considering the long procedural history of this matter, we conclude that the trial court did not abuse its discretion in denying plaintiff leave to assert new claims that she could have pleaded earlier.

**[*P7]** I. BACKGROUND

**[*P8]** On August 6, 2012, plaintiff filed her second amended complaint, which contains 33 claims that can be sorted into three categories. First, the complaint contains 10 claims labeled "medical battery," which plaintiff had the opportunity to cure on remand. **[***5]** The claims allege various acts and omissions by defendants, but each claim alleges that the conduct was an unauthorized "deviation from consent." Dr. Lipov, her treating physician, submitted an affidavit stating, in part, that plaintiff signed a written consent form agreeing to undergo the RACZ caudal epidural injection procedure that is the subject of the claims. His affidavit also states that the Myelotec catheter used in the procedure has been approved by the Food and Drug Administration for use in the procedure. Over plaintiff's objection, the court found Dr. Lipov's affidavit to be in compliance with *Illinois Supreme Court Rule 191* (eff. Jan. 4, 2013). The court dismissed the claims, concluding that (1) without a counteraffidavit submitted by plaintiff, the court must take as true Dr. Lipov's statement that plaintiff signed a consent form; (2) the existence of a signed consent form meant that plaintiff's claims were for medical negligence, not medical battery; and (3) plaintiff never obtained a health professional's report as required for medical negligence claims.

**[*P9]** Second, the complaint restates nine claims from the amended complaint: four negligence claims, three alleged violations **[***6]** of the Emergency Medical Treatment and Active Labor Act, and two claims of breach of contract. (Besides explicitly restating these claims, the second amended complaint also incorporates by reference all of the claims of the original complaint and the amended complaint.) In *McDonald I*, we determined that the trial court properly dismissed

these claims with prejudice. When plaintiff restated the claims, the court dismissed them again, commenting that "[w]e've been over that ground and that has been through the higher courts."

**[*P10]** Third, the complaint contains 14 new claims: 3 claims of fraudulent concealment, 9 claims of conspiracy, 1 claim of vicarious liability, and 1 claim of spoliation of evidence. The trial court dismissed these claims with prejudice. The court concluded that allowing plaintiff to add these claims would violate our mandate in *McDonald I*. Plaintiff's timely appeal followed.

**[*P11]** II. ANALYSIS

**[*P12]** A. Medical Battery

**[*P13]** On appeal, plaintiff asks us to reverse the trial court's dismissal of the medical battery claims, entered pursuant to *section 2-619* of the Code. *735 ILCS 5/2-619* (West 2012). **HN1**[↑] "A motion to dismiss, pursuant to *section 2-619* of the Code, admits the legal sufficiency **[***7]** of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids **[**186]** **[****773]** or defeats the plaintiffs' claim." *DeLuna v. Burciaga, 223 Ill. 2d 49, 59, 857 N.E.2d 229, 306 Ill. Dec. 136 (2006); Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill. 2d 558, 578-79, 852 N.E.2d 825, 304 Ill. Dec. 369 (2006).* **HN2**[↑] For a *section 2-619* dismissal, our standard of review is *de novo. Solaia Technology, 221 Ill. 2d at 579.*

**[*P14]** When reviewing a dismissal under *section 2-619*, a court must accept as true all well-pleaded facts in the plaintiff's complaint and all inferences that can reasonably be drawn in the plaintiff's favor. *Morr-Fitz, Inc. v. Blagojevich, 231 Ill. 2d 474, 488, 901 N.E.2d 373, 327 Ill. Dec. 45 (2008).* In ruling on a motion to dismiss under *section 2-619*, the trial court may consider pleadings, depositions, and affidavits. *Raintree Homes, Inc. v. Village of Long Grove, 209 Ill. 2d 248, 262, 807 N.E.2d 439, 282 Ill. Dec. 815 (2004).* Even if the trial court dismissed on an improper ground, a reviewing court may affirm the dismissal if the record supports a proper ground for dismissal. *Raintree, 209 Ill. 2d at 261* (when reviewing a *section 2-619* dismissal, we can affirm "on any basis present in the record").

**[*P15]** The trial court dismissed plaintiff's claims labeled "medical battery" on the grounds that the

2014 IL App (2d) 130401, *130401; 13 N.E.3d 179, **186; 2014 Ill. App. LEXIS 411, ***7; 382 Ill. Dec. 766, ****773

[***8] claims required compliance with *section 2-622* of the Code and that plaintiff still had not complied with that statute. *HN3[↑]* *Section 2-622* was enacted to curtail frivolous medical malpractice lawsuits and to eliminate such actions at the pleading stage before the expenses of litigation mount. *DeLuna v. St. Elizabeth's Hospital, 147 Ill. 2d 57, 65, 588 N.E.2d 1139, 167 Ill. Dec. 1009 (1992)*. *HN4[↑]* *Section 2-622(a)(1)* requires the plaintiff, if proceeding pro se, or his attorney to file with the complaint an affidavit of merit stating that the affiant has consulted and reviewed the facts of the case with a health professional who, in a written medical report—after a review of the medical records and other relevant material—has determined that there is a "reasonable and meritorious" cause for filing the action. *735 ILCS 5/2-622(a)(1)* (West 2012). A copy of the medical report must be attached to the affidavit and must clearly identify the plaintiff and "the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists." *735 ILCS 5/2-622(a)(1)* (West 2012); see *Moyer v. Southern Illinois Hospital Service Corp., 327 Ill. App. 3d 889, 902, 764 N.E.2d 155, 261 Ill. Dec. 864 (2002)*.

[*P16] *HN5[↑]* *Section 2-622(a)(2)* [***9] prescribes a 90-day extension for filing the report, allowing the plaintiff to file with the complaint an affidavit stating that he was unable to obtain the health professional's consultation "because a statute of limitations would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations." *735 ILCS 5/2-622(a)(2)* (West 2012). *Section 2-622(a)(3)* alternatively authorizes the plaintiff to file an affidavit stating that he or his attorney made a request to examine and copy records and that the party required to comply with the request failed to produce those records within 60 days. *735 ILCS 5/2-622(a)(3)* (West 2012). If the plaintiff executes an affidavit under *section 2-622(a)(3)*, the certificate and report required by *section 2-622(a)(1)* must be filed within 90 days of receiving the records. *735 ILCS 5/2-622(a)(3)* (West 2012).

[*P17] Plaintiff argues that *section 2-622(a)* does not apply to her medical battery claims and that therefore any noncompliance with the statute is not grounds for involuntary dismissal. *HN6[↑]* The health-professional's-report and affidavit requirements [**187] [****774] of *section 2-622(a)* apply to "any action, whether in tort, [***10] contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art

malpractice." *735 ILCS 5/2-622(a)* (West 2012).

[*P18] *HN7[↑]* It is well established that a claim that a health professional acted without the informed consent of the patient is a type of medical malpractice claim. Corollaries to the consent requirement are that a patient has the right to refuse medical treatment, even if the patient's life is in jeopardy (*In re Estate of Longeway, 133 Ill. 2d 33, 45, 549 N.E.2d 292, 139 Ill. Dec. 780 (1989)*), and that a common-law battery is the unauthorized touching of the person of another (*In re Estate of Allen, 365 Ill. App. 3d 378, 385, 848 N.E.2d 202, 302 Ill. Dec. 202 (2006)*).

[*P19] At the crossroads of these well-established medical malpractice principles exists the tort of medical battery. In a medical battery case, an injured party can recover by establishing that (1) there was no consent to the medical treatment performed, (2) the treatment was against the injured party's will, or (3) the treatment substantially varied from the consent granted. *Estate of Allen, 365 Ill. App. 3d at 385*. Under such circumstances, a battery has occurred because the person administering the medical care intentionally [***11] touched the person of another without authorization. *Estate of Allen, 365 Ill. App. 3d at 385*.

[*P20] This court has held that *HN8[↑]* lack of consent to medical procedures gives rise to two causes of action: one based on negligence and the other based on battery. *Gragg v. Calandra, 297 Ill. App. 3d 639, 645, 696 N.E.2d 1282, 231 Ill. Dec. 711 (1998)*; see also *Doe v. Noe, 293 Ill. App. 3d 1099, 1113, 690 N.E.2d 1012, 228 Ill. Dec. 937 (1997)* ("The law distinguishes between a total lack of consent for the contested act (battery) and the lack of informed consent (negligence).")). Where an unauthorized surgeon operates, he commits a technical trespass to the patient resulting in the intentional tort of battery. It is not the hostile intent of the defendant but rather the absence of consent by the plaintiff that is at the core of an action for battery. *Gragg, 297 Ill. App. 3d at 645*.

[*P21] The second amended complaint contains several claims labeled "medical battery." The claims do not allege a lack of consent or treatment administered against plaintiff's will. Rather, the claims allege a "deviation from [the] consent" that plaintiff provided, which can be liberally construed as alleging that the treatment substantially varied from the consent granted. See *Estate of Allen, 365 Ill. App. 3d at 385*.

[*P22] [***12] Plaintiff asserted repeatedly in the trial

court that her consent to the RACZ procedure did not authorize the use of a Myelotec-brand catheter through the caudal canal of her spinal cord. However, Dr. Lipov stated in his affidavit that "[t]he Myelotec catheter [he] used in the procedure is a brand name of a particular catheter that has been approved by the FDA for use in the RACZ procedure," suggesting that consent to the procedure implies consent to the use of the catheter. Dr. Lipov is a physician with relevant specialized expertise, while plaintiff is not. The trial court found that plaintiff needed an expert medical opinion to support this facet of her medical battery claims. _735 ILCS 5/2-622_ (West 2012).

[*P23] Recently, in _Holzrichter v. Yorath, 2013 IL App (1st) 110287, ¶ 96, 987 N.E.2d 1, 369 Ill. Dec. 659_, the appellate court affirmed a summary judgment entered against a medical battery plaintiff who **[**188]** **[****775]** failed to file a health professional's report pursuant to _section 2-622_. The plaintiff had repeatedly insisted that the bunionectomy procedure to which he consented did not involve the cutting of tendons, which allegedly had caused his injury. He claimed that the defendant committed medical battery by exceeding the **[***13]** scope of his consent by cutting the tendons. _Holzrichter, 2013 IL App (1st) 110287, ¶ 85_.

[*P24] The _Holzrichter_ court observed that _HN9_[⬆] the plain and unambiguous language of _section 2-622_ does not limit the requirement of an affidavit and expert medical opinion solely to medical malpractice claims. _Holzrichter, 2013 IL App (1st) 110287, ¶¶ 92-93_. The court explained that the plaintiff's medical battery action, based in tort, requested damages for injuries arising from a medical procedure that he claimed went beyond the scope of the procedure to which he consented. _Holzrichter, 2013 IL App (1st) 110287, ¶ 96_. "Whether the cutting of the tendons exceeded the scope of the surgery is a 'subject matter *** so complicated that lay persons are not in an adequate position to assess whether a breach of duty has occurred.'" _Holzrichter, 2013 IL App (1st) 110287, ¶ 96_ (quoting _Schindel v. Albany Medical Corp., 252 Ill. App. 3d 389, 395, 625 N.E.2d 114, 192 Ill. Dec. 154 (1993))_. The court held that "the plain and unambiguous language of _section 2-622_ of the Code, requiring an affidavit and health professional's written report '[i]n any action, whether in tort, contract or otherwise, in which plaintiff seeks damages for injuries or death **[***14]** by reason of medical, hospital, or other healing art malpractice,' is applicable in this case." _Holzrichter, 2013 IL App (1st) 110287, ¶ 96_ (quoting _735 ILCS 5/2-622(a)_ (West 1998)). Emphasizing that its holding was limited to the

facts of the case, the court affirmed the summary judgment entered for the defendant, because the plaintiff failed to comply with _section 2-622_. _Holzrichter, 2013 IL App (1st) 110287, ¶ 96_ ("we need not decide here whether the requirements of _section 2-622_ are applicable to all medical battery claims").

[*P25] The _Holzrichter_ court pointed out that expert medical opinions previously had been required in non-medical-malpractice actions. _Holzrichter, 2013 IL App (1st) 110287, ¶ 93_. In _Schindel_, a patient brought an action for damages from the rupture of her fallopian tubes during an ectopic pregnancy, but she alleged that the jury could decide her case on principles of "ordinary negligence" so that testimony of an expert medical witness was not necessary. The _Schindel_ court concluded that the case required "expert analysis of [the] plaintiff's medical condition in order to fully define the proper standard of care." _Schindel, 252 Ill. App. 3d at 398_. Because no medical **[***15]** testimony was presented to establish the standard of care, the jury verdict was reversed. _Schindel, 252 Ill. App. 3d at 402_.

[*P26] Similarly, in _Bloom v. Guth, 164 Ill. App. 3d 475, 477, 517 N.E.2d 1154, 115 Ill. Dec. 468 (1987)_, a patient brought an action for damages from her doctor's failure to perform a hysterectomy and repair her bladder, but she alleged that her claim was for breach of contract, not medical malpractice, so that testimony of an expert medical witness was not necessary. The _Bloom_ court rejected the patient's argument and affirmed the dismissal of the complaint based on the plain language of _section 2-622(a)_.

[*P27] **[**189]** **[****776]** In _McDonald I_, we stated that "_[s]ection 2-622_ does not apply to medical battery claims, and therefore, that statute is not a proper basis for dismissing those claims [in the amended complaint]." _McDonald I, 408 Ill. App. 3d 1128, 1 N.E.3d 666, 376 Ill. Dec. 954, at *15_. After reviewing the specific allegations of medical battery in this case, we agree with the reasoning of the First District in _Holzrichter_ that _HN10_[⬆] _section 2-622(a)_ can potentially apply to medical battery claims. _Holzrichter, 2013 IL App (1st) 110287, ¶ 96_. Plaintiff's medical battery claims turn on whether defendants exceeded the parameters of the surgery to which plaintiff **[***16]** consented. Thus, the issue is beyond the ken of a layperson and requires a medical expert to opine on whether the use of the Myelotec catheter is within the scope of the RACZ procedure. Consistent with _Holzrichter_, _Schindel_, and _Bloom_, we hold that, to sustain her medical battery claims, plaintiff was required to submit an affidavit and a health

2014 IL App (2d) 130401, *130401; 13 N.E.3d 179, **189; 2014 Ill. App. LEXIS 411, ***16; 382 Ill. Dec. 766, ****776

professional's report pursuant to *section 2-622(a)*. See *Holzrichter, 2013 IL App (1st) 110287, ¶ 96*; see also *Schindel, 252 Ill. App. 3d at 397-98* ("An assessment of what is required or necessary in light of [a] medical condition is inherently one of medical judgment and, as a result, necessitates expert testimony on the standard of care.").

[*P28] Requiring compliance with *section 2-622(a)* of the Code under these facts follows logically from the legislature's intent to prevent frivolous lawsuits and ensure that meritorious claims, bolstered by expert medical opinion, proceed past the pleading stage. See *Holzrichter, 2013 IL App (1st) 110287, ¶ 88*. HN11[⬆] "A plaintiff challenging an implicit part of the medical treatment should not be able to avoid the requirement of an expert medical opinion simply by claiming medical battery or something other than medical [***17] malpractice." *Holzrichter, 2013 IL App (1st) 110287, ¶ 88.*

[*P29] Plaintiff does not dispute that she has not submitted an affidavit and a health professional's report as mandated by *section 2-622(a)(1)*. However, plaintiff argues that she has substantially complied with the affidavit requirement of *section 2-622(a)(3)* (*735 ILCS 5/2-622(a)(3)* (West 2012)) by verifying the second amended complaint by certification according to *section 1-109* of the Code (*735 ILCS 5/1-109* (West 2012)). The second amended complaint contains a section labeled "Affidavit Pursuant to *735 ILCS 5/2-622(a)(3)*" and provides in relevant part as follows:

"The undersigned, Michelle Eva McDonald, under penalties provided by law pursuant to *Section 1-109* of the Code of Civil Procedure, certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters, the undersigned certifies as aforesaid that she verily believes the same to be true."

[*P30] Rejecting plaintiff's assertion that the certification satisfies *section 2-622*, the trial court commented, "I understand, Ms. McDonald, that you disagree with the statements of [Dr. Lipov's] [***18] affidavit. But from a legal point of view, I can't consider your disagreement. You needed—or you needed to supply me with something that under the law I can consider. An affidavit from a qualified expert in the field[.] I understand that you disagree with that but that doesn't allow me to make a different decision."

[*P31] Plaintiff's verification of the second amended complaint by certification under *section 1-109* of the Code is not a substitute for compliance with *section 2-622(a)(3)* (*735 ILCS 5/2-622(a)(3)* (West [**190] [****777] 2012)). HN12[⬆] *Section 2-622(a)(3)* allowed an affidavit stating that plaintiff made a request to examine and copy records and that defendants failed to produce those records within 60 days, but plaintiff's verification contains no such statement. Even if plaintiff's verification had satisfied *section 2-622(a)(3)*, that statute authorizes a plaintiff to file an affidavit only to delay compliance with *section 2-622(a)(1)*. *735 ILCS 5/2-622(a)(3)* (West 2012). Thus, even if plaintiff had executed a proper affidavit under *section 2-622(a)(3)*, *section 2-622(a)(1)* still required her to file the certificate and written report within 90 days of receiving the records. *735 ILCS 5/2-622(a)(3)* (West [***19] 2012).

[*P32] HN13[⬆] Since plaintiff is proceeding *pro se*, *section 2-622(a)* required an affidavit stating that she consulted and reviewed the facts of the case with a health professional who reviewed the medical records and prepared a written medical report finding that there is a "reasonable and meritorious" cause for filing the action. See *735 ILCS 5/2-622(a)(1)* (West 2012). *Section 2-622(a)* further requires the professional's report to clearly identify the plaintiff and "the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists." *735 ILCS 5/2-622(a)(1)* (West 2012). Plaintiff does not claim to be an expert health professional or that she obtained a health professional's report. Plaintiff's certification does not comply with *section 2-622(a)*.

[*P33] We further reject plaintiff's argument that the trial court erred in accepting Dr. Lipov's affidavit. HN14[⬆] Affidavits in support of motions under *section 2-619* are controlled by *Rule 191*. *Elliott v. LRSL Enterprises, Inc., 226 Ill. App. 3d 724, 732, 589 N.E.2d 1074, 168 Ill. Dec. 674 (1992)*. *Rule 191(a)* provides that "affidavits submitted in connection with a motion for involuntary dismissal under *section 2-619* of [***20] the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto. If all of the facts to be shown are not within the personal knowledge of one

2014 IL App (2d) 130401, *130401; 13 N.E.3d 179, **190; 2014 Ill. App. LEXIS 411, ***20; 382 Ill. Dec. 766, ****777

person, two or more affidavits shall be used." *Ill. S. Ct. R. 191(a)* (eff. Jan. 4, 2013).

**[*P34]** If the document as a whole shows that the affidavit is based upon the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial, *Rule 191* is satisfied. *Doria v. Village of Downers Grove, 397 Ill. App. 3d 752, 756, 921 N.E.2d 478, 336 Ill. Dec. 864 (2009)*. "*Prima facie* authorship of a document may include a showing that the writing contains knowledge of a matter sufficiently obscure so as to be known to only a small group of individuals." *People v. Downin, 357 Ill. App. 3d 193, 203, 828 N.E.2d 341, 293 Ill. Dec. 371 (2005)*. **HN15[↑]** It is the function of a trial **[***21]** court to determine the admissibility of evidence, and its rulings will not be disturbed absent an abuse of discretion. *Independent Trust Corp. v. Hurwick, 351 Ill. App. 3d 941, 952, 814 N.E.2d 895, 286 Ill. Dec. 669 (2004)*. Here, Dr. Lipov performed the RACZ procedure at issue; his affidavit consists of facts within his personal knowledge and is therefore in compliance with *Rule 191*.

**[*P35]** Plaintiff contends that she was precluded from cross-examining Dr. Lipov regarding the statements in his affidavit, but she never requested his deposition when **[**191] [****778]** the affidavit was filed. **HN16[↑]** ] If a party believes that additional discovery is necessary to adequately respond to a motion to dismiss, the party may seek a continuance and obtain discovery by filing an affidavit under *Rule 191(b)*, but plaintiff failed to do so. Failure to file a *Rule 191(b)* affidavit in the trial court results in forfeiture of a potential appellate argument that additional discovery was needed. By failing to file a *Rule 191(b)* affidavit, plaintiff has forfeited any claim that she was not permitted to cross-examine Dr. Lipov for the purposes of challenging his affidavit and establishing a reasonable and meritorious cause for filing her action.

**[*P36]** B. Old Claims

**[*P37]** The second **[***22]** amended complaint restates nine claims from the amended complaint: four negligence claims, three alleged violations of the Emergency Medical Treatment and Active Labor Act, and two claims of breach of contract. Besides explicitly restating these claims, the second amended complaint incorporates by reference all of the claims of the original complaint and the amended complaint.

**[*P38]** Plaintiff's amended complaint did not incorporate the original complaint. **HN17[↑]** ] "Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn.'" *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp., 96 Ill. 2d 150, 154, 449 N.E.2d 125, 70 Ill. Dec. 251 (1983)* (quoting *Bowman v. County of Lake, 29 Ill. 2d 268, 272, 193 N.E.2d 833 (1963))*. Thus, plaintiff abandoned the claims in the original complaint when she filed the amended complaint without referring to the original complaint.

**[*P39]** Moreover, in *McDonald I*, we determined that the trial court properly dismissed with prejudice these nine claims from the amended complaint. When plaintiff restated the claims in the second amended complaint, the court dismissed them again, commenting **[***23]** that "[w]e've been over that ground and that has been through the higher courts."

**[*P40]** **HN18[↑]** The law-of-the-case doctrine limits relitigation of a previously decided issue in the same case. *Village of Ringwood v. Foster, 2013 IL App (2d) 111221, ¶ 33, 986 N.E.2d 662, 369 Ill. Dec. 349* (citing *Krautsack v. Anderson, 223 Ill. 2d 541, 552, 861 N.E.2d 633, 308 Ill. Dec. 302 (2006))*. The doctrine encompasses not only the reviewing court's explicit decisions, but those issues decided by necessary implication. *Reich v. Gendreau, 308 Ill. App. 3d 825, 829, 721 N.E.2d 634, 242 Ill. Dec. 355 (1999)*. The doctrine applies to questions of law on remand to the trial court as well as on subsequent appeals. *Radwill v. Manor Care of Westmont, IL, LLC, 2013 IL App (2d) 120957, ¶ 8, 986 N.E.2d 765, 369 Ill. Dec. 452*.

**[*P41]** In *McDonald I*, we found these nine claims to be defective. Our decision is the law of the case, and the trial court correctly dismissed them with prejudice.

**[*P42]** C. New Claims

**[*P43]** On remand, plaintiff filed the second amended complaint with new claims besides the repleaded medical battery claims. Among the new claims are three claims of fraudulent concealment, nine claims of conspiracy, one claim of vicarious liability, and one claim of spoliation of evidence. The trial court dismissed the new claims with prejudice on the ground that they fell "outside **[***24]** the directive" of our holding in *McDonald I*.

[*P44]  It is well recognized that *HN19*[↑] a reviewing court's mandate vests a trial court with jurisdiction only to take action that complies with the reviewing court's [**192] [****779] mandate. *Fleming v. Moswin, 2012 IL App (1st) 103475-B, ¶ 28, 976 N.E.2d 447, 364 Ill. Dec. 169.* A trial court lacks the authority to exceed the scope of the mandate and must obey precise and unambiguous directions on remand. Furthermore, the correctness of the trial court's action on remand is to be determined from the appellate court's mandate, as opposed to the appellate court opinion. However, if the direction is to proceed in conformity with the opinion, then, of course, the content of the opinion is significant. *Fleming, 2012 IL App (1st) 103475-B, ¶ 28.* If specific directions are not given, the trial court should examine the opinion and determine what further proceedings would be consistent with the opinion. Any other order issued by the trial court is outside the scope of its authority and void for lack of jurisdiction. *Fleming, 2012 IL App (1st) 103475-B, ¶ 28.*

[*P45]  In this case, our mandate following our initial order contained no specific instructions and, therefore, we look to that order to determine the scope of [***25] the trial court's authority on remand. In *McDonald I*, we held that, although the medical battery allegations had been properly dismissed under *section 2-615*, the trial court abused its discretion in dismissing those allegations with prejudice and should have afforded plaintiff the opportunity to cure the defects. Specifically, we directed the trial court to afford plaintiff "the opportunity to replead her medical battery claims."

[*P46]  Our disposition was silent as to whether plaintiff could allege additional claims on remand; nothing in the record suggested that she might wish to do so. One could argue that to allow plaintiff to plead new claims would have been outside the scope of the trial court's authority and void for lack of jurisdiction. See *Fleming, 2012 IL App (1st) 103475-B, ¶ 28.*

[*P47]  Even if the pleading of new claims were within our directive and consistent with the disposition, the trial court did not abuse its discretion in dismissing those new claims with prejudice. *HN20*[↑] *Section 2-616(a)* of the Code governs the amendment of pleadings and provides that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms *** changing the cause of action or defense [***26] or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for

which it was intended to be brought or the defendant to make a defense or assert a cross claim." *735 ILCS 5/2-616(a)* (West 2012). Amendments should be liberally allowed to permit parties to fully present their cases and to further the interests of justice. *Rusch v. Leonard, 399 Ill. App. 3d 1026, 1037, 927 N.E.2d 316, 339 Ill. Dec. 775 (2010).* The right to amend, however, is neither absolute nor unlimited. *Hayes Mechanical, Inc. v. First Industrial, L.P., 351 Ill. App. 3d 1, 6, 812 N.E.2d 419, 285 Ill. Dec. 599 (2004).* *HN21*[↑] The decision to grant leave to amend a complaint rests within the sound discretion of the trial court and we will not reverse such a decision absent an abuse of that discretion. *Hayes Mechanical, Inc., 351 Ill. App. 3d at 7.*

[*P48]  *HN22*[↑] Four factors determine whether amendments to pleadings should be permitted under *section 2-616(a)*: (1) whether the proposed amendment would cure a defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely filed; [**193] [****780] and (4) [***27] whether the moving party had previous opportunities to amend. *Sheth v. SAB Tool Supply Co., 2013 IL App (1st) 110156, ¶ 101, 990 N.E.2d 738, 371 Ill. Dec. 550.* The most important factor is prejudice to the opposing party, such as where an amendment leaves the party unprepared to respond to a new theory at trial. *Sheth, 2013 IL App (1st) 110156, ¶ 101.*

[*P49]  The plaintiff must meet all four factors, and "if the proposed amendment does not state a cognizable claim, and thus, fails the first factor, courts of review will often not proceed with further analysis." *Hayes Mechanical, Inc., 351 Ill. App. 3d at 7.* Accordingly, "[w]here it is apparent even after amendment that no cause of action can be stated, leave to amend should be denied." *Hayes Mechanical, Inc., 351 Ill. App. 3d at 7.* *HN23*[↑] "[W]hen ruling on a motion to amend, the court may consider the ultimate efficacy of a claim as stated in a proposed amended pleading" and it is not necessary for the plaintiff to file an amended complaint and the defendant to test the sufficiency of that complaint through a motion to dismiss. *Hayes Mechanical, Inc., 351 Ill. App. 3d at 7.*

[*P50]  In this case, we remanded the cause to afford plaintiff the opportunity to cure the defects in her medical battery [***28] claims, and the trial court repeatedly informed plaintiff of the need to comply with *section 2-622* to preserve those claims. The new claims of fraudulent concealment, conspiracy, vicarious liability, and spoliation of evidence were not timely filed. Plaintiff

2014 IL App (2d) 130401, *130401; 13 N.E.3d 179, **193; 2014 Ill. App. LEXIS 411, ***28; 382 Ill. Dec. 766, ****780

had several previous opportunities to amend her pleading. In fact, in dismissing the second amended complaint with prejudice, the court commented that "I think the procedural history of this case will reflect that I bent over backwards to give you every opportunity to file the best pleading that you could file, to obtain legal counsel if you chose to do so, and you proceeded on your own." Under these circumstances, the trial court did not abuse its discretion in dismissing plaintiff's new claims with prejudice.

 **[*P51]**  Plaintiff also argues that the dismissal violates her right to due process, because it denies her "right to remedy and justice," and that a genuine issue of material fact precludes the dismissal. She also claims that the statute of limitations or statute of repose does not bar her medical battery claims and that defendants failed to establish that plaintiff consented to the intrusions. Plaintiff's arguments are not developed  **[***29]**  or supported by citation to relevant authority (see *Ill. S. Ct. R. 341(h)(7)* (eff. Feb. 6, 2013)) and otherwise lack merit.

 **[*P52]**  III. CONCLUSION

 **[*P53]**  For the reasons stated, we affirm the order of the circuit court of Du Page County dismissing the second amended complaint with prejudice.

 **[*P54]**  Affirmed.

---

**End of Document**

 Caution
As of: November 30, 2020 3:37 PM Z

# *Holzrichter v. Yorath*

Appellate Court of Illinois, First District, First Division

March 4, 2013, Decided

No. 1-11-0287

**Reporter**

2013 IL App (1st) 110287 *; 987 N.E.2d 1 **; 2013 Ill. App. LEXIS 101 ***; 369 Ill. Dec. 659 ****; 2013-1 Trade Cas. (CCH) P78,289; 2013 WL 792833

SCOTT W. HOLZRICHTER, Plaintiff-Appellant, v. MARTIN YORATH, ROSALIND FRANKLIN UNIVERSITY OF MEDICINE AND SCIENCES, CHICAGO MEDICAL SCHOOL, DR. WILLIAM M. SCHOLL COLLEGE OF PODIATRIC MEDICINE SCHOOL OF GRADUATE AND POSTDOCTORAL STUDIES (CMS), FOOT AND ANKLE CLINICS OF AMERICA (FACA), AMERICAN MEDICAL ASSOCIATION (AMA), DEPARTMENT OF PROFESSIONAL REGULATION (IDPR), AMERICAN PODIATRIC MEDICAL ASSOCIATION (APMA), and ILLINOIS PODIATRIC MEDICAL ASSOCIATION (IPMA), Defendants-Appellants.

**Subsequent History:** Appeal denied by *Holzrichter v. Yorath, 2013 Ill. LEXIS 1185 (Ill., Sept. 25, 2013)*

**Prior History: [***1]** Appeal from the Circuit Court of Cook County. No. 05 L 002037. Honorable Susan Zwick, Ronald S. Davis, and James C. Murray, Judges Presiding.

*Holzrichter v. County of Cook, 231 Ill. App. 3d 256, 595 N.E.2d 1237, 1992 Ill. App. LEXIS 972, 172 Ill. Dec. 567 (Ill. App. Ct. 1st Dist., 1992)*

**Disposition:** Affirmed.

## Core Terms

tendons, surgery, foot, counts, circuit court, medical record, cutting, appointment, third amended complaint, Antitrust, battery, Clinic, osteotomy, second amended complaint, cause of action, infection, sesamoid, concealment, Podiatric, antibiotics, dressing, scarf, wound, pain, amended complaint, contested case, written report, podiatrist, summary judgment, surgical

## Case Summary

### Procedural Posture

Plaintiff patient sued defendants, a podiatrist, medical schools, professional associations, and the Illinois Department of Professional Regulation (IDPR), in the Circuit Court of Cook County (Illinois) for tort and statutory claims, including medical battery, arising out of surgery performed by the podiatrist. The trial court granted the physician summary judgment on the medical battery claim and dismissed all other claims. The patient appealed.

### Overview

The patient said the podiatrist severed his tendons against his directions. The appellate court held his medical battery and medical negligence claims failed because he (1) knowingly consented to the surgery and (2) presented no expert opinion required by former *735 ILCS 5/2-622* (1998), since a layperson could not find if the surgery exceeded his consent. His *735 ILCS 5/13-*

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **1; 2013 Ill. App. LEXIS 101, ***1; 369 Ill. Dec. 659, ****659

*215* (2004) fraudulent concealment claim was properly dismissed because no claim as to which it could extend a limitations period survived. No fraudulent misrepresentation was pled because no (1) concealment of a material fact, (2) intent to induce a false belief, or (3) inability to discover the truth were alleged. Illinois Antitrust Act, *740 ILCS 10/1 et seq.* (2004), claims against professional associations for podiatrists' refusal to provide a supporting opinion were properly dismissed because no alleged facts showed a conspiracy. His mandamus claim against the IDPR for not disciplining the podiatrist was properly dismissed because he could not compel the IDPR to exercise its discretion. It was no error to deny leave to amend his complaint to claim punitive damages because underlying claims failed.

**Outcome**
The trial court's judgment was affirmed.

# LexisNexis® Headnotes

Civil Procedure > Appeals > Appellate Briefs

Civil Procedure > Appeals > Dismissal of Appeals > Involuntary Dismissals

**_HN1_**[⤓] **Appeals, Appellate Briefs**

*Ill. Sup. Ct. R. 341* provides that all appellate briefs should contain a statement of compliance (*Ill. Sup. Ct. R. 341(c)*), a statement containing the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment (*Ill. Sup. Ct. R. 341(h)(6)*) and an argument which shall contain the contentions of the appellant and reasons therefor (*Ill. Sup. Ct. R. 341(h)(7)*). An appellate court has the discretion to strike an appellant's brief and dismiss an appeal for failure to comply with *Ill. Sup. Ct. R. 341*.

Civil Procedure > Parties > Pro Se Litigants > General Overview

Civil Procedure > Parties > Pro Se Litigants > Pleading Standards

**_HN2_**[⤓] **Parties, Pro Se Litigants**

A pro se litigant is not entitled to more lenient treatment than attorneys. In Illinois, parties choosing to represent themselves without a lawyer must comply with the same rules and are held to the same standards as licensed attorneys. Illinois courts have strictly adhered to this principle, noting a pro se litigant must comply with the rules of procedure required of attorneys, and a court will not apply a more lenient standard to pro se litigants.

Civil Procedure > Appeals > Standards of Review > De Novo Review

Civil Procedure > Appeals > Summary Judgment Review > Standards of Review

Civil Procedure > Judgments > Summary Judgment > Evidentiary Considerations

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > General Overview

**_HN3_**[⤓] **Standards of Review, De Novo Review**

Summary judgment shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *735 ILCS 5/2-1005* (2010). The purpose of summary judgment is not to try a question of fact but to determine whether a genuine issue of material fact exists. To determine whether a genuine issue of material fact exists, a court construes the pleadings liberally in favor of the nonmoving party. Summary judgment should not be granted unless the movant's right to judgment is free and clear from doubt. Appellate review of an order granting summary judgment is de novo.

Healthcare Law > Medical Treatment > Patient Consent > General Overview

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **1; 2013 Ill. App. LEXIS 101, ***1; 369 Ill. Dec. 659, ****659

Torts > Intentional Torts > Assault & Battery > Elements of Battery

**HN4[⤓] Medical Treatment, Patient Consent**

Illinois recognizes claims for medical battery. A plaintiff claiming medical battery must establish one of the following: (1) no consent to a medical procedure performed; (2) the procedure was contrary to the injured party's will; or (3) substantial variance of the procedure from the consent granted. It is unnecessary for the plaintiff to establish hostile intent on the part of the defendant; rather, the gist of an action for battery is the absence of consent on the plaintiff's part.

Torts > Intentional Torts > Assault & Battery > Elements of Battery

Torts > ... > Proof > Evidence > Expert Testimony

**HN5[⤓] Assault & Battery, Elements of Battery**

Illinois courts have not specifically addressed whether compliance with *735 ILCS 5/2-622* (2004), requiring expert testimony in a medical malpractice claim, is required in medical battery cases claiming a substantial variance of a procedure from the consent given. Based on the facts of each case, an expert opinion may not always be necessary.

Governments > Legislation > Interpretation

**HN6[⤓] Legislation, Interpretation**

The primary aim of statutory construction is to determine the legislature's intent, beginning with the plain language of the statute. Where the language is clear and unambiguous, the statute must be given effect as written without resort to further aids of statutory construction.

Constitutional Law > ... > Case or Controversy > Constitutionality of Legislation > General Overview

Governments > Legislation > Expiration, Repeal & Suspension

Governments > Legislation > Effect & Operation > Amendments

**HN7[⤓] Case or Controversy, Constitutionality of Legislation**

The effect of declaring a statute unconstitutional is to revert to the statute as it existed before the statute was amended, prior to being declared unconstitutional.

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

**HN8[⤓] Evidence, Expert Testimony**

Former *735 ILCS 5/2-622* (2008) requires that a plaintiff filing a medical malpractice claim must supplement the complaint with: (1) an affidavit, either from the plaintiff's attorney or from the plaintiff if proceeding pro se, certifying that the affiant consulted with a qualified health care professional in whose opinion there is a reasonable and meritorious cause for the filing of such action; and (2) a copy of that health professional's written report setting forth the reasons for his or her determination. *735 ILCS 5/2-622(a)* (1998). *735 ILCS 5/2-622* (2008) mandates an affidavit and health professional's written report in any action, whether in tort, contract or otherwise, in which a plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice.

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

**HN9[⤓] Evidence, Expert Testimony**

Generally, expert testimony is required to support a medical malpractice claim because the assessment of the alleged negligence may require knowledge, skill or training in a technical area outside the comprehension of laypersons. In other words, the subject matter is so complicated that lay persons are not in an adequate position to assess whether a breach of duty has occurred. Expert testimony is necessary whenever jurors who are not skilled in the practice of medicine would have difficulty, without assistance of medical evidence, in determining any lack of necessary scientific

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **1; 2013 Ill. App. LEXIS 101, ***1; 369 Ill. Dec. 659, ****659

skill on the part of a medical professional. The plain and unambiguous language of former _735 ILCS 5/2-622_ (2008) does not limit the requirement of an affidavit and expert medical opinion solely to medical malpractice claims. Illinois courts have held expert medical opinions are necessary in non-medical-malpractice claims.

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

**_HN10_[⬇]** **Evidence, Expert Testimony**

The plain language of former _735 ILCS 5/2-622(a)_ states that an affidavit of a plaintiff or a plaintiff's attorney is required in any action, whether in tort, contract, or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

**_HN11_[⬇]** **Defenses, Demurrers & Objections, Motions to Dismiss**

The purpose of a _735 ILCS 5/2-619_ (2004) motion to dismiss is to dispose of issues of law and easily proved issues of fact early in the litigation.

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Comply

Torts > Malpractice & Professional Liability > Healthcare Providers

**_HN12_[⬇]** **Involuntary Dismissals, Failure to Comply**

See _735 ILCS 5/2-622(g)_ (1998).

Civil Procedure > Appeals > Standards of Review > De Novo Review

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Comply

Civil Procedure > Appeals > Standards of

Review > Questions of Fact & Law

**_HN13_[⬇]** **Standards of Review, De Novo Review**

An appeal from a _735 ILCS 5/2-619_ (2004) dismissal raises the issue of whether a trial court's order is proper as a matter of law and is, therefore, reviewed de novo.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Torts > Malpractice & Professional Liability > Healthcare Providers

Civil Procedure > Dismissal > Involuntary Dismissals > Failure to Comply

**_HN14_[⬇]** **Standards of Review, Abuse of Discretion**

The decision to dismiss an action with prejudice after finding that a plaintiff has failed to comply with former _735 ILCS 5/2-622_ (2008), regarding medical malpractice claims, will not be disturbed by a reviewing court absent an abuse of discretion.

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

**_HN15_[⬇]** **Evidence, Expert Testimony**

See former _735 ILCS 5/2-622(b)_ (1998).

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

Torts > ... > Proof > Res Ipsa Loquitur > General Overview

**_HN16_[⬇]** **Evidence, Expert Testimony**

When a plaintiff intends to rely on the doctrine of res ipsa loquitur in a medical malpractice action, the certificate and written report required by former _735 ILCS 5/2-622(b)_ (2008) must state that, in the opinion of the reviewing health professional, negligence has

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **1; 2013 Ill. App. LEXIS 101, ***1; 369 Ill. Dec. 659, ****659

occurred in the course of medical treatment. Former *735 ILCS 5/2-622(c)* (1998).

Evidence > Admissibility > Expert Witnesses > Kelly Frye Standard

Torts > ... > Proof > Evidence > Expert Testimony

Torts > Malpractice & Professional Liability > Healthcare Providers

**HN17**[⬇] **Expert Witnesses, Kelly Frye Standard**

The Frye standard provides that scientific evidence is only admissible at trial if the methodology or scientific principle upon which the opinion is based is sufficiently established to have gained general acceptance in the particular field in which it belongs. Comparatively, former *735 ILCS 5/2-622* (1998) is a pleading requirement designed to eliminate frivolous medical malpractice lawsuits at the outset of the litigation. Because the purpose of former *735 ILCS 5/2-622* (1998) is to eliminate frivolous lawsuits at the pleading stage, the statute has no bearing on the type of evidence relied upon at trial. In other words, a plaintiff cannot rely on Frye unless his or her case goes to trial; however, the plaintiff cannot reach trial unless he or she complies with the pleading requirements of former *735 ILCS 5/2-622* (1998).

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Torts > Business Torts > Fraud & Misrepresentation > General Overview

Civil Procedure > Dismissal > Involuntary Dismissals > Appellate Review

Civil Procedure > Appeals > Standards of Review > De Novo Review

Torts > Intentional Torts > Assault & Battery > General Overview

**HN18**[⬇] **Standards of Review, Abuse of Discretion**

A trial court's decision to dismiss a count of a second amended complaint alleging fraudulent concealment of medical battery, pursuant to *735 ILCS 5/2-619* (2004) is

reviewed de novo. An abuse of discretion standard of review is applied for the court's dismissal with prejudice of the same claim in a third amended complaint.

Governments > Legislation > Statute of Limitations > Extensions & Revivals

Torts > Business Torts > Fraud & Misrepresentation > General Overview

**HN19**[⬇] **Statute of Limitations, Extensions & Revivals**

Fraudulent concealment, as codified in *735 ILCS 5/13-215* (2004), is not a cause of action in and of itself; rather, it acts as an exception to the time limitations imposed on other, underlying causes of action.

Governments > Legislation > Statute of Limitations > Extensions & Revivals

**HN20**[⬇] **Statute of Limitations, Extensions & Revivals**

See *735 ILCS 5/13-215* (2004).

Governments > Legislation > Statute of Limitations > Extensions & Revivals

**HN21**[⬇] **Statute of Limitations, Extensions & Revivals**

There must be an underlying liability to fraudulently conceal for *735 ILCS 5/13-215* (2004) to apply.

Torts > Business Torts > Fraud & Misrepresentation > General Overview

**HN22**[⬇] **Business Torts, Fraud & Misrepresentation**

To establish an alleged concealment amounted to a fraudulent misrepresentation, a plaintiff must prove: (1) the concealment of a material fact, (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak, (3) the innocent party could not have discovered the truth through a

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **1; 2013 Ill. App. LEXIS 101, ***1; 369 Ill. Dec. 659, ****659

reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist, (4) the concealed information was such that the injured party would have acted differently had it been aware of it, and (5) the reliance by the person from whom the fact was concealed led to his or her injury.

Civil Procedure > Dismissal > Involuntary Dismissals > Appellate Review

Civil Procedure > Appeals > Standards of Review > De Novo Review

**HN23**[⬇] **Involuntary Dismissals, Appellate Review**

A dismissal pursuant to a *735 ILCS 5/2-615* (2004) motion is reviewed de novo.

Antitrust & Trade Law > Regulated Practices > Price Fixing & Restraints of Trade > General Overview

**HN24**[⬇] **Regulated Practices, Price Fixing & Restraints of Trade**

Under the Illinois Antitrust Act, *740 ILCS 10/3(1) - (3)* (2004), certain acts are unlawful.

Antitrust & Trade Law > Regulated Practices > Price Fixing & Restraints of Trade > General Overview

**HN25**[⬇] **Regulated Practices, Price Fixing & Restraints of Trade**

See *740 ILCS 10/3* (2004).

Antitrust & Trade Law > Regulated Practices > Price Fixing & Restraints of Trade > General Overview

**HN26**[⬇] **Regulated Practices, Price Fixing & Restraints of Trade**

Violation of the Illinois Antitrust Act, *740 ILCS 10/3* (2004), requires a combination or conspiracy between competitors or potential competitors to accomplish an anticompetitive objective.

Antitrust & Trade Law > Regulated Practices > Private Actions > General Overview

**HN27**[⬇] **Regulated Practices, Private Actions**

Under *740 ILCS 10/7(2)* (2004) of the Illinois Antitrust Act, a person may bring a civil action if he or she has been injured in his or her business or property, or is threatened with such injury, by a violation of *740 ILCS 10/3* (2004).

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Civil Procedure > Judgments > Relief From Judgments > Altering & Amending Judgments

Civil Procedure > Appeals > Standards of Review > De Novo Review

**HN28**[⬇] **Standards of Review, Abuse of Discretion**

A trial court's decision to dismiss a claim pursuant to *735 ILCS 5/2-619* (2004) is reviewed de novo. The grant or denial of a motion to reconsider lies within the discretion of the trial court.

Civil Procedure > ... > Writs > Common Law Writs > Mandamus

**HN29**[⬇] **Common Law Writs, Mandamus**

A mandamus order will issue only to compel a public official to perform a clear, nondiscretionary, official duty. Such relief will not be granted to direct the exercise of discretion. To state a cause of action for mandamus, a plaintiff must establish a clear right to relief, the defendant's clear duty to provide that relief, and the defendant's clear authority to comply with the relief sought.

Administrative Law > ... > Hearings > Right to Hearing > Due Process

Healthcare Law > Business Administration & Organization > Facility & Personnel

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **1; 2013 Ill. App. LEXIS 101, ***1; 369 Ill. Dec. 659, ****659

Licensing > General Overview

Administrative Law > ... > Formal Adjudicatory Procedure > Hearings > General Overview

### HN30[↧] Right to Hearing, Due Process

The Podiatric Medical Practice Act of 1987 (Act) (*225 ILCS 100/1 et seq.* (2004)) provides the Illinois Department of Professional Regulation (IDPR) with the authority to administer the licensing and discipline of podiatrists. *225 ILCS 100/5(A)*, *225 ILCS 100/6*, *225 ILCS 100/24* (2004). The IDPR may investigate the actions of any applicant or of any person or persons holding or claiming to hold a license, and also has the authority to suspend, revoke, or take any other disciplinary action as it may deem proper with regard to any licensee. *225 ILCS 100/27* (2004). The Act further directs the IDPR to provide licensees with procedural protections, such as timely notice of charges, a hearing and the opportunity to respond in writing, before taking any disciplinary action. *225 ILCS 100/27* (2004). Not every informal complaint filed with the IDPR by a private citizen develops into a "contested case" under *5 ILCS 100/10-25* (2004). A contested case is an adjudicatory proceeding in which all parties shall be afforded an opportunity for a hearing after reasonable notice. *5 ILCS 100/10-25(a)* (2004).

Administrative Law > Agency Adjudication > General Overview

### HN31[↧] Administrative Law, Agency Adjudication

See *5 ILCS 100/10-25(c)* (2004).

Healthcare Law > Business Administration & Organization > Facility & Personnel Licensing > General Overview

### HN32[↧] Business Administration & Organization, Facility & Personnel Licensing

In the context of Illinois Department of Professional Regulation (IDPR) proceedings under the Podiatric Medical Practice Act, *225 ILCS 100/1 et seq.* (2004), a contested case is instituted in one of two ways. First, the chief of prosecutions for the IDPR may issue a written complaint, which must include a clear statement of the acts or omissions alleged to violate a statute or rule. *Ill.*

*Admin. Code tit. 68, § 1110.20(b)* (2004). Second, a person who has been denied licensure or subjected to discipline by the IDPR may institute a contested case by petitioning the IDPR's chief of prosecutions for relief. *Ill. Admin. Code tit. 68, § 1110.30* (2004). A private citizen can never institute a contested case against a podiatrist simply by filing informal allegations with the IDPR. The IDPR retains absolute discretion to prosecute, or not prosecute, as it sees fit.

Healthcare Law > Business Administration & Organization > Facility & Personnel Licensing > General Overview

### HN33[↧] Business Administration & Organization, Facility & Personnel Licensing

Under the Podiatric Medical Practice Act, *225 ILCS 100/1 et seq.* (2004), and the Administrative Procedure Act (*5 ILCS 100/10-25* (2004)), the determination of whether an investigation has revealed enough evidence for the chief of prosecutions of the Illinois Department of Professional Regulation to issue a complaint against a podiatrist is a discretionary decision. *225 ILCS 100/6*, *24*, *27* (2004), *Ill. Admin. Code tit. 68, § 1110.20* (2004).

Healthcare Law > Business Administration & Organization > Facility & Personnel Licensing > General Overview

### HN34[↧] Business Administration & Organization, Facility & Personnel Licensing

The contested case provisions of the Administrative Procedure Act, *5 ILCS 100/10-25* (2004), provide only parties with the opportunity for a hearing. *5 ILCS 100/10-25* (2004). Neither the Podiatric Medical Practice Act (Act), *225 ILCS 100/1 et seq.* (2004), nor the Illinois Department of Professional Regulation (IDPR) administrative rules make a complaining private citizen a party. In addition, the Act and IDPR administrative rules do not grant private parties the right to participate in the IDPR's case against a podiatrist by presenting evidence at a hearing. The procedural protections of notice and a hearing are guaranteed only to licensees who are the subject of an IDPR action. *225 ILCS 100/27* (2004), *Ill. Admin. Code tit. 68, §§ 1110.10, 1110.20, 1110.30* (2004).

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **1; 2013 Ill. App. LEXIS 101, ***1; 369 Ill. Dec. 659, ****659

Civil Procedure > Appeals > General Overview

*HN35*[⬇] **Civil Procedure, Appeals**

An appellate court may affirm a trial court on any basis warranted by the record.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Remedies > Damages > Punitive Damages

Civil Procedure > Appeals > Standards of Review > Questions of Fact & Law

*HN36*[⬇] **Standards of Review, Abuse of Discretion**

The determination of whether the facts of a given case justify the imposition of punitive damages is a question of law; however, it has been uniformly held that an abuse of discretion standard will be applied on review.

Torts > Intentional Torts > General Overview

Torts > ... > Punitive Damages > Availability > General Overview

Torts > Malpractice & Professional Liability > Healthcare Providers

*HN37*[⬇] **Torts, Intentional Torts**

*735 ILCS 5/2-1115* (2004) bars recovery of punitive damages in a medical malpractice action. A plaintiff, however, may state a medical malpractice claim subject to the limitations of *735 ILCS 5/2-1115* (2004), as well as an intentional tort claim for which punitive damages may be available.

Civil Procedure > Remedies > Damages > Punitive Damages

Torts > ... > Punitive Damages > Availability > General Overview

*HN38*[⬇] **Damages, Punitive Damages**

Punitive damages must derive from the wrongful conduct giving rise to a cause of action.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

*HN39*[⬇] **Standards of Review, Abuse of Discretion**

The decision to deny a motion for leave to amend a complaint is reviewed under the abuse of discretion standard.

Civil Procedure > Appeals > Appellate Briefs

*HN40*[⬇] **Appeals, Appellate Briefs**

A reviewing court is entitled to have the issues clearly defined and supported by pertinent authority and cohesive arguments. *Ill. Sup. Ct. R. 341(h)(7)*.

# Syllabus

In an action making numerous allegations, including medical malpractice, medical battery, negligence and antitrust violations, against numerous defendants, including physicians, medical schools and state agencies, arising from the surgical repair of an injury plaintiff suffered when his big toe struck a protrusion in a sidewalk while he was running at night, the trial court's orders granting defendants summary judgment, dismissing various claims made by plaintiff and denying his motions to amend or reconsider were upheld on plaintiff's *pro se* appeal.

**Counsel:** Scott Holzrichter, APPELLANT, Pro se, Chicago IL.

For APPELLEES MARTIN YORATH, ROSALIND FRANKLIN UNIVERSITY OF MEDICINE AND SCIENCES, CHICAGO MEDICAL SCHOOL, DR. WILLIAM M. SCHOLL COLLEGE OF PODIATRIC MEDICINE SCHOOL OF GRADUATE AND POSTDOCTORAL STUDIES (CMS), Johnson & Bell,

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **1; 2013 Ill. App. LEXIS 101, ***1; 369 Ill. Dec. 659, ****659

Ltd, Chicago, IL (Gregory E. Schiller, David M. Macksey, Garrett L. Boehrn, Jr., of counsel).

For APPELLEE FOOT AND ANKLE CLINICS OF AMERICA (FACA), Clausen Miller, P.C., Chicago, IL (Monica C. Palermo, Brian J. Riordan, of counsel).

For APPELLEE AMERICAN MEDICAL ASSOCIATION (AMA), American Medical Association, Chicago, IL (Leonard A. Nelson, of counsel).

For APPELLEE DEPARTMENT OF PROFESSIONAL REGULATION (IDPR), Attorney General, Chicago, IL (Lisa Madigan, Elaine Wyder-Harshman, of counsel) and Solicitor General, Chicago, IL (Michael A. Scodro, of counsel).

For APPELLEES AMERICAN PODIATRIC MEDICAL ASSOCIATION (APMA) and ILLINOIS PODIATRIC ASSOCIATION (IPMA), Chicago Law Partners, LLC, Chicago, IL (Timothy A. French, of counsel).

**Judges:** JUSTICE DELORT delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Cunningham concurred in the judgment and opinion.

**Opinion by:** DELORT

# Opinion

 **[*P1] [**4] [****662]**    Plaintiff, Scott Holzrichter, who is representing himself, sued defendants, Martin Yorath, D.P.M., Rosalind Franklin University of Medicine and Sciences (RFU), Chicago Medical School (CMS), Dr. William M. Scholl College of Podiatric Medicine School of Graduate and Postdoctoral Studies (Scholl College), Foot and Ankle Clinics of America (FACA), American Medical Association (AMA), Illinois Department of Professional Regulation (IDPR), American Podiatric Medical Association (APMA) and Illinois Podiatric Medical Association (IPMA), seeking damages arising out of injuries he allegedly sustained from podiatric

surgery performed by Dr. Yorath. Count I of plaintiff's third amended complaint is directed against Dr. Yorath and sounds in medical battery. Plaintiff alleges vicarious liability against CMS and FACA in counts II and III. He asserts the AMA, APMA and IPMA violated the Illinois  **[***2]** Antitrust Act (*740 ILCS 10/3(1)-(3)* (West 2004)) in counts IV, X and XI. Count V of the third amended complaint alleges negligence against the IDPR. Plaintiff claims fraudulent concealment against Dr. Yorath in count VI. He alleges Dr. Yorath committed medical malpractice, breach of informed consent and gross negligence in counts VII and VIII. Finally, count IX sets forth a claim of *res ipsa loquitur* against Dr. Yorath.

 **[*P2]**    The circuit court dismissed all counts of the third amended complaint with prejudice except for count I. Dr. Yorath moved for summary judgment on the sole remaining claim for medical battery, and the court granted that motion. Plaintiff appeals *pro se.* For the following reasons, we affirm.

 **[*P3]**  BACKGROUND

 **[*P4]**    Plaintiff initially injured his left big toe during the late summer of 1995. He testified by deposition that he was running at night and stubbed the toe on a crack in the sidewalk that had been raised upward from the growth of a tree root underneath. According to plaintiff, when his left big toe struck the sidewalk, it "caused the head of the first metatarsal to be moved immediately off the sesamoid apparatus." In other words, the toe "was driven down and below the second  **[***3]** toe." Plaintiff further explained that his sesamoid apparatus, the "equivalent to a kneecap of the knee," was dislocated "and it caused a bow strung big toe."

 **[*P5]**    Plaintiff testified that he did not seek medical treatment at the time he stubbed his toe. Plaintiff "thought with time it would heal because I did not really know the state of my foot -- and it didn't."

 **[*P6]**    Seven years after he stubbed his toe, plaintiff sought medical treatment at Community Health Clinic. Twice weekly, podiatrists from Scholl College would visit the clinic to provide free services to indigent and uninsured patients. Community Health Clinic scheduled an appointment for plaintiff to see a doctor from the Scholl College.

 **[*P7] [**5] [****663]**    On November 19, 2002, a Scholl College physician examined plaintiff at Community Health Clinic and diagnosed his left foot ailment as hallux abducto valgus. "Hallux" refers to the

big toe, "abducto" refers to the abnormal inward leaning of the big toe and "valgus" refers to the abnormal angulation of the big toe, commonly associated with bunion anomalies. The physician executed a referral form on the same date for plaintiff to be assessed further by the Foot Clinic for the Uninsured at Scholl College **[\*\*\*4]** (Scholl Foot Clinic). According to plaintiff, he was first seen at the Scholl Foot Clinic in November 2002 by a third-year podiatric medical school student and again on December 10, 2002 by a physician. Medical records dated December 10, 2002 indicate that plaintiff suffered from a "bunion that's painful with running." The medical records, labeled "progress notes," describe plaintiff's pain as "dull and achy of gradual onset of 7 years [sic] duration," caused "while running when he hit his foot against a curb."

**[\*P8]** On January 21, 2003, Dr. Yorath examined plaintiff's left big toe for the first time. Dr. Yorath diagnosed plaintiff with hallux abducto valgus and suggested an osteotomy or bunionectomy. Plaintiff recalled from the initial examination that Dr. Yorath discussed the type of surgical procedure, a "Z scarf-Meyer osteotomy," and described it. According to plaintiff, Dr. Yorath told him the surgery required "cutting the first metatarsal, which is the longest, biggest long bone in the foot," "moving the two pieces and screwing them back together again."

**[\*P9]** Plaintiff testified that during the January 21 meeting, Dr. Yorath proposed cutting the extensor hallucis brevis tendon during the **[\*\*\*5]** course of the Z scarf osteotomy procedure. Plaintiff "immediately told him don't do that." Plaintiff believed Dr. Yorath was joking when he suggested cutting the tendon. Plaintiff stated Dr. Yorath did not explain that cutting the tendon was part of the Z scarf osteotomy procedure and that, when plaintiff objected to the cutting of the tendon, Dr. Yorath remained silent and then changed the subject. According to plaintiff, cutting a tendon during the Z scarf osteotomy procedure was "absurd." Plaintiff testified that he had no medical training, but knew that cutting tendons "had nothing to do with the osteotomy he was describing. An osteotomy and cutting tendons are two totally completely separate things that have nothing to do with each other in any way." He stated it was "preposterous [for Dr. Yorath] to even suggest that [the extensor hallucis brevis] tendon has anything to do with the development of this [hallux abducto valgus] pathology." Plaintiff refused to defer to a physician on the issue of whether cutting the tendon is part of the Z scarf osteotomy procedure and stated a physician who would suggest such a course of action "is a fraud."

**[\*P10]** The progress notes dated January 21, **[\*\*\*6]** 2003 reflect that the Z scarf osteotomy procedure recommended to plaintiff "would be better suited to allow for ease of ambulation as well as correction of deformity." The notes stated plaintiff demonstrated an "understanding of rationale as to this approach to [the] problem," but made no mention of plaintiff instructing Dr. Yorath not to cut the extensor hallucis brevis tendon.

**[\*P11]** Following the initial appointment with Dr. Yorath, plaintiff sent him a January 22, 2003 letter outlining "a layman history" of what he believed happened to his foot when he injured it in 1995. The correspondence included no express instruction to Dr. Yorath to not cut any tendons. Plaintiff stated he sent the correspondence for "strictly physical history."

**[\*P12]** **[\*\*6]** **[\*\*\*\*664]** On January 28, 2003, plaintiff returned for a second visit with Dr. Yorath. The progress notes of the same date, labeled "pre-op physical," document that plaintiff had been extensively consulted as to the nature of his foot condition and the surgical remedy. During the January 28 appointment, plaintiff acknowledged Dr. Yorath had expressed he was contemplating cutting the tendons during the procedure. Plaintiff reiterated to Dr. Yorath that he did not want **[\*\*\*7]** any tendons to be cut. According to plaintiff, each time Dr. Yorath mentioned cutting the tendon, plaintiff responded, "don't do that." Plaintiff does not recall having a thorough conversation with Dr. Yorath regarding the status of his foot condition or his surgical options. He also denied having a thorough conversation with Dr. Yorath regarding the planned surgical procedure. Plaintiff testified, however, that he was allowed to ask Dr. Yorath questions and did so during his visits with Dr. Yorath prior to the surgery. Dr. Yorath's *Illinois Supreme Court Rule 213(f)* (*Ill. S. Ct. R. 213(f)* (eff. Jan. 1, 2007)) disclosures state that Dr. Yorath would testify he explained to plaintiff that severing of the tendons is part and parcel of the Z scarf osteotomy procedure.

**[\*P13]** Plaintiff testified that at the end of the January 28 appointment, he told Dr. Yorath that he wanted to go forward with the Z scarf osteotomy procedure, but did not authorize the cutting of any tendons. Plaintiff believed cutting the tendons involved "a totally separate procedure" and that Dr. Yorath's suggestion to cut the tendons was "a mere like whimsical experiment on his part." The Scholl Foot Clinic scheduled plaintiff **[\*\*\*8]** for preoperative blood work on February 13, 2003 and surgery on February 18, 2003.

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **6; 2013 Ill. App. LEXIS 101, ***8; 369 Ill. Dec. 659, ****664

[*P14] Plaintiff recalled a February 13, 2003 meeting with Dr. Yorath, but Dr. Yorath's progress notes only reflect a February 17, 2003 preoperation confirmation call with "all questions answered." The record does not include a corresponding February 13 progress note indicating an appointment with Dr. Yorath.

[*P15] Plaintiff described the February 13 appointment as a "discussion," rather than as an exam. Plaintiff testified, "I don't know whether I brought up the letter of [January] 22nd again. *** I did try to get an idea of what he's going to do and again, he wasn't very verbal. He didn't tell me much about the surgery. But I just told him, be conservative and do not snip tendons." Plaintiff believed the purpose of the February 13 appointment "was to get both of us clearly understanding what was going to happen on the 18th." He could not recall whether he asked Dr. Yorath any questions about the surgery. Plaintiff stated that Dr. Yorath was "distant" during the appointment.

[*P16] On February 18, 2003, plaintiff presented to the Scholl Foot Clinic for the Z scarf osteotomy procedure. Prior to the surgery, plaintiff read [***9] and signed a consent form authorizing Dr. Yorath to perform a "Scarf 'Z' bunionectomy of the Left foot," which includes "cut[ting] the big toe bone [and] mov[ing] it to reduce pain [and] stabliz[ing] the base [with] 2 screws." A third-year podiatric medical student, J.J. Konkol, filled out the consent form and explained the surgery, consent form and the possible risks and complications to plaintiff. Plaintiff testified that Konkol did not state tendons would be cut during the procedure. Plaintiff told Konkol that he did not want any tendons to be cut during the surgery, but did not ask Konkol to include that language in the consent form. Plaintiff acknowledged that the consent form would not include all the details of the surgical procedure, but would have expected the form to include an "EHB [****665] [**7] release" if cutting the tendons was part of the surgery.

[*P17] The consent form plaintiff signed states the following:

"All questions that I have were answered fully to my satisfaction. Alternatives, including not having surgery, have been explained to me, along with their potential risks and benefits. I have decided upon the surgery described herein."

The consent form also provides, "I understand that [***10] possible risks and complications may include, but are not limited to *** [t]he possibility that no improvement in my condition may occur after surgery has been explained to me and I understand that no guarantee of improvement can be made."

[*P18] Dr. Yorath's operative report, dated February 18, 2003, documents that he performed the surgery with the assistance of two third-year podiatric medical students, Konkol and Miguel Rodriguez. Plaintiff testified that he was under a local anesthetic throughout the procedure and was able to listen to Dr. Yorath narrate the surgical process to the medical students assisting. Although under a local anesthetic, plaintiff was able to listen to every word Dr. Yorath said during the surgery.

[*P19] Plaintiff recalled several events that occurred during the procedure. According to plaintiff, Dr. Yorath made the first incision. Dr. Yorath then "mentioned that the sesamoid bone was stuck in place, and he couldn't budge it with his fingers; and that was very unusual." Plaintiff recalled Dr. Yorath stating that he would leave the sesamoid stuck in place and correct the problem by releasing the connective tissue. Plaintiff testified that Dr. Yorath never mentioned the [***11] word "tendon" during the surgery, but plaintiff understood "connective tissue" meant the tendons. Plaintiff stated that the term "connective tissue" was a vague term that could mean something other than tendons, such as ligaments. Plaintiff regretted not asking any questions during the surgery. He stated in his testimony that after Dr. Yorath described the sesamoid as stuck, "I wish I would have opened my mouth right then and tell him, either deal with the sesamoid or stop the procedure." Plaintiff agreed, however, that the stuck sesamoid "was significant" and "that although it might not have been what [Dr. Yorath] necessarily expected, it was one that had to be addressed." Plaintiff recalled from the surgery that, once Dr. Yorath encountered the stuck sesamoid, "he tried to get around the problem by -- he said he was going to release this connective tissue here."

[*P20] Dr. Yorath's operative report documented the procedure in detail as follows:

"A 7 mm incision was made over the dorsum of first metatarsophalangeal joint, medial to the extensor hallucis longus tendon. The incision was deepened through subcutaneous tissue with care taken to identify and retract all vital neuro-vascular structures. [***12] A capsular incision was made at the metatarsophalangeal joint and the capsule/periosteum were reflected off the first metatarsal head. The head of the first metatarsal was exposed medially. The cartilage was white with a dorsal osteophytosis. Power equipment was used

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **7; 2013 Ill. App. LEXIS 101, ***12; 369 Ill. Dec. 659, ****665

to remove the medial emminence from the first metatarsal head, just medial to the sagittal groove. A lateral release was performed severing the tendons of Adductor Hallusis, collateral ligaments, ligamentous attachments of the fibular sesamoid. Using a sagittal saw, a 'Z' type osteotomy was performed in the first metatarsal. Internal fixation was obtained with two 18 mm 2.7 mm cortical screws. The wound was irrigated with copious amounts of normal saline **[****666]** **[**8]** solution. A medial capsulotomy was peformed and then the capsule was closed with a 2-0 vicryl using simple interrupted sutures. The Extensior Hallus Bevis tendon was then released. The wound was closed using Subdermal suture technique with 4-0 Monocryl."

Following the suturing of incision site, Dr. Yorath dressed the wound using a four-inch sterile gauze. An Ace bandage was applied to the right foot for compression and protection. Dr. Yorath noted no complications in the **[***13]** operative report.

**[*P21]** At the conclusion of the surgery, plaintiff was given discharge instructions to: (1) go directly home and lie down; (2) keep his foot and leg elevated above hip level; (3) not bear weight on the foot any more than necessary; and (4) not remove the surgical bandages and keep the left foot dry. Plaintiff testified that he understood he was supposed to keep his left foot wrapped until he returned for his postoperative appointment. Plaintiff knew that meant "don't shower, don't wet, you know keep the wound out of the shower."

**[*P22]** Within the first few days following the surgery, plaintiff's left foot "became unbearably itchy." Plaintiff removed the surgical bandages and observed a water blister. He testified that he "tried to use a sponge bath to clean the area without soaking it -- I didn't soak it in the water because, you know, it's too short after the surgery; but I think I sponge bathed to try to clean the area as much as I could to relieve some of the itching."

**[*P23]** Medical records dated February 25, 2003 indicate that four days after the surgery, plaintiff removed the surgical bandages due to intolerable itching and observed a water blister. The records documented that plaintiff **[***14]** redressed the wound with toilet paper and changed the dressing with toilet paper daily. The records reflected plaintiff had been soaking his left foot in a bath with Epsom salt daily since removing the bandages.

**[*P24]** Plaintiff testified he used toilet paper to dress the wound because "it's available and it's sterile." Plaintiff took the toilet paper from a common bathroom area shared by other tenants of the Covenant Hotel where he resided.

**[*P25]** **[***15]** On February 25, 2003, plaintiff walked two miles to his first postoperative appointment. Plaintiff testified Dr. Yorath expressed alarm at the condition of his foot, the itching of the foot, the presence of a blister on the foot, the removal of the bandages and dressing of the wound with toilet paper. Dr. Yorath told plaintiff that he probably had cellulitis, a soft tissue infection. He prescribed Keflex, an antibiotic to treat the infection, instructed plaintiff not to remove the dressings on his foot and to keep the foot elevated until the next appointment in two days. Plaintiff testified he left the Scholl Foot Clinic and walked two miles home. Plaintiff walked to and from the Scholl Foot Clinic for each of his subsequent postoperative appointments.

**[*P26]** On February 27, 2003, plaintiff returned for another appointment with Dr. Yorath. Plaintiff did not follow Dr. Yorath's instructions to begin taking the antibiotic prescribed to him because he adamantly believed he did not have an infection. The February 27 medical records confirm plaintiff refused to take the Keflex because he "doesn't feel that he has an infection." Plaintiff testified that, following the surgery, he "really lost [his] **[***16]** faith in Dr. Yorath totally after [he] got all these stories from him as to why [his] foot was still not fixed." Plaintiff further stated, "to the extent if [Dr. Yorath] at all criticized the use of the toilet paper tissue, that would have been further reason to poo poo anything he **[****667]** **[**9]** would say because that's totally sound sanitation wise."

**[*P27]** Dr. Yorath strongly suggested to plaintiff that he take the antibiotics for the infection in his foot. He also suggested plaintiff go to Cook County Hospital to have the infection treated, but plaintiff refused.

**[*P28]** Plaintiff returned to the Scholl Foot Clinic to see Dr. Yorath on March 4, 2003. Dr. Yorath took X-rays of plaintiff's left foot, which indicated possible osteomyelitis, an infection in the bone. Plaintiff again refused to take antibiotics and go to Cook County Hospital for treatment of the infection. Plaintiff testified that he had no problems with his foot at that time.

**[*P29]** Medical records of the March 4 visit document that plaintiff had "multiple swollen infected bullae on foot which is hot and swollen." Plaintiff told Dr. Yorath that he had a fever the previous night which had receded by morning. Plaintiff treated the bullae (blisters) by cutting

[***17] the tops off and draining the pus. He then scrubbed the lesion with soap and water and wrapped the "oozing wound" in cellophane. Plaintiff had also developed a large bullae on the arch of his foot, which was "open and sore." Dr. Yorath also observed "significant erythema and edema on the dorsum of the left foot." Plaintiff was advised to begin taking Keflex immediately and keep his dressing dry and clean.

[*P30] On March 6, 2003, plaintiff returned to the Scholl Foot Clinic for another follow-up visit with Dr. Yorath. Plaintiff had disregarded the previous March 4 instruction to not change the dressing on the wound. Plaintiff testified he could not deny the accuracy of the instruction not to change the dressing, but stated, "that's not relevant." Plaintiff denied he had a conversation with Dr. Yorath during which the doctor extensively counseled him regarding the need for aggressive control of the infection to prevent a poor outcome from the surgery.

[*P31] The medical records from the March 6 appointment indicate plaintiff admitted to changing his dressing daily. Plaintiff denied he was having pain in his foot. Dr. Yorath counseled plaintiff for half an hour regarding the need for aggressive control [***18] of the infection "to prevent poor outcome from surgery, including potential for bone infection, loss of great toe/limb if he refuses treatment." Plaintiff again was instructed not to change his dressing and to take the antibiotics for his infection.

[*P32] Plaintiff testified that, on March 11, 2003, he had chills and thought he might be contracting the flu. Medical records of the same date show plaintiff had an appointment with Dr. Yorath. During this appointment, plaintiff promised to take the antibiotics. The medical records of March 13, 2003 reflect plaintiff was taking the antibiotics as prescribed.

[*P33] On March 18, 2003, plaintiff went to the Scholl Foot Clinic for a follow-up appointment with Dr. Yorath. The medical records of that date reflect plaintiff decided not to take the antibiotics. Dr. Yorath removed the dressing and documented that significant edema was still present and that erythema surrounded the surgical incision. Dr. Yorath noted additional blisters at the surgical site, which were draining fluid. Plaintiff again was instructed to leave the dressing alone and counseled again at length regarding the need to fight the infection and take the antibiotics as prescribed.

[*P34] Plaintiff [***19] testified that he had a follow-up appointment on March 26, 2003. According to plaintiff,

the incision site was draining "a very watery exudate" on that day. The medical records of that date indicate erythema was present to the mid-foot [**10] [****668] and edema was present to the mid-calf. Serious drainage was noted at and purulence was expressed from the incision site. Dr. Yorath made a small incision at the surgical site to remove pus and irrigated the wound. He dressed the wound with sterile gauze. Plaintiff again was advised to take the antibiotics, but he refused.

[*P35] The medical records dated April 1, 2003 document that plaintiff told Dr. Yorath the pain has been virtually obsolete since his previous appointment. Plaintiff also told Dr. Yorath he completed taking a prescription of Keflex. Plaintiff described a "clear amber drainage" from the wound site when he changed his dressings. The records noted the gauze dressing was intact with "minimal serious drainage." Dr. Yorath took a number of X-rays from plaintiff that day.

[*P36] Plaintiff testified that Dr. Yorath advised him to limit his physical activity and wear a walking brace until April 15, 2003. Plaintiff attempted to run 12 miles sometime in April [***20] 2003. Medical records dated April 29, 2003 confirm that plaintiff complained of pain from running and that "he has tried foot massages with his electric tooth brush to help with the pain and swelling." Plaintiff testified that he used an electric toothbrush to stimulate circulation "every day or once a week."

[*P37] On May 1, 2003, plaintiff returned to the Scholl Foot Clinic for an appointment with Dr. Yorath. Plaintiff again refused to take the prescribed antibiotics. Plaintiff again complained of an increase in pain while running. The medical records of the same date indicated that "edema persists."

[*P38] Plaintiff testified that, by May 6, 2003, he was running six miles per day. He stated that sometime in May of 2003, his transverse arch collapsed. Plaintiff stated that he could not put any weight on the front of his foot "without a lot of pain -- and it just collapsed." According to plaintiff, "[t]he only way that could have happened is if he cut the abductor hallucis muscle." Plaintiff stated that he confronted Dr. Yorath about whether he cut the abductor hallucis muscle in May of 2003 and Dr. Yorath said that he did. Plaintiff told Dr. Yorath that he wanted surgical repair of the tendon [***21] and the collapsed arch. Dr. Yorath responded that the abductor hallus muscle has nothing to do with the transverse arch. Plaintiff accused Dr. Yorath of lying

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **10; 2013 Ill. App. LEXIS 101, ***21; 369 Ill. Dec. 659, ****668

"because he was hiding what he had done to me, because he was clearly told he couldn't cut tendons and he cut those tendons."

[*P39]  Dr. Yorath's medical records of that date confirm that plaintiff was running up to six miles per day. The medical records do not include a discussion regarding the cutting of the abductor hallucis muscle, a collapsed transverse arch or a request for additional surgery. At his next follow-up appointment on May 20, 2003, plaintiff indicated he was still running six miles per day. The May 20 medical records stated that plaintiff's gait was steady and unassisted with no limp. The edema in the forefoot had decreased since the previous appointment. Dr. Yorath discussed the need for "modifying splinting of hallux with bunion splint." Plaintiff was advised to continue normal activity.

[*P40]  Plaintiff requested and received a copy of his medical records in June of 2003. Plaintiff denied that he had a follow-up appointment on June 12, 2003 and denied that he went to the Scholl Foot Clinic on that date. Medical records  [***22] from June 12 indicate he was seen walking out of the Scholl Foot Clinic. The records document that plaintiff told Dr. Yorath he was feeling okay, but had suffered from a fever a few days ago. Plaintiff complained his leg was swollen and that "blood came out to surface of leg." Plaintiff refused to  [****669]  [**11] seek medical advice and treatment. Dr. Yorath reported plaintiff did not want to be seen "despite my suggestion that he should be." Dr. Yorath reiterated his concern regarding an infection and recommended that plaintiff go to Cook County Hospital. The records indicate plaintiff "flatly refuses" to take antibiotics or go to the hospital. Plaintiff was still running six miles per day.

[*P41]  On June 26, 2003, plaintiff returned to the Scholl Foot Clinic for a follow-up visit with Dr. Yorath. Plaintiff recalled telling Dr. Yorath he took issue with "never releasing the fused fibula sesmoid." He told Dr. Yorath that he wanted another surgical procedure to reverse the cutting of the tendon. He complained his arch collapsed. Plaintiff stated, "I just wanted him to correct the anatomy of my foot so it was properly functioning and to undo every single thing that he did in my foot except for obviously cutting  [***23] the bone and screwing it back together again."

[*P42]  The June 26, 2003 medical records document that plaintiff was still running six miles per day. Plaintiff expressed concern regarding swelling in his foot and localized pain. Dr. Yorath noted in the records plaintiff

"almost absolutely has osteomyelitis of 1st metatarsal." Dr. Yorath recommended antibiotics and treatment at Cook County Hospital, which plaintiff again refused. The records indicate plaintiff saw no need for antibiotics or treatment at the hospital, and that he was doing "OK." Plaintiff requested that his foot pain be resolved and "is considering having lateral 1st MPT sesamoid removed" by surgery. Dr. Yorath noted that plaintiff brought a lot of Internet literature regarding possible surgical procedure options.

[*P43]  On July 15, 2003, plaintiff saw Dr. Yorath for another follow-up appointment. During that visit, Dr. Yorath told plaintiff he had osteomyelitis in his left foot and first metatarsal, which was also reflected in the medical records of the same date. Plaintiff was taking the antibiotics as directed. Plaintiff told Dr. Yorath that he was running and that "his running times have improved." Dr. Yorath advised plaintiff  [***24] to limit his physical activity. Plaintiff testified he continued running and saw no reason to follow Dr. Yorath's instructions because they "made no sense." Plaintiff filed a complaint against Dr. Yorath with the IDPR on July 18, 2003.

[*P44]  Plaintiff returned to Dr. Yorath on July 22, 2003 and informed Dr. Yorath that he was continuing to run. Dr. Yorath again advised plaintiff to limit his physical activity and suggested that plaintiff wear a surgical shoe. Plaintiff told Dr. Yorath that he wore a wedge in between his first and second toe while he ran. Plaintiff testified that he refused to follow Dr. Yorath's advice.

[*P45]  By August 12, 2003, plaintiff was running 12 miles according to the medical records. Plaintiff testified that he would run 12 miles once a week, but otherwise ran 6 miles daily. He told Dr. Yorath during his visit on the same date that he was doing very well with no pain in his left foot except for some localized pain. The medical records also show plaintiff refused to continue taking antibiotics for the osteomyelitis.

[*P46]  Plaintiff testified that during the August 12 appointment, Dr. Yorath cut orthotics for him to wear in his running shoes. Plaintiff tried to use the orthotics,  [***25] but said they caused more pain at the arch of his foot. Instead, plaintiff took the padded part of the orthotics, cut them and packed them under the heel of his foot, which caused the pain to go away. Plaintiff told Dr. Yorath at his next appointment on September 11, 2003 that the orthotics were not working and that he repositioned  [****670]  [**12] the material under the heels of his shoes to eliminate the pain.

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **12; 2013 Ill. App. LEXIS 101, ***25; 369 Ill. Dec. 659, ****670

[*P47] The medical records of October 14, 2003 reflect that plaintiff was running up to 12 miles per day consecutively. Dr. Yorath instructed plaintiff to limit his running to no more than five miles per day. Plaintiff testified he did not follow Dr. Yorath's advice because "[h]e's pretty clueless as to everything having to do with the foot." Plaintiff stated Dr. Yorath was "pathetic as a doctor. He's embarrassing. He's an embarrassment to the profession."

[*P48] Plaintiff continued to see Dr. Yorath on December 2, 2003, during which plaintiff discussed additional surgical options for his left foot. Plaintiff testified, "I wanted to have what he did reversed and all the surgical options were toward that end."

[*P49] In January of 2004, plaintiff followed up on the complaint he filed against Dr. Yorath in July of [***26] 2003. Plaintiff testified that he filed the IDPR complaint because Dr. Yorath "wasn't doing anything to help resolve my problem." Plaintiff claimed Dr. Yorath made false entries in the medical records by not recording the stuck sesamoid in the operative report. Plaintiff stated he was getting no cooperation from the Scholl Foot Clinic and "needed another set of eyes" for an investigation.

[*P50] On January 15, 2004, plaintiff returned to the Scholl Foot Clinic for an appointment with Dr. Yorath. The medical records document that Dr. Yorath was aware of the IDPR complaint. According to the medical records, plaintiff stated "his whole premise for IDPR to review the records is because he wants an independent review to see if a lateral release was warranted." Dr. Yorath noted plaintiff "states that his understanding of the consent/procedure (procedure, specifically) was that he was to have an osteotomy." Dr. Yorath explained to plaintiff that a lateral release is an inherent part of the overall osteotomy/bunionectomy procedure. Plaintiff did not comment in response to Dr. Yorath's explanation. Dr. Yorath further explained that attempting to free a fused sesamoid is going to have very little to [***27] no effect on the present situation as plaintiff saw it, and that it would simply result in re-fusion of the sesamoid at a subsequent date. Dr. Yorath presented plaintiff with three options to consider, including: (1) a further osteotomy of the first metatarsal; (2) removal of a bone at the first metatarsal; or (3) possible excision of the sesamoid. Dr. Yorath also suggested that a "time out" was necessary in light of the IDPR complaint. He presented to plaintiff options to see other physicians, but plaintiff responded, "You are the head of surgery, so there isn't anyone else I need to see." Plaintiff then told Dr. Yorath that he was seeing another podiatrist.

[*P51] Plaintiff testified that some time between his surgery and January of 2004, he attempted to contact three other podiatrists, Drs. Young, Weil and Zygmunt, for a second opinion. None of the podiatrists agreed to see plaintiff or to provide him with a second opinion.

[*P52] On February 19, 2004, plaintiff returned to Dr. Yorath to discuss possible further treatment. The medical records of the same date document that plaintiff was still running. Plaintiff remained adamant that his lateral sesamoid needed to be freed. Plaintiff was of the [***28] "very strong opinion" that since the sesamoid did not move during the surgery, the remainder of the procedure should not have been completed, particularly any cutting of the tendons or ligaments at the sesamoid complex. Dr. Yorath attempted to explain to plaintiff that it is accepted practice to release the ligaments around the sesamoid [****671] [**13] and that the freeing of the sesamoid alone would not have worked during the surgery. Dr. Yorath noted in the records that he could not ascertain whether plaintiff understood his explanation. Plaintiff told Dr. Yorath he wanted additional surgery to be performed by Dr. Yorath and did not want to see another podiatrist. Dr. Yorath responded that plaintiff needed to wait for the resolution of the IDPR complaint. Plaintiff told Dr. Yorath that if he did not perform the surgery, "suing might be [the] only recourse for him since there is no one else to do the case for him."

[*P53] Plaintiff's last appointment with Dr. Yorath occurred in April 2004. Plaintiff testified that he was never obligated to pay Dr. Yorath for the surgery or any of the postoperative appointments. Plaintiff incurred a total of $80 in out-of-pocket costs for blood work prior to the surgery. [***29] He testified that he was going to tell a jury, "just as a sucker punch is done free, this is getting mugged in the alley done free. This doctor did to me free, under the guise of being a doctor."

[*P54] Plaintiff testified that, in May of 2004, he saw a podiatrist, Dr. Litdke, for a gait analysis. Plaintiff described to Dr. Litdke the procedure performed by Dr. Yorath. Dr. Litdke offered no criticisms of the care and treatment rendered by Dr. Yorath. According to plaintiff, Dr. Litdke "shrugged his shoulders and didn't say anything."

[*P55] Plaintiff agreed that no physician has ever provided an opinion to a reasonable degree of medical certainty that Dr. Yorath deviated from the standard of care and treatment of his foot. Plaintiff explained that

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **13; 2013 Ill. App. LEXIS 101, ***29; 369 Ill. Dec. 659, ****671

the medical community refused to provide him with a report because they were collectively "refusing to cooperate because they want to keep their collective medical malpractice costs to a very extreme minimum." Plaintiff characterized the refusal of another podiatrist to provide him with an opinion as "a very, very effective boycott." Plaintiff also attempted to contact three podiatrists outside of Illinois for an opinion. Plaintiff testified that when **[***30]** he tried to continue correspondence with these podiatrists, "they knew I was going to get too dicey, so they just kind of dropped out."

**[*P56]** Plaintiff testified regarding the results of the IDPR investigation. The IDPR closed plaintiff's file on June 15, 2004, because there was no cause of action contained in his complaint. Plaintiff believed the IDPR failed to investigate his complaint, which consisted of five lines. Plaintiff stated that the substance contained in his five-line complaint "reflects gross medical malpractice."

**[*P57]** Plaintiff also testified that he was not seeking damages from lost wages. He wanted his foot to be "put back to where it was before it was touched with a scalpel." Prior to filing his initial complaint, plaintiff contacted 25 attorneys to discuss bringing a lawsuit against Dr. Yorath. Plaintiff was unable to find an attorney willing to take the case.

**[*P58]** According to Dr. Yorath, plaintiff's surgery was complicated by a postoperative wound infection, which was caused and exacerbated by his failure to follow postoperative instructions and properly attend to the wound. Dr. Yorath believes plaintiff's use of unorthodox and unsanitary means of dressing the wound also contributed **[***31]** to the infection. Dr. Yorath stated in his *Rule 213* disclosures that "[a]ny deficits experienced today by [plaintiff] were a result of the post-operative wound infection and [plaintiff's] failure to comply with physician orders." During the approximately 14-month period following plaintiff's surgery, Dr. Yorath told plaintiff repeatedly that the infection he had in his left foot was causing the deformity and function **[****672]** **[**14]** problems. Plaintiff considered Dr. Yorath's opinion to be "a total bluther."

**[*P59]** On February 18, 2005, plaintiff filed a *pro se* complaint in the circuit court. He alleged medical malpractice and medical battery against Dr. Yorath in count I. He claimed medical malpractice and medical battery under the doctrine of *respondeat superior* against CMS and FACA in counts II and III. Plaintiff alleged general violations of antitrust law against the

AMA in count IV. In count V, plaintiff claimed negligence by the IDPR in its handling of the complaint he filed against Dr. Yorath. The court dismissed without prejudice all counts of the complaint, but granted plaintiff leave to amend.

**[*P60]** Plaintiff filed an amended complaint on June 17, 2005. Plaintiff alleged medical battery against Dr. Yorath **[***32]** in count I and claimed $2 million in damages. Plaintiff again alleged liability against CMS and FACA in counts II and III, claiming $1 million in damages from CMS and $2 million from FACA. Count III against the AMA alleged violations of the Antitrust Act for "cartel-like violations" and "monopolistic behavior." Count V still alleged negligence against the IDPR, but requested *mandamus* relief instead of damages. Newly added counts VI through IX alleged fraudulent concealment, gross negligence and *res ipsa loquitor* against Dr. Yorath. Plaintiff sought a total of $6 million in damages for these counts.

**[*P61]** On July 5, 2006, the circuit court dismissed count IV of the first amended complaint directed against the AMA. The court granted plaintiff leave to amend his complaint and add two new defendants on September 6, 2006.

**[*P62]** Plaintiff filed his second amended complaint on October 10, 2006. The second amended complaint remained largely the same as the amended complaint but added counts X and XI against the APMA and IPMA for violations of the Antitrust Act. Plaintiff also repleaded count V, with his prayer for relief requesting "compliance with Contested Case provisions of the Administrative Procedure **[***33]** Act (*5 ILCS 100/1-1 et seq.*) so rendering any decision made up to this point in the IDPR review process void pursuant to *5 ILCS 100/10-50(c).*"

**[*P63]** In a memorandum opinion and order issued on March 21, 2007, the circuit court disposed of all pending matters. First, the court dismissed the medical malpractice and medical battery claims against Dr. Yorath, along with the *respondeat superior* claims against CMS and FACA under *section 2-615* of the Code of Civil Procedure (Code) (*735 ILCS 5/2-615* (West 2004)) based on plaintiff's failure to provide a medical affidavit as required by Code *section 2-622* (*735 ILCS 5/2-622* (West 2004)). Next, the court dismissed the antitrust claims against the APMA and IPMA for failure to state a cause of action. The court also noted that count IV, which alleged antitrust violations against the AMA, already had been

dismissed. Finally, the court denied plaintiff's motion to reconsider the dismissal with prejudice of count V of the amended complaint, the *mandamus* claim against the IDPR.

[*P64]  Plaintiff moved to reconsider the dismissal of all counts of the second amended complaint. Plaintiff also sought an interlocutory appeal of the dismissal of counts V through IX pursuant [***34] to *Illinois Supreme Court Rule 308* (*Ill. S. Ct. R. 308* (eff. Feb. 1, 1994)). On April 27, 2007, the circuit court reinstated only count I as pleaded against Dr. Yorath, finding that no medical affidavit was required when medical battery was alleged. The court issued a memorandum opinion and order on May 30, 2007 denying plaintiff's motion for a finding under *Rule 308*.

[*P65] [**15] [****673]    On July 13, 2007, the circuit court again struck count I of plaintiff's second amended complaint, but granted him leave to amend the complaint to reflect only the medical battery claim against Dr. Yorath.

[*P66]  Plaintiff filed his third amended complaint on August 22, 2007, realleging all 11 counts of the second amended complaint, including count I claiming medical battery against Dr. Yorath. On December 14, 2007, the circuit court dismissed with prejudice counts II through XI of the third amended complaint, which disposed of all counts directed against CMS, FACA, AMA, IDPR, APMA and IPMA.

[*P67]  Plaintiff moved for leave to amend his third amended complaint on February 14, 2008. He sought to add a claim for punitive damages against Dr. Yorath. The circuit court denied plaintiff's motion to amend on July 28, 2008.

[*P68]  Also on July 28, [***35] 2008, the circuit court ordered plaintiff to disclose any expert witness by October 1, 2008. In an October 31, 2008 order, the court barred plaintiff's *Rule 213(f)* witnesses listed in his answers to discovery. The court granted plaintiff a final extension to name an expert witness before December 15, 2008.

[*P69]  On December 15, 2008, plaintiff submitted *Rule 213(f)* disclosures listing himself as an expert witness. Plaintiff stated in his disclosures that he "very likely has at least as much formal education in the combination of Histology (tissue study), Anatomy, Kinesiology [*sic*], and the Biomechanics of human movement as does Defendant Yorath, with supporting formal studies contributing to Plaintiff's minor equivalents in physics, zoology, and chemistry."

[*P70]  On December 26, 2008, plaintiff moved to enforce the X-Ray Retention Act (*210 ILCS 90/0.01 et seq.* (West 2000)) and amend his complaint to add a spoliation of evidence claim and punitive damages against Dr. Yorath, CMS and FACA. The circuit court denied plaintiff's motion on January 12, 2009. Plaintiff moved to reconsider, which motion was denied on February 11, 2009. The court denied plaintiff's second motion for reconsideration to add [***36] punitive damages on March 5, 2009. On that same date, the court certified this case as ready for trial and released it into the "Black Line Pool of Cases" for trial assignment.

[*P71]  On August 23, 2010, the circuit court transferred the case to another trial judge for release into the "Black Line Pool" by agreement of the parties. On the same date, plaintiff moved to have the case assigned a trial date and to amend his complaint to add counts XII, XIII and XIV for negligent credentialing against CMS, FACA and the IDPR. The court denied plaintiff's motion for leave to amend on August 30, 2010, because the case was too close to the trial date. On September 13, 2010, the court ordered the case set for trial on November 17, 2010.

[*P72]  Dr. Yorath moved for summary judgment on the sole remaining medical battery claim on October 19, 2010. Dr. Yorath asserted plaintiff failed to disclose any expert testimony regarding causation and damages, nor offered any expert testimony on how the Z scarf osteotomy procedure was substantially different from the procedure to which he consented. Dr. Yorath argued, as a result, no genuine issue of material fact existed and summary judgment was appropriate.

[*P73]  On November [***37] 8, 2010, the circuit court heard argument on Dr. Yorath's summary judgment motion. Plaintiff insisted that he could serve as an expert medical witness. The court explained to plaintiff, "You understand, sir, that basically the literature, whatever it says, says -- has [****674] [**16] to be introduced into evidence by a competent medical professional. You just can't cite to the medical literature and say, this is what it says. It's merely hearsay unless a medical expert says he finds it authoritative and that it's relevant. That's the reason why you need a medical expert witness."

[*P74]  Following argument, the circuit court granted summary judgment in favor of Dr. Yorath, finding that medical testimony was necessary and that plaintiff failed to prove his case. In its memorandum opinion and

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **16; 2013 Ill. App. LEXIS 101, ***37; 369 Ill. Dec. 659, ****674

order, the court found plaintiff's consent to the surgery precluded a claim for medical battery or failure to give consent. According to the court, "[w]hether the surgical procedure performed by Yorath substantially deviated from the consent given by [plaintiff] requires a medical expert witness. Inherent in such a determination is a medical judgment whether there was a substantial deviation from the consent and his current [***38] medical condition." The court also found plaintiff failed to demonstrate proximate cause, which "can only be established by expert testimony to a reasonable degree of medical certainty, and the causal connection must not be contingent, speculative or merely possible." Plaintiff "was required to disclose a medical expert to establish liability and proximate cause. He has done neither and is barred from disclosure of such experts."

[*P75] Plaintiff moved to reconsider the circuit court's grant of summary judgment, which was denied by the court on December 15, 2010. Plaintiff timely appeals.

[*P76] ANALYSIS

[*P77] Before addressing the merits of plaintiff's claims, we note that his brief egregiously fails to comply with several of the requirements of *Illinois Supreme Court Rule 341* (*Ill. S. Ct. R. 341*(eff. Sept. 1, 2006)). HN1[↑] *Rule 341* provides that all briefs should contain a statement of compliance (*Ill. S. Ct. R. 341(c)*), a statement containing "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment" (*Ill. S. Ct. R. 341(h)(6)*) and an argument "which shall contain the contentions of the appellant and reasons therefor" (*Ill. S. Ct. R. 341(h)(7)*). This court [***39] has the discretion to strike an appellant's brief and dismiss an appeal for failure to comply with *Rule 341*. See *Alderson v. Southern Co., 321 Ill. App. 3d 832, 845, 747 N.E.2d 926, 254 Ill. Dec. 514 (2001)*; *Buckner v. Causey, 311 Ill. App. 3d 139, 142, 724 N.E.2d 95, 243 Ill. Dec. 786 (1999)*.

[*P78] HN2[↑] A *pro se* litigant such as plaintiff here is not entitled to more lenient treatment than attorneys. In Illinois, parties choosing to represent themselves without a lawyer must comply with the same rules and are held to the same standards as licensed attorneys. *People v. Richardson, 2011 IL App (4th) 100358, ¶ 12* ("Finally, where a defendant elects to proceed *pro se*, he is responsible for his representation and is held to the same standards as an attorney."); *In re Estate of Pellico, 394 Ill. App. 3d 1052, 1067, 916 N.E.2d 45, 334 Ill. Dec. 12 (2009)* ("Further, we note that *pro se* litigants

are presumed to have full knowledge of applicable court rules and procedures and must comply with the same rules and procedures as would be required of litigants represented by attorneys."). Illinois courts have strictly adhered to this principle, noting a "*pro se* litigant must comply with the rules of procedure required of attorneys, and a court will not apply a more lenient standard to *pro se* litigants." *People v. Fowler, 222 Ill. App. 3d 157, 163, 583 N.E.2d 686, 164 Ill. Dec. 770 (1991)*; [***40] see also *Steinbrecher v. Steinbrecher, 197 Ill. 2d 514, 528, 759 N.E.2d 509, 259 Ill. [****675] [**17] Dec. 729 (2001)*; *People v. Vilces, 321 Ill. App. 3d 937, 939, 748 N.E.2d 1219, 255 Ill. Dec. 149 (2001)*.

[*P79] Plaintiff's brief contains a statement of facts that, to put it mildly, provides little to no understanding of the case and instead features rambling medical jargon, argument and confusing statements such as, "A metaphor being counterweighted chains attached on either side from above being derailed when their windowpane is raised to abruptly requiring them to be put back on their pulley wheels to again allow lowering their pane rather than cutting their chains behind where they became stuck to cause the windowpane to come crashing down if the derailed chains were ever later dislodged." The deficiencies of plaintiff's brief are also exhibited in the argument section, which is nearly impossible to follow.

[*P80] We find plaintiff's statement of facts and argument to be grossly inadequate. We are dismayed that none of the six defendants, who are each represented by counsel, moved to strike plaintiff's brief. This court is not a depository in which the burden of argument and research may be dumped. *Gandy v. Kimbrough, 406 Ill. App. 3d 867, 875, 941 N.E.2d 329, 346 Ill. Dec. 771 (2010)*; *People v. Hood, 210 Ill. App. 3d 743, 746, 569 N.E.2d 228, 155 Ill. Dec. 228 (1991)* [***41] ("A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument and research."). Despite the deficiency of plaintiff's brief, we choose to address the merits of his appeal in the interests of justice because it raises an issue of first impression. See *Alderson, 321 Ill. App. 3d at 845* (addressing an appeal on the merits despite appellant's "grossly inadequate" statement of facts, because the interests of justice so required).

[*P81] Medical Battery Claim

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **17; 2013 Ill. App. LEXIS 101, ***41; 369 Ill. Dec. 659, ****675

[*P82]  Summary judgment was granted in favor of Dr. Yorath on count I of plaintiff's medical battery claim. **HN3**[↑]] Summary judgment "shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *735 ILCS 5/2-1005* (West 2010); *State Farm Mutual Automobile Insurance Co. v. Coe, 367 Ill. App. 3d 604, 607, 855 N.E.2d 173, 305 Ill. Dec. 282 (2006)*. The purpose of summary judgment is not to try a question of fact but to determine whether a genuine issue of material fact exists. [***42] *Williams v. Manchester, 228 Ill. 2d 404, 416-17, 888 N.E.2d 1, 320 Ill. Dec. 784 (2008)*. To determine whether a genuine issue of material fact exists, a court construes the pleadings liberally in favor of the nonmoving party. *Id. at 417*. Summary judgment should not be granted unless the movant's right to judgment is free and clear from doubt. *Mitchell v. Special Education Joint Agreement School District No. 208, 386 Ill. App. 3d 106, 111, 897 N.E.2d 352, 325 Ill. Dec. 104 (2008)*. Our review of an order granting summary judgment is *de novo*. *Jones v. Country Mutual Insurance Co., 371 Ill. App. 3d 1096, 1098, 864 N.E.2d 793, 309 Ill. Dec. 552 (2007)*.

[*P83]  **HN4**[↑]] Illinois recognizes claims for medical battery. *Sekerez v. Rush University Medical Center, 2011 IL App (1st) 090889, ¶ 43; Hernandez v. Schittek, 305 Ill. App. 3d 925, 930, 713 N.E.2d 203, 238 Ill. Dec. 957 (1999); Gaskin v. Goldwasser, 166 Ill. App. 3d 996, 1012, 520 N.E.2d 1085, 117 Ill. Dec. 734 (1988)*. A plaintiff claiming [****676] [**18] medical battery must establish one of the following: (1) no consent to the medical procedure performed; (2) the procedure was contrary to the injured party's will; or (3) substantial variance of the procedure from the consent granted. *Hernandez, 305 Ill. App. 3d at 930; Gaskin, 166 Ill. App. 3d at 1012*. It is unnecessary for the plaintiff to establish hostile intent on the part of the defendant; [***43] rather, the gist of an action for battery is the absence of consent on the plaintiff's part. *Gaskin, 166 Ill. App. 3d at 1012*.

[*P84]  Regarding the first two elements of medical battery, the record establishes unquestionably that plaintiff consented to the procedure performed by Dr. Yorath and, therefore, the surgery could not have been contrary to plaintiff's will. Plaintiff's deposition and the medical records confirm plaintiff was aware that the Z scarf osteotomy surgery included cutting of the tendons. Despite this knowledge, plaintiff did not request a change in the consent form to prohibit cutting of the tendons. By signing the consent form, plaintiff affirmed that all of his questions were answered and that he agreed to have the surgery that was described in the consent, a "Scarf 'Z' bunionectomy of the Left foot."

[*P85]  Plaintiff insisted repeatedly before the circuit court that the Z scarf osteotomy procedure does not involve cutting the tendons. His third amended complaint alleges Dr. Yorath exceeded the scope of consent by cutting the tendons. Plaintiff's complaint is comparable to a person who has an appendectomy and then complains the surgeon cut into his abdomen. Plaintiff, however, [***44] is not a physician and the court found that an expert medical opinion was required to support this facet of his medical battery claim. *735 ILCS 5/2-622* (West 2004).

[*P86]  **HN5**[↑]] Illinois courts have not specifically addressed whether compliance with *section 2-622* is required in medical battery cases claiming a substantial variance of the procedure from the consent given. Based on the facts of each case, an expert opinion may not always be necessary.

[*P87]  For example, in *Lane v. Anderson, 345 Ill. App. 3d 256, 260-61, 802 N.E.2d 1278, 280 Ill. Dec. 757 (2004)*, the plaintiff claimed medical battery for treatment received that varied substantially with the consent he gave for surgery. The plaintiff argued the defendant, Dr. J.B. Joo, performed the majority of the surgery when he was not specifically listed on the consent form. The consent form that the plaintiff signed, however, authorized Dr. Richard Anderson "and such assistants and associates as may be selected by him/her and OSF St. Francis Medical Center" to perform a laparoscopic appendectomy. *Id. at 259*. The parties did not dispute that more than one surgeon was needed to perform the procedure. The medical records confirmed Dr. Anderson as the primary surgeon and Dr. Joo as his assistant. [***45] As the primary surgeon, Dr. Anderson was responsible for the plaintiff during the entire operation, including responsibility for any mistakes that occurred during the procedure. Dr. Anderson guided Dr. Joo throughout the entire procedure and made all of the decisions and necessary judgments. The *Lane* court affirmed summary judgment granted in favor of Dr. Joo, finding "the facts do not show that the treatment the plaintiff received was at substantial variance with the consent the plaintiff granted." *Id. at 261*. No expert medical testimony was required because the alleged medical battery was not an implicit part of the [****677] [**19] surgical procedure or the plaintiff's medical condition. *Id*.; see

also *Welton v. Ambrose, 351 Ill. App. 3d 627, 636-37, 814 N.E.2d 970, 286 Ill. Dec. 744 (2004)* (affirming summary judgment disposing of the plaintiff's medical battery claim where no evidence supported the plaintiff's consent to surgery was limited to particular physicians); *Newman v. Spellberg, 91 Ill. App. 2d 310, 320, 234 N.E.2d 152 (1968)* (finding even where a case involves a complicated medical procedure, expert testimony may not be required when the act alleged to be negligent is not an implicit part of the procedure).

**[*P88]** In contrast, whether Dr. Yorath **[***46]** exceeded the parameters of the surgery to which plaintiff consented is beyond the ken of a layperson, and it requires a medical expert to opine on whether cutting tendons is part and parcel of the Z scarf osteotomy procedure. See *Schindel v. Albany Medical Corp., 252 Ill. App. 3d 389, 397-98, 625 N.E.2d 114, 192 Ill. Dec. 154 (1993)* ("An assessment of what is required or necessary in light of [a] medical condition is inherently one of medical judgment and, as a result, necessitates expert testimony on the standard of care."). Compliance with *section 2-622* of the Code under the factual circumstances of this case follows logically with the legislature's intent to prevent frivolous lawsuits and ensure meritorious claims proceed past the pleading stage when bolstered by expert medical opinion. See *Zangara v. Advocate Christ Medical Center, 2011 IL App (1st) 091911, ¶ 26* ("*Section 2-622* of the Code was enacted to curtail frivolous medical malpractice lawsuits and to eliminate such actions at the pleading stage before the expenses of litigation mounted."). A plaintiff challenging an implicit part of the medical treatment should not be able to avoid the requirement of an expert medical opinion simply by claiming medical battery **[***47]** or something other than medical malpractice.

**[*P89]** **HN6[↑]** The primary aim of statutory construction is to determine the legislature's intent, beginning with the plain language of the statute. *General Motors Corp. v. Pappas, 242 Ill. 2d 163, 180, 950 N.E.2d 1136, 351 Ill. Dec. 308 (2011)*. "Where the language is clear and unambiguous, the statute must be given effect as written without resort to further aids of statutory construction." *Alvarez v. Pappas, 229 Ill. 2d 217, 228, 890 N.E.2d 434, 321 Ill. Dec. 712 (2008)*.

**[*P90]** Before proceeding with an analysis of the applicability of *section 2-622*, we must first mention the current legal status of this statute. Public Act 94-677, containing the version of *section 2-622* at issue here, has been held unconstitutional on grounds unrelated to the statute. *Lebron v. Gottlieb Memorial Hospital, 237 Ill. 2d 217, 250, 930 N.E.2d 895, 341 Ill. Dec. 381 (2010)*. Because Public Act 94-677 contained a nonseverability provision, our supreme court held the Act "invalid and void in its entirety." *Id.* The supreme court in *Cookson v. Price, 239 Ill. 2d 339, 341-42, 941 N.E.2d 162, 346 Ill. Dec. 604 (2010)*, explained the effect of various judicial actions and the legislative amendments to *section 2-622*:

**HN7[↑]** "The effect of declaring a statute unconstitutional is to revert the statute as it existed before the amendment. **[***48]** [Citation.] Thus, following *Lebron*, *section 2-622* reverted to the prior version that went into effect in May 1998, Public Act 90-579. However, in *O'Casek v. Children's Home & Aid Society of Illinois, 229 Ill. 2d 421, 424-25, 450, 892 N.E.2d 994, 323 Ill. Dec. 2 (2008)*, this court found that the only effect of Public Act 90-579 was to add naprapaths to a list of health professionals set forth in the pre-1995 version of *section 2-622(a)(1)*. **[****678]** **[**20]** Thus, except for the naprapath language, the statute now reads as it did when amended in 1989 by Public Act 86-646. *Id.*; *735 ILCS 5/2-622* (West 1994)."

**[*P91]** The legislature was in the process of reenacting *section 2-622* as it existed before *Lebron* (see 97th Ill. Gen. Assem., House Bill 2887, 2011 Sess.; 97th Gen. Assem. Senate Bill 1887, 2011 Sess.), but the proposed legislation expired with the end of the 97th General Assembly. The new 98th General Assembly has not proposed any new legislation as of the date of this appeal. Despite the convoluted procedural history of *section 2-622*, the specific language that is applicable for disposition of this appeal has not been altered, and so which version of the statute we refer to is immaterial. Nevertheless, as directed by our supreme court, **[***49]** we will use the 1998 version of *section 2-622* (*735 ILCS 5/2-622* (West 1998)) for our analysis.

**[*P92]** **HN8[↑]** *Section 2-622* of the Code requires that a plaintiff filing a medical malpractice claim must supplement the complaint with: (1) an affidavit, either from the plaintiff's attorney or from the plaintiff if proceeding *pro se*, certifying that the affiant consulted with a qualified health care professional in whose opinion there is a reasonable and meritorious cause for the filing of such action; and (2) a copy of that health professional's written report setting forth the reasons for his determination. *735 ILCS 5/2-622(a)* (West 1998); see also *Schroeder v. Northwest Community Hospital, 371 Ill. App. 3d 584, 595, 862 N.E.2d 1011, 308 Ill. Dec. 808 (2006)*. *Section 2-622* mandates an affidavit and

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **20; 2013 Ill. App. LEXIS 101, ***49; 369 Ill. Dec. 659, ****678

health professional's written report "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice." 735 ILCS 5/2-622 (West 2008).

[*P93] HN9[↑] Generally, expert testimony is required to support a medical malpractice claim because the assessment of the alleged negligence may require knowledge, skill or training in a technical area outside [***50] the comprehension of laypersons. Tierney v. Community Memorial General Hospital, 268 Ill. App. 3d 1050, 1058, 645 N.E.2d 284, 206 Ill. Dec. 279 (1994); see also Walski v. Tiesenga, 72 Ill. 2d 249, 256, 381 N.E.2d 279, 21 Ill. Dec. 201 (1978); Edelin v. Westlake Community Hospital, 157 Ill. App. 3d 857, 863, 510 N.E.2d 958, 109 Ill. Dec. 890 (1987). "In other words, the subject matter is so complicated that lay persons are not in an adequate position to assess whether a breach of duty has occurred." Schindel, 252 Ill. App. 3d at 395. "Expert testimony is necessary whenever jurors who are not skilled in the practice of medicine would have difficulty, without assistance of medical evidence, in determining any lack of necessary scientific skill on the part of a medical professional." Id. at 395-96 (citing Walski, 72 Ill. 2d at 256). The plain and unambiguous language of section 2-622 does not limit the requirement of an affidavit and expert medical opinion solely to medical malpractice claims. Illinois courts have held expert medical opinions were necessary in non-medical-malpractice claims.

[*P94] In Schindel, the plaintiff brought an action to recover damages stemming from the rupture of her fallopian tubes during an ectopic pregnancy. The plaintiff alleged the defendant, a limited service medical [***51] clinic providing outpatient gynecological services, failed to: (1) employ and enforce proper procedures to notify her of abnormal laboratory findings; (2) notify her of abnormal laboratory findings; and (3) notify her of the possibility that she [****679] [**21] had an ectopic pregnancy. The case proceeded to trial and a jury returned a verdict in favor of the plaintiff. The defendant appealed, contending testimony of a medical expert was required to establish the appropriate standard of care owed to the plaintiff. The defendant characterized the case as a medical malpractice claim while the plaintiff asserted her case was one which could be decided on principles of ordinary negligence so that the testimony of an expert medical witness was not necessary. The plaintiff raised no issue regarding the quality of treatment received while she was at the clinic and did not question the correctness of the physician's

diagnostic conclusion of a possible ectopic pregnancy. The Schindel court concluded that case required "expert analysis of plaintiff's medical condition in order to fully define the proper standard of care." Schindel, 252 Ill. App. 3d at 398. The court further explained:

"There was no testimony [***52] at trial as to the degree of likelihood of a tubal pregnancy, the likelihood that such a pregnancy would result in the rupture of the fallopian tube, or the urgency involved in cases with laboratory results such as plaintiff's. Although testimony was offered as to the date of plaintiff's last menstrual period, there was no testimony indicating whether a tubal pregnancy can rupture the fallopian tube from the time of conception, or whether the danger arises at a certain point in the pregnancy. There was no testimony as to whether the danger was imminent. Such information requires technical, medical knowledge which is not within the common knowledge of jurors untrained in the medical profession. [Citation.] Without such knowledge it is not possible for jurors, without the aid of medical experts, to reach any meaningful conclusions as to the extent of defendant's duty to notify, i.e., how soon notification must normally be made to likely avert harm and how extensive defendant's attempts to notify must be." Id. at 398-99.

Because no medical testimony was presented to establish the standard of care regarding notification by the defendant, the jury verdict was reversed. Id. at 402.

[*P95] The plaintiff [***53] in Bloom v. Guth, 164 Ill. App. 3d 475, 477, 517 N.E.2d 1154, 115 Ill. Dec. 468 (1987), appealed from the dismissal of her complaint for failure to comply with section 2-622. Her complaint alleged that the defendant physician failed to perform a hysterectomy and failed to repair her bladder. The plaintiff contended section 2-622 did not apply to her case because she did not allege a medical malpractice claim and instead filed an action sounding in contract. The Bloom court found the plaintiff's argument was "contrary to HN10[↑] the plain language of section 2-622(a), which states that an affidavit of plaintiff or plaintiff's attorney is required '[i]n any action, whether in tort, contract, or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice.'" Bloom, 164 Ill. App. 3d at 477-78 (quoting Ill. Rev. Stat. 1985, ch. 110, ¶ 2-622(a)).

[*P96] Plaintiff's medical battery action, which sounds

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **21; 2013 Ill. App. LEXIS 101, ***53; 369 Ill. Dec. 659, ****679

in tort, requests damages for injuries arising from a medical procedure he claims went beyond the scope of a Z scarf osteotomy. Whether the cutting of the tendons exceeded the scope of the surgery is a "subject matter *** so complicated that lay persons are not in an [***54] adequate position to assess whether a breach of duty has occurred." *Schindel, 252 Ill. App. 3d at 395*. Similarly, a court cannot simply [****680] [**22] take judicial notice of whether a surgical procedure was performed under a proper medical standard of care. See *Dickerson v. Industrial Commission, 224 Ill. App. 3d 838, 843, 587 N.E.2d 1045, 167 Ill. Dec. 430 (1991)*. We find the plain and unambiguous language of *section 2-622* of the Code, requiring an affidavit and health professional's written report "[i]n any action, whether in tort, contract or otherwise, in which plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," is applicable in this case. *735 ILCS 5/2-622* (West 1998). We agree with the circuit court that plaintiff was required to comply with *section 2-622* in order to advance his medical battery claim. Our holding is limited by the facts of this case and we need not decide here whether the requirements of *section 2-622* are applicable to all medical battery claims. Summary judgment was appropriate for the disposition of count I of plaintiff's third amended complaint.


[*P97] The Remaining Negligence and Gross Negligence Claims

[*P98] Counts II and III of plaintiff's second amended complaint [***55] allege vicarious liability based on the doctrine of *respondeat superior* against RFU, Scholl College, CMS[1] and FACA. Count VII alleges gross

---

[1] Count II of plaintiff's second amended complaint collectively charges RFU, Scholl College and CMS with liability under the doctrine of *respondeat superior*, but the relationship between these parties is not delineated or explained in any of the pleadings or briefs filed by plaintiff and these particular defendants. See *735 ILCS 5/2-603(b)* (West 2004) ("Each separate cause of action upon which a separate recovery might be had shall be stated in a separate count ***."); *Hartshorn v. State Farm Insurance Co., 361 Ill. App. 3d 731, 735, 838 N.E.2d 211, 297 Ill. Dec. 724 (2005)* (plaintiffs' complaint against an automobile insurer and a credit insurer was deficient by mixing the allegations against them together; the complaint should have stated the cause of action against each insurer in a separate count). Both plaintiff [***56] and these defendants refer to RFU, Scholl College and CMS collectively as "CMS." Therefore, for disposition of this appeal,

negligence against Dr. Yorath. Count VIII alleges "medical malpractice gross negligence in violation of the informed consent doctrine" against Dr. Yorath. Plaintiff asserted against Dr. Yorath a gross negligence claim pursuant to the *res ipsa loquitur* doctrine in count IX.

[*P99] In short, counts II, III, VII, VIII and IX all are grounded in the theory of medical negligence. The circuit court granted the defendants' motions to dismiss on each of these counts pursuant to Code *sections 2-619* (*735 ILCS 5/2-619* (West 2004)) and 2-622. Plaintiff repled each of these counts in his third amended complaint in violation of the court's order to replead only count I alleging medical battery against Dr. Yorath. The court again dismissed all counts of plaintiff's complaint with prejudice except for count I.

[*P100] *HN11*[↑] The purpose of a *section 2-619* motion is to dispose of issues of law and easily proved issues of fact early in the litigation. *Van Meter v. Darien Park District, 207 Ill. 2d 359, 367, 799 N.E.2d 273, 278 Ill. Dec. 555 (2003)*. In this case, the basis for the motions to dismiss the remaining negligence and gross negligence counts was plaintiff's failure to comply with *section 2-622*. *HN12*[↑] "The failure to file a certificate required by this Section shall be grounds for dismissal under *Section 2-619*." *735 ILCS 5/2-622(g)* [***57] (West 1998). *HN13*[↑] An appeal from a *section 2-619* dismissal raises the issue of whether the circuit court's order is proper as a matter of law and is, therefore, reviewed *de novo*. *Mueller v. North Suburban Clinic, Ltd., 299 Ill. App. 3d 568, 572, [****681] [**23] 701 N.E.2d 246, 233 Ill. Dec. 603 (1998)*. *HN14*[↑] The decision to dismiss an action with prejudice after finding that a plaintiff has failed to comply with *section 2-622* will not be disturbed by the reviewing court absent an abuse of discretion. *Id.*

[*P101] As previously stated, by requiring a litigant to obtain, at an early stage, the opinion of a medical expert indicating his cause of action is meritorious, *section 2-622* helps ensure that litigants present only viable claims. *DeLuna v. St. Elizabeth's Hospital, 147 Ill. 2d 57, 70-71, 588 N.E.2d 1139, 167 Ill. Dec. 1009 (1992)*; *Calamari v. Drammis, 286 Ill. App. 3d 420, 430, 676 N.E.2d 281, 221 Ill. Dec. 760 (1997)*.

[*P102] In *Wasielewski v. Gilligan, 189 Ill. App. 3d 945, 546 N.E.2d 15, 137 Ill. Dec. 391 (1989)*, the plaintiff voluntarily dismissed his first medical malpractice action

---

we will likewise treat RFU, Scholl College and CMS as one collective defendant.

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **23; 2013 Ill. App. LEXIS 101, ***57; 369 Ill. Dec. 659, ****681

because he was unable to obtain a health professional's report. He later filed a second action, attaching an affidavit from his attorney stating that the statute of limitations would soon expire, and seeking the statutory 90-day extension. *Wasielewski, 189 Ill. App. 3d at 946-47.* **[***58]** After 120 days, the plaintiff still had not filed the required affidavit or written report and, as a result, the circuit court dismissed the case with prejudice. The *Wasielewski* court affirmed, finding no abuse of discretion. *Id. at 951.* The court held the plaintiff had received sufficient opportunity to meet the documentation requirements of *section 2-622* in that he filed two actions, about 15 months apart, each time receiving the statutory 90-day extension. The court concluded, "[t]he trial court was not required to exercise its discretion in favor of plaintiff given the numerous opportunities plaintiff had to comply with *section 2-622* of the Code." *Id. at 952.*

**[*P103]** Similarly, in *Mueller*, the circuit court dismissed the plaintiff's medical negligence complaint after finding the physician's report failed to comply with *section 2-622. Mueller, 299 Ill. App. 3d at 571-72.* On review, this court noted the plaintiff was granted leave to file three amended physician's reports in response to motions asserting that she had failed to comply with *section 2-622.* The *Mueller* court held "the plaintiff was granted ample opportunity to file a physician's report in compliance with *section 2-622* of the **[***59]** Code and, therefore, we find no abuse of discretion in the dismissal of the plaintiff's claims against these defendants with prejudice." *Id. at 578.*

**[*P104]** In this case, the circuit court provided plaintiff ample opportunity to comply with *section 2-622.* Plaintiff filed his initial complaint on February 18, 2005 without the requisite affidavit and written report. The court granted him leave to amend that complaint and he did so, but again did not attach an affidavit with a written report from a health professional. Plaintiff was allowed to amend his complaint again and filed his second amended complaint on October 10, 2006. The second amended complaint did not comply with *section 2-622.* Plaintiff repled all medical negligence-related counts in a third amended complaint in violation of the court's April 27, 2007 order to replead only count I alleging medical battery. The third amended complaint, filed on August 22, 2007, failed to include an affidavit and written report. All medical negligence-related counts were dismissed with prejudice on December 14, 2007. The court gave plaintiff another opportunity to comply by ordering him to disclose an expert witness by October 1, 2008 and even extended **[***60]** the deadline to disclose to December

15, 2008. On December 15, **[****682] [**24]** 2008, plaintiff submitted *Rule 213(f)* disclosures listing himself as an expert witness.

**[*P105]** Despite a three-year search, plaintiff was unable to find a qualified "health professional" who would issue a written report in compliance with *section 2-622.* Plaintiff concedes in his brief that he did not produce any expert witnesses in his defense "because they were all unfavorable to him." Although plaintiff claims otherwise, he does not qualify as "a physician licensed to treat human ailments without the use of drugs or medicines and without operative surgery, a dentist, a podiatrist, or a psychologist, or a naprapath." *735 ILCS 5/2-622(a)(1)* (West 1998). Plaintiff was required to submit a written report "from a health professional licensed in the same profession, with the same class of license, as the defendant," in this case, a podiatrist. *Id.* **HN15**[⬆] "Where a certificate and written report are required pursuant to this Section a separate certificate and written report shall be filed as to each defendant who has been named in the complaint ***." *735 ILCS 5/2-622(b)* (West 1998). Moreover, **HN16**[⬆] when a plaintiff intends to rely on the doctrine **[***61]** of *res ipsa loquitur*, as plaintiff did here, "the certificate and written report must state that, in the opinion of the reviewing health professional, negligence has occurred in the course of medical treatment." *735 ILCS 5/2-622(c)* (West 1998). Plaintiff failed to comply with *section 2-622* in all these respects, having never filed an affidavit certifying that he consulted with a qualified health care professional, in whose opinion there is a reasonable and meritorious cause for the filing of such action, with a copy of that health professional's written report setting forth the reasons for his determination.

**[*P106]** Plaintiff additionally claims that *section 2-622* does not apply to any of his claims related to medical negligence, citing *Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).* Plaintiff confuses the requirements of *Frye* with the pleading requirements of *section 2-622.* **HN17**[⬆] The *Frye* standard provides that scientific evidence is only admissible at trial if the methodology or scientific principle upon which the opinion is based is "sufficiently established to have gained general acceptance in the particular field in which it belongs." *Frye, 293 F. at 1014.* Comparatively, *section 2-622* **[***62]** is a pleading requirement designed to eliminate frivolous lawsuits at the outset of the litigation. "Because the purpose of *section 2-622* is to eliminate frivolous lawsuits at the pleading stage, the statute has no bearing on the type of evidence relied upon at trial." *Sullivan v. Edward Hospital, 209 Ill. 2d 100, 117, 806*

*N.E.2d 645, 282 Ill. Dec. 348 (2004)*. In other words, plaintiff cannot rely on Frye unless his case goes to trial; however, plaintiff cannot reach trial unless he complies with the pleading requirements of *section 2-622*, which he has failed to do.

[*P107] In sum, we find as a matter of law that the circuit court properly dismissed counts II, III, VII, VIII and IX of plaintiff's second amended complaint pursuant to *sections 2-619* and *2-622*. Further, the court properly exercised its discretion to dismiss with prejudice counts II, III, VII, VIII and IX of plaintiff's third amended complaint for failure to comply with *section 2-622*.

[*P108] Fraudulent Concealment

[*P109] Plaintiff alleged that Dr. Yorath committed fraudulent concealment of medical battery in count VI of his second amended complaint. Plaintiff claimed he would not have subjected himself to the surgical procedure but for Dr. Yorath "silently disregard[ing] any [***63] patient requests that no tendons be snipped," citing *Williams v. Chicago Osteopathic Health Systems, 274 Ill. App. 3d 1039, 654 N.E.2d 613, 211 Ill. Dec. 151 (1995)*. The circuit [****683] [**25] court dismissed this count along with counts II, III, VII, VIII and IX on the basis that it was part of the medical negligence claims that failed to comply with the pleading requirements of *section 2-622*. HN18[⬆] The court's decision to dismiss count VI of the second amended complaint pursuant to *section 2-619* is reviewed *de novo*. *Mueller, 299 Ill. App. 3d at 572*. We apply an abuse of discretion standard of review for the court's dismissal with prejudice of count VI of the third amended complaint. *Bruss v. Przybylo, 385 Ill. App. 3d 399, 405, 895 N.E.2d 1102, 324 Ill. Dec. 387 (2008)*.

[*P110] Initially, it should be noted that HN19[⬆] "[f]raudulent concealment, as codified in [Code] *section 13-215*, is not a cause of action in and of itself; rather, it acts as an exception to the time limitations imposed on other, underlying causes of action." *Cangemi v. Advocate South Suburban Hospital, 364 Ill. App. 3d 446, 459, 845 N.E.2d 792, 300 Ill. Dec. 903 (2006)* (citing *735 ILCS 5/13-215* (West 2004)). *Section 13-215* of the Code provides, HN20[⬆] "If a person liable to an action fraudulently conceals the cause of action from the knowledge of the person [***64] entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." *735 ILCS 5/13-215* (West 2004). In other words, HN21[

⬆] there must be an underlying liability to fraudulently conceal for *section 13-215* to apply. As such, it appears plaintiff instead is claiming a concealment constituted a fraudulent misrepresentation rather than statutory fraudulent concealment.

[*P111] HN22[⬆] To establish the alleged concealment amounted to a fraudulent misrepresentation, a plaintiff must prove: "(1) the concealment of a material fact, (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak [citation], (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist, (4) the concealed information was such that the injured party would have acted differently had it been aware of it, and (5) the reliance by the person from whom the fact was concealed led to his injury." *Williams, 274 Ill. App. 3d at 1052*.

[*P112] [***65] A review of the second amended complaint demonstrates that plaintiff did not properly plead a claim for fraudulent misrepresentation. Plaintiff claims that January 21, 2003 "was the first and only time anything resembling a discussion was conducted regarding the proposed operative procedure" and "the surgeon expressed his contemplation of cutting (releasing) the tendon to the extensor hallucis brevis muscle, which contemplation Plaintiff initially thought was made in jest." Plaintiff alleges he told Dr. Yorath, "don't do that," to which Dr. Yorath remained silent. The second amended complaint states that, in the January 28, 2003 appointment, Dr. Yorath again discussed the surgical procedure "where the surgeon hardly did more than again allude to contemplating cutting (releasing) the extensor hallucis brevis tendon, to which Plaintiff again said 'don't do that,' to which the surgeon again responded with silence, causing Plaintiff to now think the surgeon was not necessarily contemplating a tenotomy (cutting of a tendon) in jest." Plaintiff alleged he specifically told Dr. Yorath not to cut the tendons on February 13, 2003. Plaintiff claims the consent form specifically prohibited "surgical [***66] treatment of any perceived soft-tissue deformities."

[*P113] [**26] [****684] Plaintiff's second amended complaint did not properly plead the first element of fraudulent misrepresentation, the concealment of a material fact. In this case, the alleged "material fact" is the cutting of the tendons. Plaintiff acknowledges that Dr. Yorath told him he was contemplating cutting the

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **26; 2013 Ill. App. LEXIS 101, ***66; 369 Ill. Dec. 659, ****684

tendons. Thus, no material fact was concealed from plaintiff.

**[\*P114]**  Plaintiff also did not plead that the concealment was intended to induce a false belief. Plaintiff cannot claim he had a false belief the tendons would be cut when he concedes in his complaint that Dr. Yorath "was not ncessarily contemplating a tenotomy (cutting of a tendon) in jest." In other words, plaintiff took Dr. Yorath's contemplation seriously enough to tell him more than once, "don't do that."

**[\*P115]**  Further, plaintiff failed to plead he could not have discovered the truth -- that cutting of the tendons was part and parcel of the Z scarf osteotomy procedure -- through reasonable inquiry. Indeed, the consent form he signed prior to the surgery acknowledges, "All questions that I have were answered fully to my satisfaction. Alternatives, including not having surgery, have been **[\*\*\*67]** explained to me, along with their potential risks and benefits. I have decided upon the surgery described herein."

**[\*P116]**  Next, plaintiff cannot claim that he would have acted differently had he been aware of the alleged concealment. Plaintiff concedes he was aware of Dr. Yorath's contemplation to cut the tendons during the procedure.

**[\*P117]**  Finally, plaintiff has not properly pled the final element of fraudulent misrepresentation because there were no facts in the second amended complaint alleging the concealment of a material fact upon which plaintiff could rely. Plaintiff was required to set forth facts claiming he relied on the concealment by Dr. Yorath to cut the tendons. Plaintiff acknowledges and the record confirms throughout repeatedly that there was no concealment of the fact plaintiff's tendons would be cut during the surgery.

**[\*P118]**  Accordingly, we find the circuit court properly dismissed count VI of plaintiff's second amended complaint. In addition, no abuse of discretion was shown as to the dismissal with prejudice of count VI of the third amended complaint.

**[\*P119]**  Antitrust Claims

**[\*P120]**  Count IV of plaintiff's amended complaint alleged against the AMA violations of the Illinois Antitrust Act for cartel-like **[\*\*\*68]** violations (*740 ILCS 10/3(1)* (West 2004)); contracts, combinations or conspiracies in unreasonable restraint of trade or

commerce (*740 ILCS 10/3(2)* (West 2004)); and monopolistic behavior (*740 ILCS 10/3(3)* (West 2004)). In essence, plaintiff claimed the AMA was dictating certain standards and procedures to the podiatric medical community. He alleged that these practices constituted a restraint of trade, which eliminates the accountability that a specific podiatrist has to his or her patients. Plaintiff also claimed that medical record falsification is a common practice and routinely used as a defense against negligent patient care to eliminate accountability. Plaintiff alleged that his injuries were a result of these actions by the AMA. On July 5, 2006, the circuit court granted the AMA's motion to dismiss pursuant to Code *section 2-615(d)* (*735 ILCS 5/2-615(d)* (West 2004)). The court found plaintiff failed to delineate in his complaint any facts that deduce the AMA engaged in collusive practices to commit unlawful acts in restraint of trade.

**[\*P121]**  Plaintiff alleged exactly the same antitrust violations against the AMA in count IV of his second amended complaint **[\*\*\*\*685]** **[\*\*27]** and added as defendants the **[\*\*\*69]** APMA and IPMA in counts X and XI. Plaintiff alleged against the APMA and IPMA (collectively, the PMAs) that they violated *section 3, subsections 1(b)*, *2* and *3* of the Antitrust Act by "effectively boycotting" the requirements of *section 2-622*, which, as previously noted, requires a plaintiff to submit an affidavit and obtain a written expert medical report confirming the plaintiff has a reasonable and meritorious cause of action. Plaintiff claimed that a boycott had resulted when certain individual podiatric physician members of the PMAs had declined to sign a written medical opinion that plaintiff himself had prepared in support of his purported medical malpractice claims. Plaintiff alleged, "multiple attempt[s] were made to attain a written report from singly qualified healthcare practitioner (Candidates) to suit the literal letter of the Law, pursuant to *735 ILCS 5/2-622(a)*, but no Candidate responded affirmatively to my requests." The PMAs moved to dismiss plaintiff's claims pursuant to *section 2-615*.

**[\*P122]**  On March 21, 2007, the circuit court granted the PMAs' motion to dismiss. The court noted plaintiff did not identify in counts X and XI the nature of the alleged conspiracy or the **[\*\*\*70]** persons or entities who entered into an illicit agreement to fix or control prices or services. According to the court, plaintiff asserted "in conclusory fashion that the failure of the medical professionals to assist him in his malpractice action constitutes a violation of the anti-trust statutes." The court found counts X and XI factually insufficient to

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **27; 2013 Ill. App. LEXIS 101, ***70; 369 Ill. Dec. 659, ****685

state a cause of action under the Antitrust Act. Nevertheless, plaintiff again alleged the same antitrust violations against the AMA and PMAs in this third amended complaint. The court dismissed with prejudice counts IV, X and XI on December 14, 2007.

[*P123] On appeal, plaintiff contends the AMA violated *section 3* of the Antitrust Act through "[c]ontrol over medical malpractice insurance," restricting medical school admissions and "the cult of silence." He asserts the AMA has contributed to "an unhealthy marketplace and citizenry." Plaintiff provides no further detail in his briefs to explain what he means by these conclusory assertions. Against the PMAs, plaintiff simply reasserts in his brief the same allegations that warranted a dismissal of counts X and XI for failure to state a proper claim.

[*P124] *HN23*[⬆] A dismissal of a *section 2-615* motion is [***71] reviewed *de novo*. *Collins v. Superior Air-Ground Ambulance Service, Inc., 338 Ill. App. 3d 812, 815, 789 N.E.2d 394, 273 Ill. Dec. 494 (2003)*. An abuse of discretion standard of review applies for the circuit court's dismissal with prejudice of counts IV, X and XI of the third amended complaint. *Bruss, 385 Ill. App. 3d at 405*.

[*P125] *HN24*[⬆] Under the Antitrust Act, it is unlawful for a person to:

*HN25*[⬆] "(1) Make any contract with, or engage in any combination or conspiracy with, any other person who is, or but for a prior agreement would be, a competitor of such person:
a. for the purpose or with the effect of fixing, controlling or maintaining the price or rate charged for any commodity sold or bought by the parties thereto, or the fee charged or paid for any service performed or received by the parties thereto;
b. fixing, controlling, maintaining, limiting, or discontinuing the production, manufacture, mining, sale or supply of any commodity, or the sale or supply of any service, for the purpose or with the effect stated in paragraph a. of subsection (1);

[****686] [**28] c. allocating or dividing customers, territories, supplies, sales, or markets, functional or geographical, for any commodity or service; or

(2) By contract, combination, or conspiracy with [***72] one or more other persons unreasonably restrain trade or commerce; or

(3) Establish, maintain, use, or attempt to acquire monopoly power over any substantial part of trade or commerce of this State for the purpose of excluding competition or of controlling, fixing, or maintaining prices in such trade or commerce[.]" *740 ILCS 10/3* (West 2004).

*HN26*[⬆] Violation of the act requires a combination or conspiracy between competitors or potential competitors to accomplish an anticompetitive objective. *Adkins v. Sarah Bush Lincoln Health Center, 129 Ill. 2d 497, 521, 544 N.E.2d 733, 136 Ill. Dec. 47 (1989)*.

[*P126] Plaintiff's antitrust claims that he allege here are quite similar to those that have been reviewed and disposed of previously by this court in *Holzrichter v. County of Cook, 231 Ill. App. 3d 256, 595 N.E.2d 1237, 172 Ill. Dec. 567 (1992)*. In that case, the basis of this same plaintiff's lawsuit also arose from underlying medical malpractice claims. He was injured in an automobile accident and spent three months recovering at Cook County Hospital. He underwent a bilateral craniotomy. Plaintiff filed a *pro se* complaint charging Cook County Hospital, its agents and employees with negligence for losing or failing to restore "'one roughly four square-inch cranial-bone [***73] tissue specimen from above [his] left ear resulting in a craniectomy being performed.'" *Holzrichter, 231 Ill. App. 3d at 259*. Plaintiff joined the AMA in his amended complaint, alleging the AMA of "promulgating or encouraging practices among its member physicians that led to a conspiracy of silence which in turn prevented plaintiff from learning about his possible causes of action against the doctors for medical malpractice." *Id. at 260*. The circuit court dismissed the antitrust claims against the AMA pursuant to *section 2-615*, noting that the complaint lacked any specific factual allegations to substantiate plaintiff's claims.

[*P127] On appeal, the *Holzrichter* court noted the AMA's influence over its members and its lobbying for changes in the law does not automatically equate with antitrust violations. "As we understand plaintiff's position, he deplores the growing trend toward specialization and what he perceives as a resulting erosion of the doctor-patient relationship. His conclusory charge that the AMA has fostered such a situation for illegal purposes under the antitrust laws, however, does not withstand analysis." *Id. at 265*. The court further questioned whether the plaintiff even [***74] had standing to bring such a claim. *Id.* *HN27*[⬆] Under *section 7(2)* of the Antitrust Act, a person may bring a civil action if he "'has been injured in his business or

property, or is threatened with such injury, by a violation of *section 3* of this Act.'" *Id. at 266* (quoting Ill. Rev. Stat. 1981, ch. 38, ¶ 60-7(2)). The court found plaintiff failed to state how his business or property was injured or threatened by specific restraints of trade. *Id.* "Nor has he otherwise shown that his injury resulted from harm to the competitive process itself." *Holzrichter, 231 Ill. App. 3d at 266*. The court concluded plaintiff failed to allege an antitrust injury under the law as follows:

"Clearly, plaintiff's physical and mental suffering, however severe and unfortunate, **[****687]** **[**29]** is not the type of 'marketplace' injury normally compensable under the antitrust laws. His damages are for personal injuries and he does not set forth any solid factual link between the doctors' supposed concealment of plaintiff's inchoate malpractice claims and specific acts of the AMA as an organization. The public interest in more efficient and less expensive health care is great; however, the AMA's stance with respect to doctor specialization **[***75]** or malpractice insurance is not legally relevant either to plaintiff's physical injuries or to his claim that certain of his treating physicians concealed matters that would sustain a medical malpractice action." *Id. at 267*.

**[*P128]** In this case, plaintiff's claims against the AMA and PMAs are simply conclusory and utterly fail to state a cause of action for violations of the Antitrust Act. As in *Holzrichter*, plaintiff's damages are for personal injuries and he has failed to plead any facts establishing an alleged antitrust conspiracy from the podiatric medical community to prevent him from obtaining a *section 2-622* written report. Plaintiff claims he was injured by the AMA because medical record falsification is a common practice and routinely used as a defense against negligent care to eliminate accountability, but he does not specify whether the AMA caused any medical record falsification in this case or, even if that occurred, how he was injured as a result. Plaintiff's allegation that the PMAs are somehow colluding to boycott his efforts to assert a medical malpractice claim amount to nothing more than broad, empty and sweeping generalizations. Plaintiff alleged no facts in counts IV, X **[***76]** and XI describing what exactly was illegal about the conduct of the AMA and PMAs and how the alleged conduct related to his injuries. Because plaintiff has not articulated specific acts, statements or directives of the AMA and PMAs that would support the contention those defendants perpetrated or joined in such a conspiracy, he has failed to state a claim under the Antitrust Act.

**[*P129]** We conclude the circuit court properly dismissed count IV of plaintiff's amended complaint. We find no abuse of discretion in the dismissal with prejudice of counts IV, X and XI of plaintiff's third amended complaint. See *Ahmed v. Pickwick Place Owners' Ass'n, 385 Ill. App. 3d 874, 882, 896 N.E.2d 854, 324 Ill. Dec. 778 (2008)* (denying the plaintiff's numerous requests for leave to amend where he had several opportunities to amend the complaint and had already done so twice); *Weidner v. Midcon Corp., 328 Ill. App. 3d 1056, 1061, 767 N.E.2d 815, 263 Ill. Dec. 89 (2002)* (finding the allowance of additional amendments would not further the ends of justice where the plaintiff had several opportunities to amend to state a claim upon which relief could be granted, and the series of complaints filed did not substantially differ from one another).

**[*P130]** *Mandamus* Claim

**[*P131]** Count V of plaintiff's **[***77]** amended complaint requested *mandamus* relief against the IDPR. On September 30, 2005, the circuit court dismissed count V with prejudice pursuant to Code *section 2-619*, finding the IDPR had sovereign immunity as defined by *section 1* of the State Lawsuit Immunities Act (*745 ILCS 5/1* (West 2004) ("the State of Illinois shall not be made a defendant or party in any court")). Plaintiff moved to reconsider the dismissal of count V, which the court denied on August 11, 2006. Nevertheless, he repled count V again in his second amended complaint and filed a second motion to reconsider the dismissal of count V. Plaintiff sought a writ of *mandamus* requiring the **[****688]** **[**30]** IDPR to conduct all its proceedings against Dr. Yorath in compliance with "Contested Case provisions of the Administrative Procedure Act (*5 ILCS 100/1-1 et seq.*) so rendering any decision made up to this point in the IDPR review process void pursuant to *5 ILCS 100/10-50(c).*"

**[*P132]** On March 21, 2007, the circuit court denied plaintiff's motion to reconsider the dismissal of count V of the amended complaint. The court held that the IDPR is an agency within the State and is granted sovereign immunity by statute. The court found no basis to reconsider **[***78]** the order of September 30, 2005. Plaintiff repled count V in his third amended complaint, which count was dismissed with prejudice on December 14, 2007. *HN28*[↑] The court's decision to dismiss count V of the amended complaint pursuant to *section 2-619* is reviewed *de novo. Mueller, 299 Ill. App. 3d at 572*. The grant or denial of a motion to reconsider lies

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **30; 2013 Ill. App. LEXIS 101, ***78; 369 Ill. Dec. 659, ****688

within the discretion of the lower court. *American National Trust Co. v. Kentucky Fried Chicken of Southern California, Inc., 308 Ill. App. 3d 106, 120, 719 N.E.2d 201, 241 Ill. Dec. 340 (1999)*. An abuse of discretion standard of review also applies for the court's dismissal with prejudice of count V of the third amended complaint. *Bruss, 385 Ill. App. 3d at 405*.

 [*P133]  The IDPR argues that we should uphold the dismissal of count V of the third amended complaint on the ground that plaintiff failed to state a cause of action for *mandamus* against it. *735 ILCS 5/2-615* (West 2004). We agree.

 [*P134]  **HN29**[⬆] A *mandamus* order will issue only to compel a public official to perform a clear, nondiscretionary, official duty. *People ex rel. Birkett v. Konetski, 233 Ill. 2d 185, 192-93, 909 N.E.2d 783, 330 Ill. Dec. 761 (2009)*. Such relief will not be granted to direct the exercise of discretion. *Id.* To state a cause of action for *mandamus*, [***79] a plaintiff must establish a clear right to relief, the defendant's clear duty to provide that relief, and the defendant's clear authority to comply with the relief sought. *Id.*

 [*P135]  **HN30**[⬆] The Podiatric Medical Practice Act of 1987 (*225 ILCS 100/1 et seq.* (West 2004)) provides the IDPR with the authority to administer the licensing and discipline of podiatrists. See *225 ILCS 100/5(A)* (West 2004) (defining "Department"); *225 ILCS 100/6* (West 2004) (delineating powers and duties of the Department); *225 ILCS 100/24* (West 2004) (listing grounds for disciplinary action). The IDPR "may investigate the actions of any applicant or of any person or persons holding or claiming to hold a license," and also has the authority to suspend, revoke, or take "any other disciplinary action as [it] may deem proper with regard to any licensee." *225 ILCS 100/27* (2004). The Podiatric Medical Practice Act further directs the IDPR to provide licensees with procedural protections, such as timely notice of the charges, a hearing and the opportunity to respond in writing, before taking any disciplinary action. *Id.*

 [*P136]  Not every informal complaint filed with the IDPR by a private citizen develops into a "contested case" under [***80] *section 10-25* of the Administrative Procedure Act (*5 ILCS 100/10-25* (West 2004)). A contested case is an adjudicatory proceeding in which "all parties shall be afforded an opportunity for a hearing after reasonable notice." *5 ILCS 100/10-25(a)* (West 2004). **HN31**[⬆] "Unless precluded by law, disposition may be made of any contested case by stipulation,

agreed settlement, consent order, or default." *5 ILCS 100/10-25(c)* (West 2004). **HN32**[⬆] In the context of IDPR proceedings under the Podiatric Medical Practice Act, a contested case is instituted in one of [****689] [**31] two ways. First, the chief of prosecutions for the IDPR may issue a written complaint, which must include "a clear statement of the acts or omissions alleged to violate a statute or rule." *68 Ill. Adm. Code 1110.20(b)* (2004). Second, a person who has been denied licensure or subjected to discipline by the IDPR may institute a contested case by petitioning the IDPR's chief of prosecutions for relief. *68 Ill. Adm. Code 1110.30* (2004). A private citizen can never institute a contested case against a podiatrist simply by filing informal allegations with the IDPR. The IDPR retains absolute discretion to prosecute, or not prosecute, as it sees fit.

 [*P137]  Plaintiff's [***81] allegations against Dr. Yorath in his IDPR complaint never developed into a contested case. On June 15, 2004, IDPR Chief of Health-Related Prosecutions Mary E. Doherty advised plaintiff his case was closed because an investigation "has disclosed no provable violation of the [Podiatric Medical Practice] Act." In the absence of any contested case, *section 10-25* of the Procedure Act did not apply. Thus, plaintiff failed to establish a clear right to compel the IDPR with the contested case provisions of the Procedure Act in his case against Dr. Yorath.

 [*P138]  Nor could plaintiff compel the IDPR to institute a contested case against Dr. Yorath. *Mandamus* cannot be used to direct the IDPR's exercise of discretion. See *Konetski, 233 Ill. 2d at 193*. Here, **HN33**[⬆] under the Podiatric Medical Practice Act and the Procedure Act, the determination of whether an investigation has revealed enough evidence for the chief of prosecutions to issue a complaint is a discretionary decision. *225 ILCS 100/6, 24, 27* (West 2004); *68 Ill. Adm. Code 1110.20* (2004). Therefore, plaintiff's third amended complaint failed to state a cause of action for *mandamus* against the IDPR both because he did not establish his clear right [***82] to relief and because he cannot use *mandamus* to direct the IDPR's exercise of discretion in its investigation of Dr. Yorath.

 [*P139]  Moreover, even if a contested case had been instituted against Dr. Yorath, plaintiff still would have no right, much less a clear right, to participate in the IDPR hearing. **HN34**[⬆] The contested case provisions of the Procedure Act provide only parties with the opportunity for a hearing. *5 ILCS 100/10-25* (West 2004). Neither the Podiatric Medical Practice Act nor the IDPR administrative rules make a complaining private citizen

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **31; 2013 Ill. App. LEXIS 101, ***82; 369 Ill. Dec. 659, ****689

a party. In addition, the Podiatric Medical Practice Act and IDPR administrative rules do not grant private parties the right to participate in the IDPR's case against a podiatrist by presenting evidence at a hearing. The procedural protections of notice and a hearing are guaranteed only to licensees who are the subject of an IDPR action. *225 ILCS 100/27* (West 2004); *68 Ill. Adm. Code 1110.10, 1110.20, 1110.30* (2004).

 **[*P140]** Accordingly, even if the case against Dr. Yorath had proceeded to the contested case stage, plaintiff still would have no clear right to *mandamus* relief against the IDPR. Because he was not a party, he had no clear right to participate **[***83]** in any hearing. *5 ILCS 100/10-25* (West 2004); *225 ILCS 100/27* (West 2004). Nor could he direct the IDPR's exercise of discretion in its proceedings against Dr. Yorath, had they gone forth, by compelling the IDPR to allow his participation. See *Konetski, 233 Ill. 2d at 193*. Based on the foregoing, we find count V of the amended complaint failed to state a cause of action for *mandamus* and was properly dismissed. While the dismissal below may have rested on other grounds, *HN35*[↑] we may affirm the circuit court on any basis warranted by the **[****690]** **[**32]** record. See *Evans v. Lima Lima Flight Team, Inc., 373 Ill. App. 3d 407, 418, 869 N.E.2d 195, 311 Ill. Dec. 521 (2007)*. The decisions to deny plaintiff's motion to reconsider and to dismiss count V of the third amended complaint with prejudice were not abuses of discretion.

**[*P141]**  Punitive Damages Claims

 **[*P142]** Plaintiff asserts the circuit court erred by denying him leave to amend his complaint to add punitive damages claims against Dr. Yorath. In his brief, plaintiff refers to his motion to add claims of punitive damages filed on March 14, 2007, prior to the dismissal of his second amended complaint. The court denied plaintiff's motion on April 27, 2007. *HN36*[↑] "The determination of whether the facts of a given **[***84]** case justify the imposition of punitive damages is a question of law; however, it has been uniformly held that an abuse of discretion standard will be applied on review." *Stojkovich v. Monadnock Building, 281 Ill. App. 3d 733, 742, 666 N.E.2d 704, 217 Ill. Dec. 35 (1996)*.

 **[*P143]** *HN37*[↑] *Section 2-1115* of the Code bars recovery of punitive damages in a medical malpractice action. *735 ILCS 5/2-1115* (West 2004). A plaintiff, however, may state a medical malpractice claim subject to the limitations of *section 2-1115*, as well as an

intentional tort claim for which punitive damages may be available. *Grant v. Petroff, 291 Ill. App. 3d 795, 805, 684 N.E.2d 1020, 226 Ill. Dec. 24 (1997)*. Plaintiff in this case sought to add punitive damages with regard to his medical battery and fraudulent misrepresentation claims.

 **[*P144]** In *Grant*, the plaintiff appealed the denial of her motion for leave to file a third amended complaint to add a count seeking punitive damages for willful and wanton battery. *Grant, 291 Ill. App. 3d at 804*. The plaintiff claimed the defendant physician performed a tubal ligation without her consent. The circuit court considered the plaintiff's entire complaint, which included medical malpractice claims, and found the definition of malpractice to be broad and encompassing **[***85]** of the alleged battery. The *Grant* court reversed the circuit court's decision to deny leave to file a punitive damages claim for medical battery, finding the battery claim arose "independently of the alleged healing art of malpractice." *Id. at 805*. "The allegations constituting a cause of action for battery stem from an unconsented-to touching. Just because plaintiff has a separate malpractice claim where nonconsent was an issue does not mean that an independent claim for battery should be precluded." *Id.*

 **[*P145]** In contrast to *Grant*, the record conclusively establishes that plaintiff in this case consented to the procedure performed by Dr. Yorath. We earlier found that plaintiff's medical battery claim was not independent from his medical negligence claims because he is challenging an implicit part of the surgical procedure, which requires a medical opinion pursuant to Code *section 2-622*. Absent compliance with *section 2-622*, plaintiff failed to plead a medical battery claim under the circumstances of this case. Likewise, we earlier held plaintiff also failed to properly plead his fraudulent misrepresentation claim. Without pleading a valid underlying cause of action, the concept that it **[***86]** was committed willfully and wantonly has no application. See *Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc., 181 Ill. 2d 214, 224, 692 N.E.2d 269, 229 Ill. Dec. 496 (1998)* ("Punitive damages are a type of relief, not an independent cause of action."). *HN38*[↑] "Punitive damages must derive from the wrongful conduct giving rise to a cause of action." *Duignan v. Lincoln Towers Insurance Agency, Inc., [****691] [**33] 282 Ill. App. 3d 262, 271, 667 N.E.2d 608, 217 Ill. Dec. 519 (1996)*.

 **[*P146]** Here, plaintiff cannot assert punitive damages without first properly pleading the underlying claims for

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **33; 2013 Ill. App. LEXIS 101, ***86; 369 Ill. Dec. 659, ****691

medical battery and fraudulent misrepresentation. Accordingly, the circuit court did not abuse its discretion by denying plaintiff leave to file a fourth amended complaint to add his punitive damages claims.

**[*P147]** Denial of Leave to Amend to Add Various Additional Claims

**[*P148]** On December 26, 2008, plaintiff sought leave to amend his complaint to add claims for spoliation and violations of the X-Ray Retention Act (*210 ILCS 90/0.01 et seq.* (West 2004)) against Dr. Yorath, the collective CMS defendants and FACA. The circuit court denied plaintiff's motion on January 12, 2009. Plaintiff again sought leave to amend his complaint on August 23, 2010 to add negligent credentialing claims **[***87]** against the CMS defendants, FACA and the IDPR, which motion was denied on August 30, 2010. *HN39*[⬆] The decision to deny a motion for leave to amend a complaint is reviewed under the abuse of discretion standard. *Hayes Mechanical, Inc. v. First Industrial, L.P., 351 Ill. App. 3d 1, 15, 812 N.E.2d 419, 285 Ill. Dec. 599 (2004).*

**[*P149]** As to this issue, we begin by noting that plaintiff's brief largely consists of an amalgamation of paragraphs, taken from the pleadings, that have not been joined in any coherent manner. *HN40*[⬆] "A reviewing court is entitled to have the issues clearly defined and supported by pertinent authority and cohesive arguments ***." *U.S. Bank v. Lindsey, 397 Ill. App. 3d 437, 459, 920 N.E.2d 515, 336 Ill. Dec. 306 (2009)* (citing *Ill. S. Ct. R. 341(h)(7)* (eff. July 1, 2008)). In this case, plaintiff has failed to provide even the most basic analysis in support of his motions for leave to amend his complaint. For example, plaintiff's brief asserts *one conclusory sentence* in support of his claim that the circuit court improperly denied him leave to amend his complaint: "CMS Refused to Supply the Postoperative X-Ray and X-Rays with Readable Label to be in violation of the X-Ray Retention Act." No additional analysis or explanation is provided as to how or **[***88]** why these defendants violated the X-Ray Retention Act. Plaintiff's brief asserts similar conclusory statements in support of his motions to add negligent credentialing and spoliation claims. Therefore, plaintiff has forfeited this issue by failing to develop his argument properly. See *Sexton v. City of Chicago, 2012 IL App (1st) 100010, ¶ 79*; see also *People ex rel. Madigan v. Lincoln, Ltd., 383 Ill. App. 3d 198, 208, 890 N.E.2d 975, 322 Ill. Dec. 56 (2008)* (holding that a party forfeited the argument for purposes of appeal where it

"merely state[d] [a] proposition and [made] no attempt to support it with analysis or authority").

**[*P150]** Even if we were to review this issue, nothing in the record below suggests the circuit court abused its discretion by denying plaintiff's motions to amend his complaint. See *Sexton, 2012 IL App (1st) 100010, ¶ 79*; see also *Ahmed, 385 Ill. App. 3d at 882* (denying the plaintiff's numerous requests for leave to amend where he had several opportunities to amend the complaint and had already done so twice); *Weidner, 328 Ill. App. 3d at 1061* (finding the allowance of additional amendments would not further the ends of justice where the plaintiff had several opportunities to amend to state a claim **[***89]** upon which relief could be granted, and the series of complaints filed did not substantially differ from one another).

**[*P151]** CONCLUSION

**[*P152]** For all the aforementioned reasons, we affirm the decision of the circuit **[****692]** **[**34]** court to grant summary judgment for the disposition of count I of plaintiff's third amended complaint. As a matter of law, the court properly dismissed counts II, III, VII, VIII and IX of plaintiff's second amended complaint pursuant to Code *sections 2-619* and *2-622*. The court did not abuse its discretion to dismiss with prejudice counts II, III, VII, VIII and IX of plaintiff's third amended complaint. The court properly dismissed count IV of plaintiff's amended complaint for failure to state a cause of action for violation of the Antitrust Act. The court did not abuse its discretion by dismissing with prejudice counts IV, X and XI of plaintiff's third amended complaint for failure to state a cause of action for violations of the Antitrust Act. The court properly dismissed count V of the amended complaint. The decisions to deny plaintiff's motion to reconsider and to dismiss count V of the third amended complaint with prejudice were not abuses of discretion. The court properly dismissed **[***90]** count VI of plaintiff's second amended complaint for failure to state a claim of fraudulent misrepresentation and the plaintiff failed to show an abuse of discretion as to the dismissal with prejudice of count VI of plaintiff's third amended complaint. The court did not abuse its discretion by denying plaintiff leave to file a fourth amended complaint to add punitive damages claims. Finally, the court did not abuse its discretion by denying plaintiff's motions to amend his complaint. The court properly disposed of all pending matters in plaintiff's case.

**[*P153]** Affirmed.

2013 IL App (1st) 110287, *110287; 987 N.E.2d 1, **34; 2013 Ill. App. LEXIS 101, ***90; 369 Ill. Dec. 659, ****692

**End of Document**