UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Kaiya Marie, | ) | |
| Plaintiff, | ) | |
| | ) | No. 19 CV 50268 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| United States of America and Rockford | ) | |
| VA Clinic, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff alleges that during a visit to the Rockford VA Clinic, she received substandard podiatric care, and the resulting injuries have affected her both physically and emotionally.  She brings claims of medical malpractice, battery, deception, and intentional infliction of emotional distress, all under the Federal Tort Claims Act.  *See* 28 U.S.C. § 2671 *et seq.*  The two defendants—the United States and the Rockford VA Clinic—have filed a motion to dismiss some of the plaintiff's claims, which for the reasons that follow is granted.

## Background

The following allegations are taken from the plaintiff's complaint and are deemed to be true for purposes of resolving the motion to dismiss.  *See Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020).  The *pro se* plaintiff alleges that on February 4, 2019, she attended an appointment at the Rockford VA Clinic.  Am. Compl. [23] ¶ 3.  She had been a patient of the Rockford VA Clinic since September 2017, and received treatment for managing her diabetes, heart disease, and peripheral neuropathy.  *Id.* ¶ 9.  During the February 2019 appointment, a podiatric technician trimmed nine of her toenails along both sides, removing one of those toenails completely, and ignored the plaintiff's requests to stop.  *Id.* ¶ 30, 39.  For diabetic patients like the plaintiff, toenails should be cut straight across to reduce the risk of ingrown toenails and necrotic tissue, but the technician lied and told the plaintiff that trimming toenails along the sides was now approved for diabetic patients.  *Id.*  During an earlier visit to the Jesse Brown VA Hospital in Chicago, a podiatrist trimmed the side of just one toenail, which led to an ingrown toenail that required surgery to correct.  *Id.* ¶ 30.  Having nine toenails cut on both sides left her fearing complications such as neuropathy or amputation, and she left the appointment feeling jittery and worrying that her blood sugar would drop and lead to a diabetic coma.  *Id.* ¶ 36.  Since the visit to the Rockford VA Clinic, her anxiety and stress have worsened, her blood sugar levels have worsened (her A1C rose from 6.8 to over 8), and her blood pressure averages have risen from 160/85 to 200/90.  *Id.* ¶ 37.

She alleges that she sought treatment from the Rockford VA Clinic only because she thought it was associated with the Middleton VA Hospital in Madison, Wisconsin, not the Hines VA Hospital near Chicago.  *Id.* ¶ 18, 40.  She had previously publicly complained about her

treatment at Hines—it's not clear from the complaint what treatment she complained about, but elsewhere in the amended complaint she alleges that the VA had previously diagnosed her with paranoid ideation in 1984, but later changed her diagnosis to bipolar disorder and memory loss. *Id.* ¶ 10, 14-15. Because of her complaints about the Hines VA Hospital, she vowed never to return to the VA for medical care, and for a four-year period sought medical treatment only from non-VA facilities. *Id.* ¶ 17, 40. She eventually returned to a VA facility only because she needed to obtain an Aid and Attendance Benefit, and her non-VA doctors were unwilling to complete the required forms. *Id.* ¶ 17.

In her amended complaint, the plaintiff alleges four claims against the defendants. In Count I, she alleges medical malpractice for failure to meet the applicable standard of care. In Count II, she alleges intentional infliction of emotional distress because the podiatric technician would have known the appropriate procedure for trimming the toenails of a diabetic patient, but instead lied when no one was around to witness, and would not stop when the plaintiff asked. In Count III, she alleges a claim of deception based on the defendants leading her to believe that the Rockford VA Clinic was not associated with the Hines VA Hospital. Finally, in Count IV, she alleges a claim of battery based on the podiatric technician's unauthorized trimming of the sides of her toenails. She seeks damages in the amount of $10 million.

Before the Court is the defendants' motion to dismiss the Rockford VA Clinic as an improper defendant, and to dismiss Counts II for intentional infliction of emotional distress and III for deception for failure to state a claim. Dkt. 28. The assigned magistrate judge gave the plaintiff to December 18, 2020 to respond to the motion to dismiss, but she never did, though she did seek more time to respond to a motion for summary judgment that is also pending. Dkts. 31, 40. Because the plaintiff never responded, the Court will rule on the motion to dismiss without the benefit of her views.

## ANALYSIS

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement must give to the defendant fair notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must also plausibly suggest that the plaintiff is entitled to relief, which "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint's allegations, and when evaluating a 12(b)(6) motion a court must accept all well-pleaded facts as being true, and draw all reasonable inferences in favor of the plaintiff. *See Calderone v. City of Chicago*, 979 F.3d 1156, 1161 (7th Cir. 2020). Because the plaintiff filed her complaint *pro se*, the Court will construe it liberally. *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

### 1.    Improper Defendant

First, the defendants seek to dismiss the Rockford VA Clinic from this suit entirely. Under the Federal Tort Claims Act, the only proper defendant is the United States, not its

agencies. *See* 28 U.S.C. 2679(a); *Carter v. Social Sec. Field Office*, No. 02 CV 5526, 2004 U.S. Dist. LEXIS 4693, at *12 (N.D. Ill. Mar. 22, 2004). Accordingly, the Rockford VA Clinic is dismissed with prejudice.

### 2. Intentional Infliction of Emotional Distress

Second, the defendants seek to dismiss the plaintiff's claim for intentional infliction of emotional distress, arguing that she has failed to state a claim because the events alleged do not constitute the kind of outrageous behavior required to establish such a claim. The Court applies the law of Illinois because that is where the conduct allegedly occurred. *Augutis v. United States*, 732 F.3d 749 (7th Cir. 2013). Under Illinois law, intentional infliction of emotional distress occurs only where (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew there was a high probability that the conduct would; (3) the defendant's conduct did cause severe emotional distress. *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 933-34 (7th Cir. 2017). Conduct is extreme and outrageous only if it is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir. 1993)(internal quotation marks and citation omitted). Whether conduct is extreme and outrageous is judged on an objective standard, and is the type of conduct that would make an average member of the community exclaim, "Outrageous!" *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008). Relevant factors include (1) the power or authority that the defendant has over the plaintiff; (2) the degree to which the defendant reasonably believed that her objectives were legitimate; and (3) the defendant's awareness that the plaintiff was particularly susceptible to emotional distress because of some physical or mental condition. *Honaker v. Smith*, 256 F.3d 477, 490-92 (7th Cir. 2001).

The conduct the plaintiff has alleged does not rise to the level of being so outrageous and extreme as to go beyond all possible bounds of decency. Looking to the relevant factors set out in *Honaker*, there is no suggestion in the plaintiff's allegations that the podiatric technician who trimmed her nails knew of the plaintiff's earlier complications from an ingrown toenail, or about the plaintiff's other allegations that she suffered from Post-Traumatic Stress Disorder, or that plaintiff's uncle who also suffered from diabetes "lost a leg and his life after a series of amputations at Hines VA that began with a toe." Am. Compl. [23] ¶ 26, 36. These allegations suggest that the plaintiff may have been particularly susceptible to emotional distress, but she has not plausibly suggested that the podiatric technician knew any of this or the plaintiff's medical history, and in fact the plaintiff alleges this was her only visit with this technician. *Id.* ¶ 9.

The amended complaint includes allegations about stress and harassment she experienced while working for the postal service, that she was labeled a whistleblower after she left the postal service, that she tried to get an investigation started of experiments being performed on African-American men reminiscent of human experiments conducted at Nuremberg and Tuskegee, that since then she has been followed and harassed by civilian and VA physicians, and that the VA put a flag on her file "allowing invasive medical experimental procedures thereby paving the way for intentional torts and malicious acts committed by unethical employees.". *Id.* ¶ 12-13, 33. But, again, the complaint does not plausibly suggest that the podiatric technician knew any

of this, or that the technician was in any way connected to or carrying out this pattern of alleged harassment.

The plaintiff's allegations also do not plausibly suggest that the technician exerted power or authority over the plaintiff. The plaintiff alleges that because no one else was in the room when the technician trimmed her toe nails, if she got up to leave "the Defendant might accuse her of anything" and might "put in chemical or physical restraints and lose her freedom or perhaps her life due to the injection of strong tranquilizers . . ." *Id.* ¶ 35. But the allegations do not plausibly suggest that the technician actually restrained her or threatened to do so, or any reasonable basis for the plaintiff's belief that the technician might restrain or drug her if she did not let the technician trim the sides of her toenails.

Allegations that the podiatric technician trimmed her toenails in a way that violated the standard of care for diabetic patients may be sufficient to state a claim of medical malpractice, but her allegations do not plausibly suggest that the technician intentionally engaged in conduct extreme in degree, beyond all possible bounds of decency. Accordingly, the motion to dismiss the plaintiff's claim of intentional infliction of emotional distress is granted.

### 3.    Deception

Finally, the defendants offer two reasons for dismissing the plaintiff's claim for deception. First, the defendants contend that the plaintiff failed to administratively exhaust her remedies for the deception claim. Before pursuing a claim against the United States under the FTCA in court, a plaintiff must first present the claim to the appropriate federal agency on an executed SF-95 form and wait to receive a final written denial from the agency. *See* 28 U.S.C. § 2675(a); 298 C.F.R. § 14.2(a); *Chronis v. United States*, 932 F.3d 544, 546-47 (7th Cir. 2019). The defendants attached to their motion the SF-95 that the plaintiff filed about the February 4, 2019, incident, as well as a "Correction" she filed a few days later. Although not attached to her amended complaint, the Court considers them both because she refers to the administrative claims in her complaint and they are central to her FTCA claims, *see Hobbs v. John*, 722 F.3d 1089, 1091 n.2 (7th Cir. 2013), and because they are public records of which the Court can take judicial notice, *see Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (SF-95 form is a public record of which the district court can take notice in resolving a motion to dismiss). Neither her SF-95 nor her correction raise any issue about her being deceived into believing that the Rockford VA Clinic was not associated with the Hines VA Hospital. Accordingly, such a claim has not been administratively exhausted and is subject to dismissal.

Second, the defendants contend that a claim for deception is not cognizable under the FTCA because the United States has not waived sovereign immunity for such claims. The FTCA sets out exceptions to the ability to maintain a suit against the United States, and the list of exceptions includes "[a]ny claim arising out of . . . deceit." 28 U.S.C. § 2680(h); *see also Deloria v. Veterans Admin.*, 927 F.2d 1009, 1012-13 (7th Cir. 1991) (district court properly dismissed claims arising out of misrepresentation and deceit). The plaintiff's claim for deceit is therefore subject to dismissal with prejudice.

## CONCLUSION

For these reasons, the defendants' motion for partial dismissal [28] is granted in full, and the following claims and parties are dismissed from the complaint:  defendant Rockford VA Clinic and Count III (deception) are dismissed with prejudice, and Count II (intentional infliction of emotional distress) is dismissed without prejudice.

Date:  January 29, 2021            By:    _____

Iain D. Johnston
United States District Judge